ORIGINAL

FILED
JAN 29 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC<br>A Mississippi Limited Liability Corporation<br>Plaintiff, | § | |
| VS. | § | NO. 08-62 C |
| THE UNITED STATES<br>Defendant. | § | |

**ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE COURT OF FEDERAL CLAIMS:

**INTRODUCTION.**

1. This is a complaint for declaratory and injunctive relief, money damages, and attorneys fees, expenses, and costs under 28 U.S.C. §§ 2201 (declaratory judgment), 2202 (further relief based on declaratory judgment), 1491(a) (render judgment on claims against United States founded on implied contract of fair dealing), 1491(b) (declaratory and injunctive relief and monetary damages limited to bid preparation and proposal costs) and 2412 (attorneys fees, expenses, and costs).

**JURISDICTION AND VENUE.**

2. Jurisdiction of the Court of Federal Claims over this action is conferred by 28 U.S.C. §§ 1491(a)(1) (claim founded upon implied contract of fair dealing with the United States) and 1491(b)(1) (bid protests). RKR, as the aggrieved bidder, has standing to bring this case. An actual, justiciable controversy exists between RKR and Defendant. The requested relief is proper under the statutes cited in ¶ 1.

## PARTIES.

3. Plaintiff RKR JOINT VENTURE, LLC is a Mississippi limited liability corporation with current articles of incorporation on file with the Mississippi Secretary of State. The joint venture consists of Rothe Development Corporation, K-Mar Industries, Inc., and Rohmann Services, Inc. RKR's principal place of business is located at 10401 Boney Ave Suite B, Diberville, MS 39540.

4. Defendant THE UNITED STATES and its agencies and departments are engaged in procurement.

## FACTUAL AND PROCEDURAL BACKGROUND.

### I. The Solicitation

5. On August 16, 2002, Defendant United States Department of the Air Force ("Air Force") issued Solicitation F41689-02-R-0049 ("the solicitation"), a contract for a Base Operating Support Cost Study (Little BOS)[1] at Keesler Air Force Base, MS.

6. The solicitation is a negotiated procurement.

7. The acquisition was solicited as a small business set-aside pursuant to OMB Circular A-76 (Aug. 1983) and its March 1996 Supplemental Handbook (both Rev. 1999). Solicitation ¶ M903.

8. The solicitation is Cost Plus Award Fee/Award Term then converting (through negotiations) to Fixed Price Award Fee (FPAF)/Award Term during option year three. ¶ H938.

---

[1] Little BOS includes Communications and Information Technology, Visual Information Management and Publishing Management.

9. The solicitation contains a five month mobilization period, a one year basic performance period, nine option years, and a six month option to extend. The total duration of the contract is just under eleven years. ¶¶ B1, F12.

10. Numerous amendments to the solicitation were announced and incorporated over the period from August 16, 2002 to on or about June 24, 2004, when RKR timely submitted its bid proposal.

11. The foregoing amendments indicated that changes to the organizational structure and operations of the Communications and Information Technology requirements of the solicitation were anticipated during the performance of the contract.

12. Paragraph 7.4.5 of Amendment 11, entitled "Network Management Responsibilities," reads:

> Keesler AFB, as a part of the Air Force enterprise network, employs a multi-tier support system for network management: unit-level Workgroup Managers, Functional System Administrators, the [Network Control Center, or NCC], the [Air Education and Training Command Network Operations and Security Center, or AETC NOSC], and finally the Air Force [Network Operations and Security Center, or AFNOSC]. ***To support this concept of operations, the Service Provider is expected to assume [Workgroup Manager/Functional System Administrator, or WM/FSA] duties only in areas where current [Communications and Information Technology, or C&IT] positions are included in the study.***
>
> ***The AFNOSC will direct configuration changes to the network to either enhance security or improve communications across the entire Air Force. Similarly, the AETC NOSC will direct configuration changes to the network to either enhance security or improve communications across the entire command.***

(emphasis added).

13. In other words, RKR was directed to assume management positions in its bid proposal only for existing Communications and Information Technology management positions. Any "configuration changes" to the organizational structure of the

Communications and Information Technology network (enterprise network), including changes involving these managers or staff below them, would be directed by the Air Force during the life of the contract.

14. Paragraph 7.1.1 of Amendment 11, entitled "Plans and Implementation Services," anticipates mission change over the life of the contract:

> The service provider shall provide detailed plans and supporting budgets, that outline implementation activities to maintain infrastructure related to [Communication and Information Technology, or C&IT] systems in response to the changing mission of Keesler AFB.

15. A task required at Paragraph 7.1.1.1.1 of Amendment 11 is to "Schedule, forecast, document and implement downward directed and upward driven C&IT programs and projects."

16. A task required at Paragraph 7.1.1.1.4 of Amendment 11 acknowledges an ongoing planning process over the life of the contract:

> Provide configuration management by participation in the planning, acquisition, management, and control of C&IT resources. Provide input to strategic planning processes to promote the most cost-effective technology options for improvement of operations. Make recommendations for technology insertion and provide inputs to the C&IT planning process.

17. The Air Force agrees that the requirements of the solicitation were for the "date in time" of the bid, and did not require the bidder to anticipate "configuration changes".

18. The parties' disagreement centers on whether the Air Force can avoid the "configuration changes" language and similar language and implication elsewhere in the solicitation to argue that there were other configuration changes not reasonably foreseen by the solicitation that merit the solicitation's cancellation.

19. RKR bid the solicitation in the manner directed, assuming only currently existing staff positions in the areas indicated. All other "configuration changes" in staffing and

organizational structure related to Communications and Information Technology were anticipated by Section 7 of Amendment 11 and were to occur during the life of the contract at the direction of the Air Force, as provided in Section 7 of Amendment 11.

20. On July 3, 2003, well prior to the close of bidding on the solicitation, Air Force headquarters announced, within the Air Force, a decision to fold the Air Force Network Operations and Security Center, or AFNOSC, into a broader network security and organization initiative known simply as Air Force Network Operations, or AFNETOPS.[2]

21. The Air Force's decision to fold AFNOSC into AFNETOPS did not result in any additional amendment to the solicitation.

22. Major General John W. Maluda was the Vice Commander for AFNETOPS during the relevant time period prior to this litigation.

**II. The Air Force's Evaluation**

23. Following the submission of bid proposals, the Air Force narrowed the field of bidders to one by conducting the A-76 Cost Comparison Study.

24. The Notice and Results of the OMB A-76 Cost Comparison Study, RFP F41689-02-R-0049, Base Operating Support Services at Keesler AFB, MS, were received by RKR on August 18, 2005.

---

[2] AFNETOPS has been in the planning stages for many years. A departmental directive, Air Force Instruction (AFI) 33-115 VI, 2 July 1999 edition addressed the centralized format for communication security as implemented by AFNETOPS. AFNETOPS is not projected to become fully capable of implementation until sometime between FY 2009 and FY 2011 according to Air Force spokesman Lt. Col. Michael Finn, as published in the USAF Aim Points publication on May 22, 2006.

25. The Notice and Results stated that the results favored the Air Force "most efficient organization" (MEO),[3] but also indicated that RKR Joint Venture, LLC, was the selected offeror. Thus, RKR's bid proposal was the lone bid proposal selected for further competition with the MEO.

26. A Notice to Offerors posted September 8, 2005 postponed further cost study between RKR and the MEO due to Hurricane Katrina.

27. Following that hiatus, a Notice to Offerors was posted on January 19, 2007 stating that further cost studies of the RKR and MEO bids had resumed.

28. The Air Force decided to award the contract to the MEO in the days thereafter and announced the selection of the MEO as the awardee. No actual award has ever occurred.

29. The bids of RKR and the MEO were opened and made public and, thus, RKR's prices are now known to all interested parties, which will make it impossible for it to participate fairly in any future solicitation related to the services under the solicitation.

30. The bids as opened and made public were for RKR of $59,691,967 and for the MEO of $ 54,719,167.

31. The MEO did not bid the Communication and Information Technology requirements operations consistent with Section 7 of Amendment 11 to the solicitation.

32. Correction of the MEO's staffing levels to conform with the solicitation will increase the MEO's in house cost estimate (i.e., its bid) by $17,606,437, making RKR the low bidder.

---

3 "Most Efficient Organization" (MEO), a department term for bidding units comprised of the Air Force's civilian employees.

## III. The Administrative Appeal

33. On or about March 29, 2007, RKR timely filed an administrative appeal of the Air Force decision to award the contract for the solicitation to the MEO.

34. The foregoing administrative appeal was based in part upon the fact that the MEO did not bid the NCC operations consistent with Paragraph 7.4.5 of Amendment 11 to the solicitation, and Section 7 of Amendment 11 generally.

35. RKR's administrative appeal was reviewed by Major General John W. Maluda in his capacity as the Keesler Administrative Appeal Authority.

36. At the time, Maj. Gen. Maluda was also Vice Commander, 8th Air Force and Air Force Network Operations, or AFNETOPS.

37. The foregoing administrative appeal was denied by letter from Maj. Gen. Maluda dated May 23, 2007.

38. The letter denying the appeal again gave every indication that the contract for the solicitation would be awarded to the MEO and would be performed, stating "the Administrative Appeal Process Team . . . concurs with the decision to select the MEO (in-house) as the selected service provider."

39. On information and belief, if AFNETOPS impacted the solicitation significantly enough to merit cancellation, Maj. Gen. Maluda would have been in a unique position to know as of March 2007, and would have terminated the appeal process and directed cancellation at that time. He did not.

40. On information and belief, the impetus for the alleged need to cancel the solicitation came from Air Force counsel during a subsequent bid protest appeal to the Government Accounting Office, *infra*.

**IV. Subsequent Appeals and Litigation**

41. Following denial of its administrative appeal, RKR filed a GAO bid protest including the NCC staffing issue on June 9, 2007.

42. On July 2, 2007, without responding to the merits of RKR's bid protest, the Air Force stated its intent to cancel the solicitation to the GAO, but did not state any reason.

43. On or about July 2, 2007 RKR objected at the GAO to the Air Force's intent to cancel the solicitation for failure to state any reason.

44. On or about July 9, 2007, Air Force counsel responded at the GAO with five alleged reasons for cancellation of the solicitation. These reasons differ from those given by the contracting officer, *infra*.

45. On or about July 16, 2007 RKR responded in opposition at the GAO and requested that its protest issues be deemed admitted.

46. On August 2, 2007 Air Force counsel abandoned the five previous reasons for cancellation and submitted a sixth and different alleged reason for cancellation of the solicitation to the GAO, without responding to RKR's July 16, 2007 response.

47. The sixth alleged reason was a declaration from Maj. Gen. William T. Lord, executed, on information and belief, at the request of Air Force counsel, regarding the alleged effect of AFNETOPS on network communications staffing and organization.

48. The implications discussed by Maj. Gen. Lord did not in fact affect the solicitation, however. They were "configuration changes" directed by the Air Force and anticipated by the solicitation, specifically Paragraph 7.4.5 of Amendment 11. They were at most obligations that an awardee would have to meet upon contract performance, and did not impact what was to be bid by an offeror in a bid proposal.

49. On August 13, 2007 RKR responded to the sixth alleged reason for cancellation, stating, in summary, that the solicitation encompassed the needs of the Air Force.

50. GAO dismissed the RKR protest because of the Air Force's intent to cancel the solicitation. *RKR Joint Venture, LLC*, B-299856 (Aug. 29, 2007).

51. On August 24, 2007, RKR initiated bid protest litigation at the Court of Federal Claims in *RKR Joint Venture LLC v. U.S.*, No. 07-630 (Judge Williams).

52. In the course of the litigation, RKR raised the issue that the case was proceeding on the basis of a declaration issued by a person lacking the actual authority to cancel the solicitation (i.e., Maj. Gen. Lord), and that the contracting officer had not cancelled the solicitation in accordance with Federal Acquisition Regulation ("FAR") 15.206(e), 48 C.F.R § 15.206(e). Defendant THE UNITED STATES filed a motion to dismiss in response. The parties agreed to await a determination by the contracting officer.

53. On January 7, 2008, the contracting officer issued his findings and determination for cancellation of the solicitation.

54. At conference on January 23, 2007, the parties revisited the jurisdictional issues raised in THE UNITED STATES' motion to dismiss. RKR stated its position that a cancellation does not always moot or otherwise negate actionable harm existing at the time of the complaint on a freestanding claim for bid preparation and proposal costs, which here was based on the Air Force's breach of the implied contract of fair dealing during the evaluation process and appeals. Among other reasons, RKR's bid was unsealed and made public, placing it at a competitive disadvantage in any resolicitation. The government maintained its original position from its motion.

55. Rather than submit the issue to the Court, the parties agreed to and filed a stipulation of voluntary dismissal without prejudice to re-filing pursuant to Fed. R. Civ. P. 41(a)(1)(ii) on January 23, 2008. The Court dismissed the case without prejudice on January 24, 2008.

**V. Injury to Plaintiff**

56. RKR has been injured in that its bid was not evaluated fairly prior to the award to the MEO. RKR has also suffered injury from the conduct of the Air Force during the subsequent administrative appeal, GAO appeal, and litigation, which unduly prolonged the process and which was pretextual, arbitrary and capricious in nature. The Air Force has caused a loss to the integrity of its public procurement system that impairs RKR's future participation in that system.

57. Given the cancellation by the contracting officer, RKR was also injured and placed at a competitive disadvantage in any resolicitation when its bid was unsealed and made public following the award to the MEO.

58. In preparing its bid proposal, RKR incurred bid preparation and proposal costs and expenses exceeding $10,000, including without limitation, personnel and overtime costs and material expenses.

59. RKR was injured by the cancellation of a solicitation that it was the true low bidder on.

60. RKR was injured by being wrongly denied the award of the contract for the solicitation.

**FIRST CLAIM FOR RELIEF**
(Declaratory Judgment and Monetary Damages
with respect to breach of implied contract of fair dealing)

61. RKR hereby incorporates all preceding paragraphs.

62. The Air Force's evaluation of bids for the solicitation and conduct thereafter was a breach of the implied contract of fair dealing, and was arbitrary, capricious, and not in accordance with law. Pursuant to 28 U.S.C. §§ 2201, 1491(a)(1), and 1491(b)(2), the Court is requested to adjudge, decree, and declare same.

63. Pursuant to 28 U.S.C. §§ 1491(a)(1) and 1491(b)(2), the Court is requested to order THE UNITED STATES to award RKR its bid preparation and proposal costs.

**SECOND CLAIM FOR RELIEF**
(Declaratory Judgment and Injunctive Relief
to set aside solicitation cancellation)

64. RKR hereby incorporates all preceding paragraphs.

65. The Air Force's cancellation of the solicitation was arbitrary, capricious, and not in accordance with law. Pursuant to 28 U.S.C. §§ 2201 and 1491(b)(2), the Court is requested to adjudge, decree, and declare same.

66. All alleged changes cited by the contracting officer, and cited by Air Force personnel other than the contracting officer to the extent they are applicable (which is denied), were changes that "offerors reasonably could have anticipated" per 48 C.F.R. 15.206(e) based on the terms of the solicitation. These alleged changes did not affect what the solicitation required in offerors' bid proposals.

67. Pursuant to 28 U.S.C. §§ 2202 and 1491(b)(2) the Court is requested to set aside and permanently enjoin the cancellation of the solicitation and order THE UNITED STATES to proceed with the solicitation in its current form.

**THIRD CLAIM FOR RELIEF**
(Declaratory Judgment and Injunctive Relief
to enjoin award to MEO and award to RKR

68. RKR hereby incorporates all preceding paragraphs.

69. The MEO did not bid the solicitation consistent with Paragraph 7.4.5 of Amendment 11 to the solicitation, and Section 7 of Amendment 11 generally. Correction of the MEO's staffing levels to conform with the solicitation will increase the MEO's in house cost estimate (i.e., its bid) by $17,606,437, making RKR the low bidder. No other bidders are eligible for the award based on the record. Pursuant to 28 U.S.C. §§ 2201 and 1491(b)(2), the Court is requested to adjudge, decree, and declare same.

70. Pursuant to 28 U.S.C. §§ 2202 and 1491(b)(2) the Court is requested to permanently enjoin any award under the solicitation to the MEO and order THE UNITED STATES to award the contract under the solicitation to RKR.

**FOURTH CLAIM FOR RELIEF**
(Attorneys Fees Pursuant to 28 U.S.C. § 2412)

71. RKR hereby incorporates all preceding paragraphs.

72. RKR has been forced to retain attorneys to vindicate its rights in the bid process for the solicitation

73. RKR satisfies all party requirements under 28 U.S.C. § 2412.

74. The position of Defendant is not substantially justified.

75. Pursuant to 28 U.S.C. § 2412, the Court is requested to award costs and reasonable attorneys' fees and expenses in its discretion or as mandated by statute.

**PRAYER FOR RELIEF**

WHEREFORE, RKR JOINT VENTURE, LLC respectfully requests that this Court:

1. Declare that THE UNITED STATES breached the implied contract of fair dealing as to RKR;

2. Enter judgment against and order THE UNITED STATES to award RKR its bid preparation and proposal costs totaling at least $10,000;

3. Declare that the cancellation of the solicitation was arbitrary, capricious, and not in accordance with law;

4. Set aside and permanently enjoin the cancellation of the solicitation and order THE UNITED STATES to proceed with the solicitation in its current form;

5. Declare that the MEO's bid proposal does not meet the terms of the solicitation;

6. Permanently enjoin any award under the solicitation to the MEO and order THE UNITED STATES to award the contract under the solicitation to RKR

7. Award Plaintiff its costs of this action and attorneys' fees and expenses; and

8. Grant such other relief as the Court deems just and proper.

DATED January 25, 2008

Respectfully submitted,

David F. Barton, Attorney-in-Charge
Tex. State Bar No. 01853300
**THE GARDNER LAW FIRM**
745 E. Mulberry Avenue, Suite 100
San Antonio, Texas 78212-3149
Telephone: (210) 733-8191
Telecopier: (210) 733-5538
E-Mail: dfb@tglf.com