**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC | § | |
| A Mississippi Limited Liability | § | |
| Corporation | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 08-CV-00062-MCW |
| | § | Judge Williams |
| THE UNITED STATES | § | |
| Defendant. | § | |

**MOTION FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

TO THE HONORABLE JUDGE OF THE U.S. COURT OF FEDERAL CLAIMS:

Plaintiff RKR JOINT VENTURE, LLC ("RKR") files this its Motion for Leave to Supplement the Administrative Record, and would show as follows:

## I. RKR's Claims, Requested Relief, and Theories and Their Relationship to the True Administrative Record

This case involves an Air Force solicitation with an administrative record now containing[1] four subparts: a cancellation subrecord, an awardee selection subrecord, an administrative appeal subrecord, and a GAO protest subrecord. Each subrecord reflects a final agency action, two of which (the cancellation and awardee selection) are challenged in RKR's complaint and two of which (the dispositions of the administrative appeal and GAO protest) contain facts and conduct by the Air Force relevant to the former.

---

[1] As the Court is aware, the Air Force, acting through personnel other than the contracting officer, announced a purported "intent to cancel" the solicitation before the GAO, after which time *RKR Joint Venture LLC v. U.S.*, No. 07-630 (Fed. Cl., filed on Aug. 24, 2007) was filed. During No. 07-630, it was noted that the Air Force's contracting officer was formally required, pursuant to FAR 15.206 (48 C.F.R. § 15.206), to make the record determination to cancel or amend the solicitation, which had not yet occurred. Following the contracting officer's determination to cancel on January 7, 2008, the parties filed a Rule 41(a)(1) stipulation of voluntary dismissal without prejudice in No. 07-630, and RKR filed this action on January 29, 2008.

RKR ultimately seeks (1) to have the cancellation of the solicitation set aside; [2] (2) to have the previous selection of the Air Force's civilian employee bidder, or Most Efficient Organization (MEO), as the awardee blocked;[3] (3) to have the Air Force ordered to proceed with the solicitation in its present form, the result of which will be RKR as the last bidder standing.[4] To the extent RKR receives the first or first and second items of relief, but not a de facto award as a result of proceeding with the procurement—and/or, to the extent RKR shows a freestanding violation of statute or regulation in the procurement process[5]—RKR also seeks an award of bid preparation and proposal costs. *See* Dkt #1 ¶ 61-70 (first, second, and third claims for relief).

The cancellation is obviously at the forefront right now. As explained further below, the freestanding violation(s) of statute or regulation relevant to the bid preparation

---

2 The cancellation puts the MEO in the performance of the needed services with the same flexibility, RKR argues, as was provided for by the solicitation. It does so for the period of time necessary to resolicit the requirements, which is also the time the agency claims is crucial to implement a configuration change involving AFNetOps that would have otherwise been implemented during the life of the contract, as provided for by the solicitation. This juxtaposition clearly defines the disingenuousness of the agency's position to cancel because the contract allegedly could not meet the agency's needs. Any changes due to AFNetOps are the natural progression of business whether continuing without a contract or within the confines of a contract pursuant to the solicitation.

3 Understanding that as part of the Air Force's duplicitous cancellation to thwart award to RKR, it has stated it would not actually consummate such an award to the MEO, yet that is effectively what happened with the cancellation.

4 Alternatively, the court could provide for the MEO bid to be rescored, but, as argued elsewhere herein by RKR, that is not possible if the requirements of the solicitation are clear. *See* Note 7, *infra*.

5 Such as FAR 1.602-2(b), 3.101-1, or 15.306(e) (impropriety or government conduct that favors one offeror over another; revelation of offeror's price without permission). This harm is not negated by the cancellation of the solicitation. It is just as harmful and actionable as if the solicitation had been awarded improperly. In the eyes of the bidder truly entitled to the award, as well as the law, there is no difference. Proof of a freestanding violation may allow for receipt of bid preparation and proposal costs even if RKR receives a de facto award under the solicitation. Absent a freestanding violation, it is generally assumed that such costs are included in the contract award. *Bannum, Inc. v. U.S.*, 56 Fed.Cl. 453, 462 (2003).

and proposal cost claim are closely related to RKR's theories as to why the cancellation is arbitrary, capricious, or not in accordance with law.

By contrast, the selection of the MEO as the awardee will only be addressed if the cancellation is set aside. RKR agrees that there is no point having the Court consider materials proposed to supplement the administrative record before the case reaches the point at which it is necessary for the Court to do so. Therefore, additional supplementation may be necessary to the extent the other subrecords described above become relevant at a later time in the case.

The contracting officer's decision to cancel is grounded in alleged changes in staffing and configuration for the communications and information technology network covered by the solicitation.[6] The requirements of the solicitation set forth the staffing and configuration that was to be bid. *See* Dkt #1 at ¶ 11-22. As to the decision to cancel on those grounds, RKR has alternative theories as to why it is unlawful.

First, if the requirements of the solicitation are clear in RKR's favor, no supplementation of the Administrative Record is needed. By the contracting officer's own admission in his decision, this was a solicitation to be bid in terms of the existing "date in time" requirements. *Dkt* #9 Tab 20, AR 1350 ¶ 2 ("The Keesler PRD was developed in Apr 02 which included all communication requirements for that date in time"). Under the solicitation, all "configuration changes" would occur at direction of the Air Force over the life of the contract and were not required to be bid. Thus, changes in network organization and staffing structure were able to be reasonably anticipated by

[6] All other grounds cited by the contracting officer, to the extent the Court accepts them as valid over the arguments to be presented by RKR, are grounds that, taken apart or together, would also not justify amendment or cancellation of this solicitation.

bidders per FAR 15.206(e), rendering cancellation unlawful. Even though the requirements to be bid were clear and able to be reasonably anticipated by bidders per FAR 15.206(e), the Air Force let the MEO evade them, which was also unlawful, because noncompliant proposals cannot form the basis of an award. *ManTech Telecommunications & Information Systems Corp. v. U.S.*, 49 Fed.Cl. 57, 71 (2001).[7]

As a second alternative, the requirements of the solicitation are ambiguous, rendering the solicitation defective as a matter of law. RKR made inquiry on the requirements as part of the "Questions and Answers" discussed *infra*, thus fulfilling its duty if the ambiguity is patent. Further, RKR's interpretation is reasonable if the ambiguity is latent. *See Helix Electric v. U.S.*, 68 Fed.Cl. 571, 582-588 (2005) (Williams, J.) (setting forth patent and latent ambiguity analysis in a case regarding another solicitation for Keesler Air Force Base, MS). RKR relied on its interpretation of the requirements when preparing its bid.

If the solicitation is ambiguous as to whether bidders were supposed to consider certain configuration changes as part of their bid, a position specifically opposed by RKR, there is no way to determine whether a bidder could "reasonably anticipate" them per FAR 15.206(e). Thus, cancellation merely compounds the error of an ambiguous solicitation because there is no way to determine what to do with the solicitation and how

---

[7] If the requirements are clear in RKR's favor, the MEO, which did not bid the solicitation in that manner, should not be permitted to amend its proposal to conform to the requirements as the bidder in *ManTech* was, because the Air Force acted unlawfully by disregarding the requirements and stating an intention to award to the MEO, and thus waived further discussions with the MEO to conform to the requirements.

Even if the court should determine the MEO bid should be revised as opposed to blocked, the process is the same in that the MEO bid must be rescored. The only question is whether the responsible rescoring official will be restricted by the Court as a result of the MEO's noncompliant proposal in the face of a clear solicitation.

to determine the unlawfulness of the cancellation. Bid preparation and proposal costs are recoverable in this situation.[8]

The Air Force, however, may have attempted to clarify the ambiguity by conduct, ratification, or representations to the bidders, an issue that can only be confirmed by discovery and supplementation of the administrative record.

As a third alternative, the Air Force attempted to clarify the requirements by conduct and ratification of a particular interpretation, but then switched their preferred interpretation 180 degrees. This amounted to an arbitrary shift between irreconcilable positions by different persons in the Air Force, at different times between the issuance of the solicitation and the contracting officer's decision to cancel. The result of this was the default selection of the MEO to perform the required services, whether by pretext or not.

The Air Force's arbitrary switch in positions is implicit from the record, but has not been explained by the persons involved in that switch: in particular, the contracting officer recommending cancellation, Ron Mortag, and the director of AFNetOps, Maj. Gen. John Maluda. The latter, Maluda, reviewed the administrative appeal and concurred with the decision to select the MEO as the awardee on May 23, 2007, offering no

---

[8] Under this theory of the case, review of the cancellation decision is rendered impossible by the ambiguous solicitation and subsequent conflicting clarification attempts by the Air Force. The cancellation and the selection of MEO as awardee are set aside as arbitrary, capricious, and not in accordance with law, and a new, clearer solicitation is issued by the Air Force.

To equate an order to issue a new solicitation with upholding the contracting officer's decision to cancel and resolicit, however, is mistaken, because it ignores the harm caused by the original ambiguous solicitation and the Air Force's subsequent conduct and ratification of one interpretation of that solicitation. Upon a finding that those causes amount to action in connection with a procurement that is arbitrary, capricious, or not in accordance with law, that harm is recoverable in the form of bid preparation and proposal costs. 28 U.S.C. § 1491(b)(1)-(2).

indication that cancellation was warranted as a result of configuration changes due to AFNetOps. *See* Dkt #1 at ¶ 33-40.

It is implicit from the record that the Air Force, to include Mr. Mortag and Maj. Gen. Maluda, originally took the position that the requirements of the solicitation included staffing and configuration changes for the communications and information technology network portion of the solicitation. The Air Force maintained this position from the time of solicitation issuance, through the administrative appeal when it was again ratified by Maj. Gen. Maluda on May 23, 2007, until July 2, 2007, when other Air Force staff announced a purported "intent to cancel" before the GAO.

In his cancellation decision, Mr. Mortag now does not address the requirements at the relevant "date in time" (he says only what is no longer required or what is not affected), or the solicitation's "configuration change" language. Perhaps the reason why is because the "intent to cancel" announced to the GAO, by persons without authority to decide whether to cancel the solicitation in the first instance, was in fact a reversal of the Air Force's earlier position on whether the requirements accounted for such changes. Indeed, one staff member involved in the "intent to cancel" before GAO wrote "I recommend your contracting officer also cancel the solicitation because ambiguity substantially affected competition," AR 1024, an ambiguity that he himself was furthering by switching the Air Force's position. The Air Force's two positions are irreconcilable, and thus there is no way to evaluate what a bidder could "reasonably anticipate" per FAR 15.206(e), rendering the cancellation arbitrary, capricious, and not in accordance with law.

Closely related, but perhaps also viewed as a separate fourth alternative theory, is the propriety of the direct representations the Air Force made about the solicitation requirements to RKR and to the MEO. This is the quintessential "muddying the rules" case, *see Gentex v. U.S.*, 58 Fed.Cl. 634, 652 (Williams, J.) (also involving the Air Force), where the government fails to issue a clear solicitation and fails to advise one bidder "that it had a differing interpretation of the fundamental basis on which this procurement was being conducted," while giving a contrary interpretation to another bidder. The official representations regarding the solicitation made by the Air Force through persons responding to formal "Questions and Answers" are not fully in the record (a copy of one is Attachment II-A to RKR's GAO appeal, Dkt #9 Tab 2); nor are the understandings of RKR or the MEO management plan preparer as to what other representations, if any, were made to each, and by whom.

It appears likely that different representations were made, given the discrepancy between how RKR and the MEO bid the communications and information technology network staffing requirements—a discrepancy that ultimately proved critical in the selection process, but which is not able to be ascertained from the administrative record filed by the government, either defect being potentially dispositive to the case. Attachment 1 to the cancellation decision, a document associated with the "intent to cancel" announced at GAO, acknowledges that the source of this discrepancy was a differing interpretation over what was to be bid:

> Lesson Learned: The bifurcated process in the "old" A-76 prevented the contracting officer and Source Selection Authority from reviewing the MEO staffing and costing proposals and adequately sharing information with the Independent Review Office (IRO) *to ensure the MEO was based on the same requirements and assumptions as private sector offers*.

AR 1026 (emphasis added).

RKR's first theory of the case is that the solicitation clearly accounted for configuration changes from AFNetOps that are the alleged grounds for cancellation. The government's **litigation** position is that the solicitation clearly did not, and it has prepared a cancellation subrecord accordingly.

But evidence from the other subrecords in the administrative record, including the administrative appeal and GAO protest, *see* discussion, *supra*, and Dkt #9, Tabs 1, 2 (Attachments I-C, II-A, II-B, II-D), 5 & 8, indicates that the Air Force may not have always believed the solicitation in this case was as clear as it now says (or clear in the manner it now says). The significance of the reversal in position between Maj. Gen. Maluda's administrative appeal decision on May 23, 2007, and the announcement of "intent to cancel" before GAO on July 2, 2007, only 50 days later, is unavoidable.

In short, the administrative record is missing a complete inventory and explanation of the Air Force's position of what the solicitation requirements really were at the "date in time" it was issued, to include attempted clarifications of a theoretically ambiguous solicitation by conduct, ratification, or representations to the bidders. This omission is directly relevant to RKR's claim to set aside the cancellation and its claim for bid preparation and proposal costs.

## II. Standard of Review

"In reviewing the decision-making process of an agency, the court is generally limited to the administrative record developed by the agency." *Bannum, Inc. v. U.S.*, 56 Fed.Cl. 453, 455 n.2 (2003). "But the court will permit supplementation of the record when it is necessary to preserve meaningful judicial review." *Id*.

A court may consider evidence outside of the administrative record in the following limited situations: (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; ... and (8) in cases where relief is at issue. *Protection Strategies, Inc. v. U.S.*, 76 Fed. Cl. 225, 233-234 (2007).

The Court of Federal Claims frequently has adopted and applied these exceptions to the review of outside evidence in bid protest cases. *Id*. The Court has explained:

> [T]he primary focus of the court's review should be the materials that were before the agency when it made its final decision. This is a presumption necessitated by the limited nature of the court's inquiry. As a practical matter, however, in most bid protests, the "administrative record" is something of a fiction, and certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review. This is true in the contract award context if for no other reason than that, due to the absence of a formal record, the agency has to exercise some judgment in furnishing the court with the relevant documents. In order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence, and possibly limited discovery aimed at determining, for example, whether other materials were considered, or whether the record provides an adequate explanation to the protester or the court as to the basis of the agency action. It follows that discovery as well as the breadth of the court's review has to be tailored in each case. Whether testimony is needed to frame the issues is likewise dependent on the particular circumstances. Consequently, this court has adopted a flexible approach both in putting together the evidence that will be considered and in discovery, balancing the limited nature of the court's review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry.

*Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 349 (1997).

## III. Requested Supplementation

A. Depositions to supplement the record

1. Deposition of the Contracting Officer, Mr. Ron Mortag
2. Rule 30(b)(6) deposition of the preparer of Attachment 4 "Analysis of Keesler PRD" to the cancellation decision (to the extent Mr. Mortag is not knowledgeable as to the entire contents and all details of the Attachment)
3. Deposition of the Head of the Administrative Appeal Authority, and Director of AFNetOps, Maj. Gen. John W. Maluda
4. Rule 30(b)(6) deposition of person(s) responsible for providing the "Questions and Answers" to bidders, more specifically, but not limited to the person responsible for providing the answer to Question # T-07-046
5. Rule 30(b)(6) deposition of the preparer of the MEO management plan

The Air Force's clarification or interpretation of the solicitation, and subsequent changes in position, are relevant factors in the validity of the cancellation decision that are not adequately explained in the record before the Court. Two persons who made such clarification or interpretation, by conduct or ratification, are the contracting officer Ron Mortag, and the Head of the Administrative Appeal Authority and director of AFNetOps, Maj. Gen. John W. Maluda.

While Mr. Mortag may have originally interpreted the requirements of the solicitation one way, Attachment 4 to his cancellation decision (AR 1345) interprets them in a different manner without addressing some important aspects and requirements of the solicitation. In order to determine the relationship between Attachment 4 and the clarification(s) given by the Air Force, deposition of the preparer of Attachment 4 is requested, to the extent Mr. Mortag was not the preparer (he says in ¶ 5 of his cancellation decision that he was not) and is not knowledgeable as to Attachment 4's entire contents and all details.

In addition, to the extent they differ from the contracting officer, the person(s) responsible for providing the "Questions and Answers" to bidders also made

representations as to the solicitation's requirements. The preparer of the MEO management plan received such representations, and to the extent they received additional or different representations, reflected in the manner in which the MEO bid the solicitation, those representations are relevant to explaining the position(s) regarding the solicitation requirements taken by the Air Force at different times.

RKR moves for leave to depose the foregoing persons and to supplement the administrative record with their depositions.

Deposition of agency decisionmakers, particularly the contracting officer, is sometimes permitted in the procurement context, subject to significant limitations. *See e.g., Impresa Construzioni Geom. Domenico Garufi v. U.S.*, 238 F.3d 1324, 1338-39 (Fed. Cir. 2001).

RKR does not seek the mental state or deliberations of any of the persons listed above. RKR needs to learn what was represented about the solicitation requirements, when, to whom, and why. Such representation or interpretation may have occurred through conduct and ratification as well as express verbal and written statements regarding specific solicitation requirements.

In this case, it is indisputable there is some evidence that, at different times, the text of the solicitation requirements may have meant different things to different people in the Air Force and may have been represented differently to different parties. RKR has always believed the text is clear in its favor. The government now argues the text is clear in favor of the Air Force, but the government's position is undercut by its shifting interpretations leading up to the cancellation. RKR is entitled to fill in this gap in the

record by deposing the foregoing persons to preserve its case in the event the Court does not find the solicitation clear in RKR's favor.

These depositions are relevant to both RKR's claim to set aside the cancellation and its claim for bid preparation and proposal costs. To the extent the government thinks the solicitation itself and the contracting officer's determination are all that are necessary to resolve the case at this stage, there is still relevant testimony to be obtained for purposes of RKR's claim for bid preparation and proposal costs. The Court can find a freestanding violation of the FAR under 28 U.S.C. 1491(b)(1) due to impropriety even if the solicitation has been cancelled or if the award to the Air Force is upheld. *See e.g.*, *L-3 Communications Integrated Systems, L.P. v. U.S.*, 79 Fed.Cl. 453, 462 (2007) (Williams, J.); *Gentex Corp. v. U.S.*, 58 Fed.Cl. 634, 651-656 (2003) (Williams, J.).

The fact that the Air Force may have one view of how to read the solicitation requirements and the contracting officer's decision does not restrict the Court to the record made by the Air Force (which was done after the filing of No. 07-630) or make supplementation automatically improper, especially given the procedural history of the solicitation in this case. Moreover, for obvious reasons, the record made by the Air Force largely avoids material relevant to RKR's bid preparation and proposal cost claim.

B. Documents and production to supplement the record

1. The Unit Manning Document evidencing staffing requirements for all network operations at the "date in time" of the final amended solicitation.

Somewhat remarkably, even though the contracting officer agrees that this is a "date in time" solicitation, *Dkt* #9 Tab 20, AR 1350 ¶ 2 ("The Keesler PRD was developed in Apr 02 which included all communication requirements for that date in

time"), there is no supporting document in the record stating what the staffing requirements actually were at that "date in time." An updated UMD from July 30, 2007 was produced in No. 07-630, but is not in the record here . A UMD and any other document that would evidence staffing requirements at the "date in time" of the final amended solicitation is not in the record, and RKR moves that the government be ordered to produce those documents to supplement the administrative record.

2. The Court is requested to permit citation to the following Air Force documents referenced in the solicitation, and their updates, as if fully included in the record:

a. Circular A-76
b. Air Force Instruction (AFI) 33-115V1
c. AFI 38-203
d. AFI 33-115

RKR sought the foregoing as a stipulation from the government but received no response. RKR moves that the Court permit the administrative record to incorporate by reference the documents listed above and referenced in the solicitation, and any updates that have occurred since the date of the solicitation, if any.

3. All documents Maj. Gen. Lord relied upon and all persons he consulted for his Aug. 2 memo.

These requests are relevant to both a bidder's ability to reasonably anticipate the alleged basis for the cancellation and to the claim of impropriety related to the claim for bid preparation and proposal costs. The government's identification will confirm whether or not the record before Lord substantially matches the one before the contracting officer, thus indicating whether additional supplementation is warranted on the basis of shifting interpretations of the solicitation. RKR moves that the government be ordered to identify the foregoing documents and persons and produce any such documents to supplement the administrative record.

4. The government is requested to identify all documents Maj. Gen. Maluda relied upon and all persons he consulted in his decision on the administrative appeal.

These requests are relevant to both a bidder's ability to reasonably anticipate the alleged basis for the cancellation and to the claim of impropriety related to the claim for bid preparation and proposal costs. The government's identification will confirm the relationship of the record before Maluda and the one before the contracting officer, thus indicating whether additional supplementation is warranted on the basis of shifting interpretations of the solicitation prior to Maj. Gen. Maluda's deposition. RKR moves that the government be ordered to identify the foregoing documents and persons and produce any such documents to supplement the administrative record.

5. All "Questions and Answers" propounded to the Air Force regarding the solicitation by bidders, and responses (if any) thereto by the Air Force, at any time prior to the selection of the MEO as the anticipated awardee.

These documents contain the substance of some of the representations made by the Air Force to bidders, and are directly relevant to both a bidder's ability to reasonably anticipate the alleged basis for the cancellation and to the claim of impropriety related to the claim for bid preparation and proposal costs. Production will be necessary prior to the depositions referenced in Part III.A above. RKR moves that the government be ordered to produce these documents to supplement the administrative record.

RKR also moves for production of the following documents to supplement the administrative record in order to conduct the 30(b)(6) deposition of the MEO management plan preparer referenced in Part III.A above,:

6. The MEO management plan.

7. All correspondence between the MEO and the Air Force regarding interpretation of the terms or requirements of the solicitation, at any time prior to the selection of the MEO as the anticipated awardee.

8. The MEO Operational Audit.

9. The Documents relevant to the actual cost comparison or cost evaluation of the MEO's bid, to include:

(i) The final Cost Comparison File bearing the Independent Review Officer (IRO) signature.
(ii) The COMPARE Study File including passwords current as of the date of bid closing.
(iii) The COMPARE Study files including passwords prior to final tax update.
(iv) The COMPARE Study files including password at time of certification by Air Force Audit Agency.
(v) Any and all working papers developed by the Commercial Activities Team that support the MEO and In-House Cost Estimate.
(vi) The interim and final IRO review statements or memoranda identifying problems requiring corrective action (s) and documentation of the implemented corrective action.
(vii) Any and all correspondence with the Air Force Audit Agency concerning this solicitation including the certification of the MEO proposal.

These documents reflect the substance of some of the representations made by the Air Force to bidders, and are directly relevant to both a bidder's ability to reasonably anticipate the alleged basis for the cancellation and to the claim of impropriety related to the claim for bid preparation and proposal costs. Production is requested prior to any deposition referenced in Part III.A.

## IV. <u>Statement Regarding Conferral</u>

RKR made a significant effort to confer in writing with the government regarding the above-listed supplementation and any objections thereto well in advance of this motion, but received no response. *See* **Exhibit 1** (conferral letter).

## V. <u>Conclusion, Prayer and Request for Relief</u>

RKR respectfully requests leave to supplement the Administrative Record filed in *Dkt* #9 with the foregoing depositions (including leave to notice) and documents and requests the Court order Defendant to produce the foregoing deponents and documents at

a time to be agreed to by the parties or if necessary a time ordered by the Court. Documents may be produced in electronic form upon agreement by the parties.

DATED February 11, 2008

Respectfully submitted,

/s/

David F. Barton, Attorney-in-Charge
State Bar No. 01853300
**THE GARDNER LAW FIRM**
745 E. Mulberry Avenue, Suite 100
San Antonio, Texas 78212-3149
Telephone: (210) 733-8191
Telecopier: (210) 733-5538
E-Mail: dfb@tglf.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded in compliance with the Federal Rules of Civil Procedure to all counsel of record as set out below, on this the 11th day of February, 2008, as follows:

Will Rayel
Trial Attorney
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., NW, Room 12100
Washington, DC 20530 (20005 for FedEx)
phone: (202) 616-0302
facsimile: (202) 307-0972

***VIA E-FILING***

/s/

DAVID F. BARTON