The Gardner Law Firm
A Professional Corporation

David F. Barton
Wm. Richard Davis (Retired)
Jay K. Farwell
Dawn B. Finlayson†††
Gregory M. Huber
R. Wes Johnson†
Mary Q. Kelly
Daniel P. McCarthy††
William W. Sommers
J.P. Vogel
Thomas J. Walthall, Jr.
*†Board Certified-Consumer & Commercial Law*
*††Board Certified-Civil Trial Law*
*†††Board Certified-Labor & Employment Law*
*Texas Board of Legal Specialization*

February 4, 2008

William P. Rayel
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., NW, Room 12100
Washington, DC 20005

***VIA EMAIL William.Rayel@usdoj.gov***

Subject: *RKR Joint Venture, LLC v. United States, NO. 08-CV-00062-MCW, U.S. Court of Federal Claims*

Dear Mr. Rayel:

As stated previously, the Draft Status Report looks fine and can be filed. The dates can be kept as shown except you will obviously file the government's version of the administrative record today or tomorrow; as long as it is filed by the end of tomorrow it will not affect our timetable for filing a motion to supplement on the 11th.

The following are RKR's proposals regarding supplementation of the administrative record. Your response to these proposals is requested by Noon on Thursday of this week, February 7, 2008.

I. Include the Previously Filed Administrative Record

The administrative record should include the previously filed administrative record from No. 07-630. At a minimum that record is relevant to RKR's freestanding claim for bid prep and proposal costs. That claim is not moot, and cancellation does not negate the harm, contrary to p. 8-9 of the government's motion to dismiss in No. 07-630. The Court could award bid prep and proposal costs under 28 U.S.C. 1491(b)(2) if it found a violation of a statute or regulation in association with the cancellation, or a violation of a statute or regulation generally during the course of the procurement process.

The Gardner Law Firm
A Professional Corporation

The reason for highlighting this issue is to head off any attempt by the government to restate the argument on p. 8-9 of the motion to dismiss in No. 07-630 at a later time in this case. The four cases cited in the motion to dismiss in No. 07-630 are not persuasive and indeed conflict with the obvious point that so long as the Court has jurisdiction to resolve a claim under 28 U.S.C. 1491(b)(1), an award of bid prep and proposal costs is possible under 28 U.S.C. 1491(b)(2).

The government relies on language from *CCL Service Corp. v. U.S.*, 43 Fed.Cl. 680, 690 (1999) that "a decision on the merits of the award must be made prior to the award of bid preparation and proposal costs. Without analysis of the merits of the award, the court lacks a basis to grant further relief." There is nothing in *CCL Service Corp*. that restricts the "merits" to an "award". Again, it is difficult to see why the "merits" would be any narrower than the relief available under § 1491(b). Namely, if the Court found a "violation of any statute or regulation in connection with a proposed procurement," under § 1491(b)(1), there is nothing that would prevent it from awarding bid preparation and proposal costs under § 1491(b)(2).

In *SKJ & Associates v. U.S.*, 67 Fed.Cl. 218, 227 (2005) and *Lion Raisins v. U.S.* (*Lion Raisins III*), 69 Fed.Cl. 32, 26 (2005), the plaintiffs did not contest the cancellations at issue. Thus, a decision on the merits of the award was no longer possible. That is not the situation here. Theoretically, if the cancellation is set aside, there will be a decision on the merits of the award to the MEO.

Finally, in *CWJ Gov't Travel, Inc. v. U.S.*, 46 Fed.Cl. 554, 559 n.6 (2000), "the Navy's cancellation of the solicitation was not arbitrary or capricious," thus the plaintiff could not recover bid preparation and proposal costs. Had the Court found arbitrary and capricious action by the Navy, there is nothing in that case that would bar a claim for bid preparation and proposal costs.

The content of the administrative record filed in No. 07-630 is relevant to the claim for bid preparation and proposal costs and should be retained in the administrative record in this case.

II. Supplementing the Administrative Record in Stages

That goes to a second issue, which is that there is essentially an award subrecord, an administrative appeal and GAO subrecord, and a cancellation subrecord in this procurement process, all part of a single administrative record. The cancellation is obviously at the forefront right now. That does not mean, however, that it is the only agency action being challenged, or that there are not other agency actions (such as the award to the MEO) that would be addressed if the cancellation were set aside. RKR agrees that there is no point to having the Court consider materials proposed to supplement the administrative record before the case reaches the point at which it is necessary for the Court to do so. The government's agreement is requested to acknowledge that additional supplementation may be necessary to the extent the other subrecords described above become relevant at a later time in the case.

III. RKR's proposed supplementation at this stage

The focus at this stage is on the solicitation and what changes the bidders reasonably could have anticipated based on what the requirements were at the “date in time” of bidding and the representations made by the Air Force. That information is currently not in the record and RKR must obtain it to put on a full case encompassing all of its theories and arguments pertaining to the anticipated requirements and cancellation, some of which are in the alternative.

A. Depositions to supplement the record

RKR is aware that deposition of agency decisionmakers, particularly the contracting officer, is sometimes permitted in the procurement context, subject to significant limitations. *See e.g., Impresa Construzioni Geom. Domenico Garufi v. U.S.*, 238 F.3d 1324, 1338-39 (Fed. Cir. 2001). RKR does not seek the contracting officer's mental state or deliberations. The reality here is that there is a dispute over the meaning of text in a solicitation, whether it is clear or ambiguous, what could be reasonably anticipated from the text by a bidder, and the representations that were made about that text to RKR and to the MEO. There is certainly some evidence that, at different times, that text may have meant different things to different people in the Air Force and may have been represented differently to different parties.

The Air Force's position on these matters is not in the record of the contracting officer's decision. The only way to obtain it and get to the bottom of things is to depose the contracting officer (Mr. Mortag) and reviewer of the administrative appeal (Maj. Gen. Maluda, who is also the head of AFNetOps).

In addition, RKR seeks Rule 30(b)(6) depositions of the person(s) responsible for providing the “Questions and Answers” to bidders, and the preparer of the MEO management plan, to ascertain the representations made by the Air Force regarding the requirements of the solicitation.

These depositions are relevant to both RKR’s claim to set aside the cancellation and its claim for bid preparation and proposal costs. To the extent the government thinks the solicitation itself and the contracting officer's determination are all that are necessary to resolve the case at this stage, there is still relevant testimony to be obtained for purposes of RKR’s claim for bid preparation and proposal costs. The Court can find a freestanding violation of the FAR under 28 U.S.C. 1491(b)(1) due to impropriety even if the solicitation has been cancelled or if the award to the Air Force is upheld. *See e.g., L-3 Communications Integrated Systems, L.P. v. U.S.*, 79 Fed.Cl. 453, 462 (2007) (Williams, J.); *Gentex Corp. v. U.S.*, 58 Fed.Cl. 634, 651-656 (2003) (Williams, J.).

Again, to repeat - the fact that the Air Force may have one view of how to read the solicitation requirements and the contracting officer's decision does not restrict the Court to the record made by the Air Force (which was done after the filing of No. 07-630) or make supplementation automatically improper, especially given the procedural history of the solicitation in this case. Moreover, for obvious reasons, the record made by

the Air Force largely avoids material relevant to RKR's bid preparation and proposal cost claim.

B. Documents and production to supplement the record

1. The Unit Manning Document evidencing staffing requirements for all network operations at the "date in time" of the final amended solicitation. Currently only an updated UMD from July 30, 2007 has been produced. Any other document that would evidence staffing requirements at the "date in time" of the final amended solicitation is also requested.

2. RKR has a better resolution version of its GAO protest than was scanned previously (Tab 4 of record filed in No. 07-630). Also, the one that was used as Tab 4 is missing the second to last page of RKR's administrative appeal. Please use this identical version with the additional page, attached to this email, when filing the record.

3. The government's stipulation is requested to permit citation to the following Air Force documents referenced in the solicitation, and their updates:

a. Circular A-76
b. Air Force Instruction (AFI) 33-115V1
c. AFI 38-203
d. AFI 33-115

4. The government is requested to identify all documents Maj. Gen. Lord relied upon and all persons he consulted for his Aug. 2 memo. These requests are relevant to both a bidder's ability to reasonably anticipate the alleged basis for the cancellation and to the claim of impropriety related to the claim for bid preparation and proposal costs. The government's identification will confirm whether or not the record before Lord substantially matches the one before the contracting officer, thus indicating whether additional supplementation is warranted.

5. The government is requested to identify all documents Maj. Gen. Maluda relied upon and all persons he consulted in his decision on the administrative appeal. These requests are relevant to both a bidders ability to reasonably anticipate the alleged basis for the cancellation and to the claim of impropriety related to the claim for bid preparation and proposal costs. The government's identification will confirm the relationship of the record before Maluda and the one before the contracting officer, thus indicating whether additional supplementation is warranted as part of Maj. Gen. Maluda's deposition.

6. All "Questions and Answers" propounded to the Air Force regarding the solicitation by bidders, and responses (if any) thereto by the Air Force, at any time prior to the selection of the MEO as the anticipated awardee. This item will be necessary prior to the 30(b)(6) deposition referenced in Part III.A above, as well as in advance of the other depositions.

7. The MEO management plan.

8. All correspondence between the MEO and the Air Force regarding interpretation of the terms or requirements of the solicitation, at any time prior to the selection of the MEO as the anticipated awardee.

9. The MEO Operational Audit.

10. The Documents relevant to the actual cost comparison or cost evaluation of the MEO's bid, to include:

(i) The final Cost Comparison File bearing the Independent Review Officer (IRO) signature.
(ii) The COMPARE Study File including passwords current as of the date of bid closing.
(iii) The COMPARE Study files including passwords prior to final tax update.
(iv) The COMPARE Study files including password at time of certification by Air Force Audit Agency.
(v) Any and all working papers developed by the Commercial Activities Team that support the MEO and In-House Cost Estimate.
(vi) The interim and final IRO review statements or memoranda identifying problems requiring corrective action (s) and documentation of the implemented corrective action.
(vii) Any and all correspondence with the Air Force Audit Agency concerning this solicitation including the certification of the MEO proposal.

Items 7, 8, 9, and 10 will be necessary prior to the 30(b)(6) deposition of the preparer of the MEO management plan and likely prior to the other depositions as well.

I would prefer to confer on all of the above to lessen the Court's workload, or at least to try and understand what objections the government may have. Please contact me by email to set up a time on Thursday to conference.

Very Truly Yours,

**THE GARDNER LAW FIRM**
A Professional Corporation

/s/
David F. Barton