No. 08-62C
(Judge Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

RKR JOINT VENTURE, LLC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-0302
Fax. (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

Gary R. Allen
Air Force Legal Operations Agency,
Commercial Litigation Division
1501 Wilson Blvd., Suite 600
Rosslyn, VA 22209

February 21, 2008

**TABLE OF CONTENTS**


QUESTIONS PRESENTED ..... 1

STATEMENT OF THE CASE ..... 1

I. Statement Of Facts ..... 1

II. Course Of Proceedings ..... 4

III. Procedural Posture Of The Case ..... 6

ARGUMENT ..... 7

I. Standard For Supplementing The Administrative Record ..... 7

II. The Court Should Deny RKR's Motion To Supplement The Administrative Record With Depositions Because Its Justifications Are Irrelevant To The Ultimate Issue In The Case ..... 9

A. RKR's Justification For Depositions Based Upon Its Argument That Bidders Could Have Reasonably Anticipated Changes To The Air Force's Requirements Is Irrelevant To The Ultimate Issue At This Stage Of The Case ..... 9

B. Even If RKR's Theory That Bidders Could Have Reasonably Anticipated Changes To The Air Force's Requirements Is Relevant, RKR Has Failed To Provide Adequate Justification For The Specific Depositions RKR Seeks ..... 12

C. RKR's Justification For Depositions Based Upon Its Argument That They Are Relevant To A "Freestanding Violation Of The FAR" Fails Because There Is No Such Thing As A "Freestanding Violation Of The FAR" And Because RKR Has Not Identified Any Such Violation With Specificity ..... 15

III. With Limited Exceptions, The Court Should Deny RKR's Motion To Supplement The Administrative Record With Documents ..... 19

A. The Court Should Supplement The Administrative Record With The Unit Manning Document At The Date In Time Of The Final Amended Solicitation, As Well As An Additional Document Relied Upon In The Technical Analysis ..... 19

B. The Court Should Allow The Parties To Cite To Circular A-76 and AFI 38-203, But Should Not Allow The Parties To Cite To AFI 33-115 and AFI-33-115V1 (June 1999) ..................... 20

C. The Court Should Deny RKR's Request To Supplement The Administrative Record With Documents (And Consultations) Relating To General Lord's August 2, 2007 Memorandum And General Maluda's Decision In The Administrative Appeal ........... 21

D. The Court Should Deny RKR's Request To Supplement The Administrative Record With All "Questions And Answers" .................. 22

E. The Court Should Deny RKR's Request To Supplement The Administrative Record With Documents Relating To The MEO's Bid And The Evaluation Of Bids .............................................. 23

CONCLUSION ........................................................................................................ 23

## TABLE OF AUTHORITIES

### CASES

ABF Freight System, Inc. v. United States,
55 Fed. Cl. 392 (2003) .......... 10

Advanced Data Concepts, Inc. v. United States,
216 F.3d 1054 (Fed. Cir. 2000) .......... 7

Aero Corp. v. United States,
38 Fed. Cl. 408 (1997) .......... 7

Am. Gen. Leasing, Inc. v. United States,
218 Ct. Cl. 367,
587 F.2d 54 (1978) .......... 11

Aviation Enterprises, Inc. v. United States,
8 Cl. Ct. 1 (1985) .......... 9, 11-12

Bannum, Inc. v. United States,
56 Fed. Cl. 453 (2003) .......... 17

Bannum, Inc. v. United States,
404 F.3d 1346 (Fed. Cir. 2005) .......... 6

Block v. United States,
66 Fed. Cl. 68 (2005) .......... 16

CCL Serv. Corp. v. United States,
43 Fed. Cl. 680 (Fed. Cl. 1999) .......... 16, 18

CW Gov't Travel, Inc. v. United States,
46 Fed. Cl. 554 (2000) .......... 18

Camp v. Pitts,
411 U.S. 138 (1973) .......... 7

County of Los Angeles v. Davis,
440 U.S. 625 (1979) .......... 16

Cygnus Corp. v. United States,
72 Fed. Cl. 380 (2006) .......... 9, 11

Data Monitor Sys., Inc. v. United States,
74 Fed. Cl. 66 (2006) ........................................................................................ 16

Emerald Coast Finest Produce Co. v. United States,
76 Fed. Cl. 445 (2007) ........................................................................................ 8

GAF Bldg. Materials Corp. v. Elk Corp.,
90 F.3d 479 (Fed. Cir. 1996) .............................................................................. 6

Gentex Corp. v. United States,
58 Fed. Cl. 634 (2003) .................................................................................. 18, 19

Great Lakes Dredge & Dock Co. v. United States,
60 Fed. Cl. 350 (2004) ........................................................................................ 7

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) ................................................................... passim

Keco Industries v. United States
203 Ct. Cl. 566,
492 F.2d 1200 (1974) ..................................................................................... 9-10

L-3 Commc'ns Integrated Sys., L.P. v. United States,
79 Fed. Cl. 453 (2007) ............................................................................ 16, 18, 19

Lion Raisins, Inc. v. United States,
69 Fed. Cl. 32 (2005) ........................................................................................ 18

Precision Standard, Inc. v. United States,
69 Fed. Cl. 738 (2006) ........................................................................................ 8

SDS Int'l v. United States,
48 Fed. Cl. 742 (2001) ........................................................................................ 8

S.K.J. & Associates, Inc. v. United States,
67 Fed. Cl. 218 (2005) ...................................................................................... 18

Stapp Towing v. United States,
34 Fed. Cl. 300 (1995) ........................................................................................ 7

Texas v. United States,
523 U.S. 296 (1998) ......................................................................................... 17

TRW, Inc. v. Unisys Corp.,
98 F.3d 1325 (Fed. Cir. 1996) ............................................................................. 9

## STATUTES AND REGULATIONS

5 U.S.C. § 702 .......... 7

5 U.S.C. § 706(2) .......... 7

10 U.S.C. § 2461(a) .......... 3, 5

28 U.S.C. § 1491(b)(1) .......... 16

28 U.S.C. § 1491(b)(4) .......... 7, 12, 16

48 C.F.R. § 1.602-2(b) .......... 15

48 C.F.R. § 3.101-1 .......... 15

48 C.F.R. § 15.206(e) .......... 5, 10, 11, 16

48 C.F.R. § 15.306(e) .......... 15

48 C.F.R. § 15.503(b) .......... 17

48 C.F.R. § 52.215-1(f)(2) .......... 10

## INDEX TO ATTACHMENTS

Attachment 1: Keesler AFB Unit Manning Document, dated September 4, 2003

Attachment 2: Little BOS Position Breakdown

Attachment 3: Amended Index to the Administrative Record

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-62C |
| | ) | (Judge Williams) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION**
**FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Defendant, the United States, respectfully submits this opposition to the motion of plaintiff, RKR Joint Venture, LLC. ("RKR"), to supplement the administrative record. In its motion, RKR has failed to prove that supplementation is necessary. Rather, RKR seeks a fishing expedition regarding facts not relevant to the issue presently before the Court, whether the United States Air Force ("Air Force") had a rational basis for the cancellation of the solicitation.

QUESTIONS PRESENTED

1. Whether RKR should be allowed to supplement the administrative record with certain deposition testimony.

2. Whether RKR should be allowed to supplement the administrative record with additional written documentation.

STATEMENT OF THE CASE

I. Statement Of Facts

On March 14, 2003, the Air Force issued Solicitation No. F41689-02-R-0049 for base operating support services at Keesler Air Force Base in Mississippi ("Little BOS solicitation" or "solicitation"). AR 1. The solicitation was conducted as part of an A-76 cost study under the

old, pre-2003, A-76 circular. E.g., id. at 772. In approximately August 2005, the Air Force notified offerors that RKR was the contractor selected to compete with the MEO, but that the results of the cost study favored the MEO. Id. at 459. The cost study was postponed due to Hurricane Katrina in September 2005 and did not resume until approximately January 2007. Id. After its final debriefing, RKR filed an administrative appeal, which was denied on May 23, 2007. Id. at 1115-18. On June 7, 2007, RKR filed a protest with the Government Accountability Office ("GAO"). Id. at 456-759, 1027-1341.

After the Air Force examined RKR's GAO protest, it determined that the best course of action was to take corrective action. Id. at 770, 772-88, 942-48. On June 25, 2007, Brigadier General Martin T. Smoot, Jr., the Director of Manpower, Organization and Resources (AF/A1M) wrote to the Director of Manpower and Personnel at Air Education and Training Command ("AETC"), the major command of the Air Force that governs Keesler Air Force Base. Id. at 1025. General Smoot advised AETC that he planned to recommend the cancellation of the solicitation and that the MEO not be implemented. Id. On June 27, 2007, AETC wrote back agreeing with the proposed course of action. Id. at 1342. On July 5, 2007, Brigadier General K.C. McClain, Acting Deputy Chief of Staff for Manpower and Personnel (the AF/A1), decided

to cancel the Little BOS decision (tentative decision to implement the MEO)[1] and recommended the AETC contracting officer also cancel the solicitation. Id. at 1024.

In July 2007, in two letters to the GAO, the Air Force stated that it intended to take corrective action by not implementing the MEO and cancelling the solicitation. Id. at 770, 772-88. In its July 9, 2007 letter to the GAO, the reasons listed by the Air Force were: 1) an ambiguity in the solicitation regarding the Air Force's plans to shift to a more centralized approach to information technology services ("AFNETOPS"); 2) the need to make revisions to the period of performance, wage rate determinations, information technology and tax rates due to the delay caused by Hurricane Katrina; 3) concern over whether reopening and amending the solicitation was legal; 4) problems with the pre-2003 A-76 procedures; and 5) the need to implement new mandatory source selection criteria. Id. at 789-91.

On July 30, 2007, the GAO sought additional information from the Air Force regarding its reasons for the proposed cancellation. Id. at 938-41. On August 2, 2007, the Air Force responded to the GAO's request with a memorandum from Major General William Lord, Director of Cyberspace Transformation and Strategy in the Office of Warfighting Integration and

---

[1] RKR's allegations, in footnotes 2 and 3 of its motion, that the Air Force has essentially implemented the MEO through cancellation, are a misrepresentation of the facts. The Air Force was performing the work in the solicitation with military and civilian personnel prior to the solicitation, and continues to perform as the work transforms. There is no "MEO" performing the work. The "MEO" is a reorganized structure that does not exist, and the Air Force is not intending to create it. RKR's allegations that the Air Force has awarded or will award the work to the MEO are spurious. In any case, 10 U.S.C. § 2461(a) prohibits converting work from performance by Air Force employees to a contractor unless there is a cost competition of the same work that is to be converted. As the contracting officer stated in his January 7, 2008 Determination and Findings, there are numerous reasons that the work currently being performed and any work proposed to be converted under a newly awarded contract, as RKR requests, would be substantially different from that described in the solicitation of August 2005. Id. at 1016-21.

Chief Information Officer. Id. at 947. General Lord explained that the AFNETOPS transformation had changed 57 percent of the requirements in the solicitation and that the solicitation no longer met the Air Force's needs. Id. Based upon this statement, the GAO determined that the Air Force's proposed cancellation was reasonable and dismissed RKR's protest. Id. at 993-97.

## II. Course Of Proceedings

On August 24, 2007, RKR filed an action in this Court challenging the reasonableness of the proposed cancellation and the reasonableness of the evaluation of bids, which resulted in the tentative decision to implement the MEO in August 2005.[2] On September 21, 2007, the Government filed a motion to dismiss because: 1) RKR's challenge to the cancellation was not ripe, since the contracting officer had not yet determined to cancel the solicitation; and 2) RKR's challenge to the evaluation of bids was moot, since the Air Force had decided not to implement the MEO based upon the solicitation in its form at the time. After several discussions with the Court, the parties agreed that they would stay the case, until after the contracting officer issued a decision regarding cancellation. On January 7, 2008, the contacting officer issued a determination and findings that cancellation was appropriate. Id. at 1016-21. The decision to cancel was based upon numerous changes to the requirements of the Air Force and the solicitation, including: 1) changes stemming from the AFNETOPs transformation, as well as other changes Headquarters Air Education and Training Command ("HQ AETC") is making to

[2] On August 22, 2007, the GAO notified the parties that it intended to dismiss RKR's protest. RKR filed it complaint in this Court on August 24, 2007. The GAO then issued its written decision dismissing RKR's complaint on August 29, 2007. Id. at 993-97.

equipment and manpower requirements; a change to at least 63 percent[3] of the Performance Requirements Document ("PRD"); 2) the performance period was originally scheduled for October 2006, but, now, could not start any earlier than October 2008; 3) wage rates and inflation factors must be updated for the new anticipated performance period; 4) Section M of the solicitation did not contain the "mission impact" source selection criterion required by 10 U.S.C. § 2461 as amended in 2006; 5) the property list in the solicitation had changed due to changes in information technology. Id. at 1017-18.

The changes to the PRD were so significant that the contracting officer believed that the he could not simply adjust the prices of the MEO to reflect these changes, but would be required to re-open discussions with all offerors. Id. at 1019. Also, the contracting officer determined that the changes were so significant that they exceeded what prospective offerors reasonably could have anticipated and, therefore, cancellation was required pursuant to 48 C.F.R. § 15.206(e). Furthermore, even if cancellation was not required pursuant to 48 C.F.R. § 15.206(e), the substantial changes made it prudent to cancel the solicitation because: 1) it would allow the most number of bidders to participate in the competition; 2) there was "substantial concern that reopening discussions and the degree of amendments needed to this solicitation would violate the time barriers in Section 8021 of the Defense Appropriations Act for Fiscal Year 2008 (Public Law 110-116)"; and 3) re-opening competition would require the solicitation to be converted to the procedures under the new May 2003 OMB Circular A-76. Id. at 1020-21. On January 25, 2008, the Air Force issued an amendment cancelling the solicitation. Id. at 1611.

---

[3] If the contracting officer had chosen to amend the solicitation, the change could have been as great as 82 percent of the requirements by the time the solicitation was amended and re-competed. Id. at 1017.

On January 23, 2008, in light of defendant's still pending motion to dismiss and argument that jurisdiction attaches at the time of the complaint, see GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479, 483 (Fed. Cir. 1996), the parties agreed that RKR would voluntarily dismiss its suit, without prejudice. On January 29, 2008, RKR filed a new complaint challenging the cancellation of the solicitation and, notwithstanding that cancellation, also challenging the evaluation of bids that resulted in the tentative decision to implement the MEO in August 2005. The Government filed the administrative record on February 4, 2008.

III. Procedural Posture Of The Case

While the Government does not necessarily agree with RKR's characterization that there are four "subrecord[s]" in this case, it does agree that the cancellation "is at the forefront right now," Pl. Mot. 2,[4] meaning that the issue before this Court right now is whether the Air Force had a rational basis for cancelling the solicitation. If the Court determines that the Air Force did not have a rational basis for cancelling the solicitation, then, in order to prevail, RKR would need to prove significant prejudice, by proving that it would have had a "substantial chance" of being awarded the contract if the solicitation had not been cancelled. See Bannum, Inc. v. United States, 404 F.3d 1346, 1354 (Fed. Cir. 2005) (citations omitted). Therefore, if the Court determines that the Air Force's cancellation lacks a rational basis, the Government could supplement the administrative record with documents relevant to the evaluation of RKR and the MEO's bids. Until such time, the Government agrees that only documents related to the cancellation of the solicitation may properly be a part of the administrative record.

[4] "Pl. Mot. __" refers to plaintiff's motion to supplement the administrative record, filed on February 11, 2007.

## ARGUMENT

I. Standard For Supplementing The Administrative Record

Discovery in a bid protest is not a matter of right, and is permissible only under extremely limited circumstances. See Stapp Towing v. United States, 34 Fed. Cl. 300, 307-08 (1995). Section 1491(b)(4) requires the Court to "review the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4). It is well-settled that the APA does not permit the Court to undertake a de novo review of agency action, but rather limits the Court to a consideration of whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," based solely upon the record before the agency. 5 U.S.C. §§ 702, 706(2)(A).[5]

This Court's review of bid protests pursuant to this deferential standard is limited to the administrative record already in existence, "'not some new record made initially by the reviewing court.'" Aero Corp. v. United States, 38 Fed. Cl. 408, 410 (1997) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)). Accordingly, this Court confines its review to the administrative record, i.e., the record that was before the decision maker at the time of the award. Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000) (citations omitted); Aero Corp., 38 Fed. Cl. at 410. The administrative record should not include materials created or obtained subsequent to the time the agency decided to take the challenged action, since such materials could not have been considered by the agency in making its decision. Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350, 359 (2004) (citation omitted).

[5] Section 706(2) of the APA provides that, in reviewing the validity of agency action, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C § 706(2).

Therefore, in the context of a bid protest, courts traditionally have confined the administrative record to that developed by the agency prior to its decision. See SDS Int'l v. United States, 48 Fed. Cl. 742, 747 (2001). Only when the Court cannot conduct meaningful judicial review from the administrative record is supplementation of the record appropriate. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001) (citation omitted). Documents that could not have been considered by the contracting officer are generally not considered proper supplements to the administrative record. Emerald Coast Finest Produce Co. v. United States, 76 Fed. Cl. 445, 450 (2007); Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 745-46 (2006).

In determining whether to look outside of the record for an explanation of an agency decision, the Court must start its analysis with the presumption of regularity that attaches to agency decision-making. See Impresa, 238 F.3d at 1338 ("Because of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious. The litigant challenging that presumption necessarily bears a heavy burden.") (citation and footnote omitted). Consequently, a protestor "necessarily bears a heavy burden" to establish that it should be permitted to take depositions of agency personnel. Id.

Although the court in Impresa allowed the taking of one limited deposition to obtain an explanation for the contracting officer's determination, it noted that "[t]his is a most unusual case." Id. at 1341. The court further stated, "[W]e wish to emphasize that such discovery of the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's . . .

determination." Id. at 1340-41 (emphasis added). Therefore, even where the Court finds that record evidence suggests the agency decision was arbitrary or capricious, discovery should be restricted to "placing on the record the basis for the contracting officer's . . . determination." Id. at 1339.

In the context of a cancellation, the Court is restricted to the agency record. Cygnus Corp. v. United States, 72 Fed. Cl. 380, 384 (2006). "No matter how reasonable [the Court] find[s] the agency's justification for cancelling the RFP, if the reasons are not supported by the administrative record, then [the Court has] no choice but to rule in favor of the Plaintiff." Id.

## II. The Court Should Deny RKR's Motion To Supplement The Administrative Record With Depositions Because Its Justifications Are Irrelevant To The Ultimate Issue In The Case

### A. RKR's Justification For Depositions Based Upon Its Argument That Bidders Could Have Reasonably Anticipated Changes To The Air Force's Requirements Is Irrelevant To The Ultimate Issue At This Stage Of The Case

Review of a decision to cancel a solicitation is extremely deferential. See id. "The procuring agency need only provide 'a coherent and reasonable explanation of its exercise of discretion and the disappointed bidder bears a 'heavy burden' of showing that the award had 'no rational basis.''" Id. (quoting Impresa, 238 F.3d at 1333). The agency's decision should not be disturbed unless it is "wholly without reason." Id. (quoting TRW, Inc. v. Unisys Corp., 98 F.3d 1325, 1327 (Fed. Cir. 1996)). The protestor "must do more than identify circumstances where the procuring agency made a mistake; it must establish that such a mistake was so excessive as to fall outside the decision-maker's ambit of discretion." Id.

This Court and its predecessor have consistently acknowledged that agencies enjoy wide latitude in decisions to cancel solicitations. In Keco Industries v. United States, the Court of Claims stated "there is no assurance that any bidder would have obtained the award since the

Government retains, in its discretion, the right to reject all bids without liability."[6] 203 Ct. Cl. 566, 492 F.2d 1200, 1206 (1974); accord Aviation Enterprises, Inc. v. United States, 8 Cl. Ct. 1, 19 (1985) (degree of proof required relates to the "latitude given to procurement officials to cancel solicitations"); see also ABF Freight System, Inc. v. United States, 55 Fed. Cl. 392, 409 (2003) ("well settled that the determination of an agency's procurement needs and the best method for accommodating them are matters primarily with the agency's discretion"). Thus, where the agency exercises its discretion to cancel a solicitation in light of its inherent power to administer its procurement and determine the methods of contracting, the procurement action must stand.

This discussion on the standard of review is necessitated by RKR's misunderstanding of what could be a justification for the depositions and most of the documents it requests. RKR argues that it cannot determine whether a bidder could "reasonably anticipate" the changes to the Air Force's requirements at the time the solicitation was issued without supplementation. Pl. Mot. 3-4. In fact, RKR states, "changes in network organization and staffing structure were able to be reasonably anticipated by bidders per FAR 15.206(e), rendering cancellation unlawful." Id. This is a gross distortion of the law. Whether a bidder could reasonably anticipate changes to the Air Force's requirements is only relevant to whether the Air Force was required to cancel the solicitation (as opposed to amend it), but is irrelevant to whether the Air Force has a rational basis for cancellation. Pursuant to 48 C.F.R. § 15.206(e), which appears in the section of the FAR relating to "Amending the solicitation":

---

[6] The Air Force also incorporated 48 C.F.R. § 52.215-1(f)(2) into the solicitation, AR 55, which states that the "Government may reject any or all proposals if such action is in the Government's interest."

> If, in the judgment of the contracting officer, based on market research or otherwise, an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the substance of the amendment been known to them, the contracting officer shall cancel the original solicitation and issue a new one, regardless of the stage of the acquisition.

48 C.F.R. § 15.206(e) (emphasis added). Therefore, even if RKR could prove that the Air Force was not required to cancel the solicitation because bidders could have reasonably anticipated the Air Force's changed requirements, RKR has not advanced its case, because RKR is required to prove that the Air Force's decision to cancel was without a rational basis. Cygnus, 72 Fed. Cl. at 384. If the Air Force did not have a rational basis for cancelling the solicitation, then, by definition, it could not have been required to cancel. Therefore, rather than focusing upon the "red herring" of whether the Air Force was required to cancel pursuant to 48 C.F.R. § 15.206(e), the Court should be focused upon whether the Air Force had a rational basis for the cancellation, specifically, whether there was a change in requirements, which is a rational basis for cancellation.[7] See Am. Gen. Leasing, Inc. v. United States, 218 Ct. Cl. 367, 587 F.2d 54, 59 (1978) ("the Government alleges a reasonable basis for cancelling the solicitation, i.e. a revision in specifications . . ."); cf. Aviation Enters., 8 Cl. Ct. at 19 (holding a "cancellation based on overstated specifications to be reasonable.") (citation omitted). As such, RKR's prmary justification for supplementing the administrative record with depositions fails.

---

[7] It is clear from the text of 48 C.F.R. § 15.206(e), that the purpose of the regulation was to ensure that agencies did not amend solicitations after significant changes to its requirements, if such an amendment would exclude bidders from the process that otherwise would have bid upon the solicitation. Nothing in the regulation indicates that it was intended to limit the contracting officer's discretion to cancel a solicitation.

B. Even If RKR's Theory That Bidders Could Have Reasonably Anticipated Changes To The Air Force's Requirements Is Relevant, RKR Has Failed To Provide Adequate Justification For The Specific Depositions RKR Seeks

As noted above, the Federal Circuit has held that "discovery of the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's . . . determination." Impresa, 238 F.3d at 1340-41. The Federal Circuit also held that deposition testimony should only be ordered in "rare circumstances." Id. at 1338. In other words, supplementation is the exception, not the norm of record review pursuant to 28 U.S.C. § 1491(b)(4). RKR has a heavy burden of proving that the record should be supplemented. Id. at 1338. Thus, even if RKR's theory that bidders could have reasonably anticipated changes to the Air Force's requirements is relevant, RKR has not raised serious questions as to the rationality of the contracting officer's cancellation determination.

RKR seeks: 1) deposition testimony of Ron Mortag, the contracting officer; 2) a Rule 30(b)(6) deposition of the preparer of the technical analysis that the contracting officer relied upon in cancelling the solicitation; 3) deposition testimony of Major General John W. Maluda, the Keesler Administrative Appeal Process Authority; 4) a 30(b)(6) deposition of the person(s) responsible for providing the "Questions and Answers" to bidders; and 5) a 30(b)(6) deposition of the preparer of the MEO management plan.

As an initial matter, neither General Maluda, the person responsible for providing questions and answers to offerors, nor the preparer of the MEO management plan had any role in the cancellation of the solicitation. Therefore, they are irrelevant to the cancellation of the solicitation and should not be deposed. If their views regarding the interpretation of the

solicitation are in any way relevant, in light of the heavy burden upon plaintiff to prove that the record should be supplemented with deposition testimony, the views should be determined from the written record.

With regard to the preparer of the technical analysis the contracting officer relied upon, his views regarding whether changes to the solicitation could be anticipated are irrelevant. The technical analysis was just that, a technical analysis of how much the Air Force's requirements had changed from the time the solicitation was developed. AR 1345-51. Thus, the views of the preparer of the technical analysis regarding what changes to the solicitation may have been anticipated by potential bidders are irrelevant.

With regard to the contracting officer, RKR has not met its heavy burden of proving that there are serious questions regarding the rationality of the contracting officer's determination. In Impresa, the contracting officer determined that the awardee of the contract was a responsible bidder, even though: 1) a person recently in charge of the company had been convicted of bid-rigging and being in a "Mafia organization"; 2) companies involved in the awardee joint venture had been in receivership; and 3) the awardee had apparently lied on the certification concerning debarment and civil and criminal proceedings. 238 F.3d at 1329, 1336-40. However, the contracting officer did not explain his decision as to why the awardee was found to be a responsible bidder. Id. at 1334. Therefore, in this "rare circumstance" where the record evidence appeared to completely contradict the contracting officer's decision, the Federal Circuit allowed limited deposition testimony into the reasons for his responsibility determination. Id. at 1338-40.

In this case, the contracting officer has given a detailed explanation for his decision to cancel the solicitation, AR 1016-21, and that explanation is supported by the administrative record. In an answer to a question posed by RKR, the Air Force made clear that bidders were to prepare their bids based upon Section 7.1 of the Performance Requirements Document ("PRD"), which did not include a NOSC-centric environment. Id. at 1154. The questions and answers were posted publicly for all offerors to see.[8] While Section 7.4 of the PRD included references to a NOSC-centric initiative as part of the NCC Reengineering initiative, id. at 168, this was included merely as an "insight to the Air Force's future plans," not something upon which the offerors should base their bid. Id. In any event, the AFNETOPs initiative being implemented now goes well beyond the NCC Reengineering initiative mentioned in the solicitation as part of the Air Force's future plans. Id. at 1350. Regardless of what the MEO or any other offerors were told, or what anyone else thought of the meaning of the solicitation, what is clear from the record is that: 1) Section 7.1 of the PRD, upon which offerors were explicitly told to base their bids, did not include a NOSC-centric environment; and 2) the requirements of the Air Force have changed to an AFNETOPs environment, with a greatly reduced need for base level support. Id. at 1345-51. RKR has failed to raise any evidence to the contrary. Therefore, unlike the protestor in Impresa, RKR has failed to meet its heavy burden of proving that this case is one of the rare circumstances where it should be allowed to take deposition testimony.

[8] http://www.fbo.gov/spg/USAF/AETC/SCS/F41689-02-R-0049/Attachments.html

C. RKR's Justification For Depositions Based Upon Its Argument That They Are Relevant To A "Freestanding Violation Of The FAR" Fails Because There Is No Such Thing As A "Freestanding Violation Of The FAR" And Because RKR Has Not Identified Any Such Violation With Specificity

In addition to attempting to justify the five depositions it is seeking upon the basis that it is seeking information related to whether bidders could have reasonably anticipated the change in the Air Force's requirements, RKR claims entitlement to the depositions upon the basis that they are relevant to a claim for a "freestanding violation of the FAR." Pl. Mot. 12. As an initial matter, it is unclear how the depositions that plaintiff requests would relate to whatever "freestanding violation" RKR is asserting. In a footnote, RKR asserts that the Air Force may have violated 48 C.F.R. § 1.602-2(b), 3.101-1 or 15.306(e), by favoring one offeror over another or revealing RKR's price. Id. at 2 n.5. However, RKR does not reveal any valid basis for such allegations nor assert how these depositions would help it prove its theory.

In any event, there is no such thing as a "freestanding violation of the FAR." At this time, the Court can have jurisdiction to entertain only one claim, i.e., whether the Air Force had

a rational basis for cancelling the solicitation.[9] Any claims that the Air Force violated the FAR, prior to cancelling the solicitation, are moot because the solicitation has been cancelled.

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." CCL, 43 Fed. Cl. at 688 (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). A case may be dismissed for mootness if there is "no reasonable expectation" that the alleged violation will recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id. at 689 (quoting Davis, 440 U.S. at 631). Here, the result of the Air Force's allegedly

---

[9] It is questionable whether the Court even possesses jurisdiction to entertain RKR's claims regarding cancellation. Pursuant to 28 U.S.C. § 1491(b)(1), this Court possesses jurisdiction to entertain challenges to: 1) a solicitation; 2) a proposed award; 3) an award; or 4) an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement." See also Data Monitor Sys., Inc. v. United States, 74 Fed. Cl. 66, 72-73 (2006). Plaintiff is clearly not challenging a solicitation, proposed award or award, and they have not alleged any violation of statute or regulation regarding the cancellation of the solicitation (except for 48 C.F.R. § 15.206(e), which is frivolous, because an agency cannot violate this section by cancelling a solicitation, but only by failing to cancel a solicitation). While plaintiff has also brought a claim pursuant to the "implied contract of fair dealing," Compl. 11, the claim does not specifically relate to the cancellation and, in any event, this Court has repeatedly held that this claim is no longer the basis for bid protest jurisdiction in this Court. See, e.g., L-3 Commc'ns Integrated Sys., L.P. v. United States, 79 Fed. Cl. 453, 461 (2007) ("ADRA obviated the need to base the COFC's protest jurisdiction on a breach of this implied-in-fact contract to consider bids fairly . . .") (emphasis in original); CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 687 (Fed. Cl. 1999) (legislation superceded the "fiction" of the implied contract to have bids fairly and honestly considered). At least one Court has explicitly stated that the "fictional" implied-in-fact contract theory did not survive the enactment of the Administrative Dispute Resolution Act of 1996 ("ADRA"). Block v. United States, 66 Fed. Cl. 68, 77 (2005) ("objections to the procurement process must be based on claims identified in the Tucker Act, 28 U.S.C. § 1491(b)(1). The plaintiff's theory of an implied-in-fact contract to fairly and honestly consider his proposal no longer give rise to a potential claim."). The Government originally thought that it would be most efficient to address this argument as part of a motion for judgment upon the administrative record, but given RKR's request for extensive supplementation, the Court may find it more efficient to address this argument before ruling upon plaintiff's motion for leave to supplement.

improper evaluation of the MEO's proposal was a tentative decision to implement the MEO structure. Rather than defend the decision when RKR raised these issues before the GAO, the Air Force took corrective action by cancelling the tentative decision to implement the MEO structure. AR 1024. The Air Force later cancelled the solicitation. Id. at 1611. Because of the cancellation, any alleged errors made in the evaluation are now moot because the result of the evaluation, an award to RKR or the MEO, cannot happen. There are no further "effects" of the alleged improper evaluation (or any other alleged errors prior to the cancellation) because noone will be receiving an award from the solicitation since it has been cancelled. Furthermore, RKR will not be able to prove that the Air Force made prejudicial errors in its evaluation of bids because noone will obtain an award as a result of the evaluation.[10] As such, the cancellation of the solicitation divests this Court of jurisdiction to entertain RKR's claims relating to the evaluation of proposals.

Since the issue of whether the Air Force's evaluation of the proposals and tentative decision to implement the MEO structure is moot, RKR's claim for bid preparation and proposal

---

[10] RKR alleges that it was harmed by the release of its probable cost. Compl. 6. However, this claim fails for four reasons: 1) the Air Force did not release the substance of RKR's offer or any other proprietary information; 2) pursuant to 48 C.F.R. § 15.503(b), the Air Force was required to release the prices of RKR and the MEO, so the Air Force could not be said to have done anything illegal or irrational in releasing RKR's total evaluated cost; 3) since the solicitation has been cancelled and the requirements have changed significantly, RKR will not be hurt in any future procurement by the release of its total evaluated cost; and 4) even if RKR could potentially be hurt by the release of its total evaluated cost, the Air Force could choose to alleviate this harm in a future procurement by releasing the price of other bidders or performing some other action to "level the playing field." Therefore, because this solicitation has been cancelled, any claim that RKR would be harmed in future solicitations by the lawful release of its total evaluated cost is premature. Bannum, Inc. v. United States, 56 Fed. Cl. 453, 462 (2003) ("A claim is not ripe 'if it is premised upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).

costs is also moot. This Court has held that "a decision on the merits of the award must be made prior to the award of bid preparation and proposal costs. Without analysis of the merits of the award, the court lacks a basis to grant further relief." CCL, 43 Fed. Cl. at 690. In CCL, plaintiffs protested the award of contracts for computer maintenance services to another company. Id. at 681. After protracted settlement negotiations broke down, the agency terminated the contracts at issue and cancelled the solicitation. Id. at 684-85. The Court found that plaintiffs' complaints basically presented two questions: 1) whether there was an error in the procurement process; and 2) whether plaintiffs are entitled to bid preparation and proposal costs. Id. at 690. The Court then held that "[h]aving negated any impropriety by cancelling the award and solicitation, [the agency] has precluded the court from making a finding regarding the first question. Significantly, without reaching the merits of the first question, analysis of the second cannot proceed." Id. This Court has reached the same result in several other similar cases, where the underlying issue has been found to be moot and the Court has not allowed the plaintiff to seek bid preparation and protest costs. See Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32 (2005); S.K.J. & Associates, Inc. v. United States, 67 Fed. Cl. 218 (2005); CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554 (2000). Therefore, in this case, since the issue of whether the Air Force committed prejudicial errors in evaluating the proposals or issuing the tentative decision is moot, RKR's claim for bid preparation and proposal costs is also moot.

The cases cited by RKR to support its novel "freestanding violation of the FAR" theory are inapposite. In Gentex Corp. v. United States, 58 Fed. Cl. 634 (2003), and L-3, 79 Fed. Cl. 453, the Court held that it could award bid preparation and proposal costs, even though it determined that injunctive relief was not appropriate because of national security concerns

(Gentex) and because the contract had been largely performed (L-3). Unlike the cases we cited above, and this case, the solicitations in Gentex and L-3 had not been cancelled. Rather, the contracts at issue in Gentex and L-3 had been awarded. The Court merely determined that injunctive relief was not the proper remedy for the procurement violations. In this case, the Court is precluded from addressing the very issue of whether there were any alleged procurement violations prior to the cancellation of the solicitation because they are moot. Therefore, RKR's fictional "freestanding violation of the FAR" theory cannot serve as a basis for supplementing the administrative record.

## III. With Limited Exceptions, The Court Should Deny RKR's Motion To Supplement The Administrative Record With Documents

### A. The Court Should Supplement The Administrative Record With The Unit Manning Document At The Date In Time Of The Final Amended Solicitation, As Well As An Additional Document Relied Upon In The Technical Analysis

The Government agrees that the Court should supplement the administrative record with the Unit Manning Document at the date in time of the final amended solicitation as it was publicly released to bidders and relevant to the cancellation decision. Attachment 1.[11] Additionally, the Government inadvertently left out of the administrative record a document relied upon by the technical analyst that is a similar breakdown of positions in the study. See Attachment 2.[12]

---

[11] The Unit Manning Document included positions for both the Little BOS and Big BOS solicitations. We numbered the document as part of the administrative record, 1612-78. We also included an amended index to the administrative record. Attachment 3.

[12] We numbered the document as part of the administrative record, 1679-87. It should also be noted that the references to "MEO" in Attachment 3 would have been better labeled "Positions Under Study." The document has nothing to do with the MEO's proposal. The number of positions under study, 138, is the same in both the document relied upon by the

B. The Court Should Allow The Parties To Cite To Circular A-76 and AFI 38-203, But Should Not Allow The Parties To Cite To AFI 33-115 and AFI-33-115V1 (June 1999)

With regard to RKR's request to cite to Circular A-76, the Government agrees that it is appropriate for the parties to cite to Circular A-76 since it provides the procurement procedure in A-76 studies. With regard to RKR's request to cite to Air Force Instruction ("AFI") 38-203, the Government agrees that citation to this instruction is appropriate since it applies to the Air Force's general procurement activities.

With regard to RKR's request to cite to AFI 33-115, the Government objects to citing this instruction because the contracting officer did not use AFI 33-115 in his decision making. The contracting officer relied upon a technical review of the AFNETOPS and AETC transformation plans, implementation plans and other documents specific to the Keesler Little BOS solicitation, as described in his Determination and Findings. The technical advisor also did not use AFI 33-115 in his analysis of the effects of specific plans on the Keesler Little BOS solicitation, as described in the technical attachment to the contracting officer's Determination and Findings. AFI 33-115 provides only general guidance in the technical aspects to be considered in formulating communications and networks. This instruction is not a procurement instruction, and it has no relevance to a specific acquisition.

---

technical analyst and the Unit Manning Document for the final amended solicitation. AR 1678, 1679.

With regard to RKR's request to cite to AFI 33-115V1,[13] the Government objects to citation to this instruction because it is an out of date instruction that the contracting officer did not rely upon in cancelling the solicitation.

C. The Court Should Deny RKR's Request To Supplement The Administrative Record With Documents (And Consultations) Relating To General Lord's August 2, 2007 Memorandum And General Maluda's Decision In The Administrative Appeal

The Court should deny RKR's request for documents (and consulations) relating to General Lord's August 2, 2007 memorandum and General Maluda's decision in the administrative appeal because the underlying documents from the memorandum and administrative appeal decision were not relied upon by the contracting officer in making his cancellation determination.

Regarding General Lord's memorandum, the contracting officer commissioned an independent technical analysis by his own technical staff at AETC. Although General Lord's memorandum was referenced in the contracting officer's determination and findings, it was referenced for historical purposes only. General Lord's memorandum was not explicitly relied upon by the contracting officer. In any event, the contracting officer did not specifically rely upon any of the documents upon which General Lord relied in drafting his August 2, 2007 memorandum. To the extent the contracting officer did rely upon any such documents, they are in the administrative record already.

[13] We presume RKR was referring to the June 1999 version, as in its motion to supplement from Docket No. 07-630C. Otherwise, AFI 33-115V1 would be encompassed in RKR's request to cite to AFI 33-115.

Regarding General Maluda's administrative appeal decision, it is irrelevant to the cancellation decision, as would be any underlying documents. In his administrative appeal decision, General Maluda concluded that the MEO was aware of potential changes due to NCC reengineering, but did not quantify them in its management plan. AR 1156. Therefore, the MEO based its staffing on PRD requirements. Id. As such, General Maluda's conclusions are irrelevant to the question of whether the Air Force's requirements changed. Whether General Maluda was correct that the MEO bid the PRD requirements, or incorrect, does not affect whether such requirements changed from the time the solicitation was issued until the cancellation decision was issued. Therefore, neither General Maluda's administrative appeal decision, nor the documents (or consultations) underlying his decision, are relevant to the cancellation decision.

### D. The Court Should Deny RKR's Request To Supplement The Administrative Record With All "Questions And Answers"

The Court should deny RKR's request to supplement the record with all questions and answers regarding the solicitation, because the contracting officer did not rely upon any questions and answers not already in the record in making the cancellation determination. In any event, all questions and answers are available on the Internet.[14] Therefore, even if it were appropriate to supplement the administrative record with questions and answers, RKR could have identified specific questions and answers that it deemed relevant to the issue of whether the cancellation decision had a rational basis. Therefore, RKR has not met its burden of proving that supplementation of the administrative record is required.

[14] http://www.fbo.gov/spg/USAF/AETC/SCS/F41689-02-R-0049/Attachments.html

E. The Court Should Deny RKR's Request To Supplement The Administrative Record With Documents Relating To The MEO's Bid And The Evaluation Of Bids

RKR has requested several documents relating to the MEO's bid and the evaluation of the MEO and RKR's bids. Pl. Mot. 14-15 (Section III.B.6-9). Supplementation of the administrative record with these documents is not necessary at this time because the contracting officer did not consider the MEO's bid in determining to cancel the solicitation. Rather the reasons for the cancellation were the change in requirements due to AFNETOPs and the passage of time, as well as other legal and practical issues. The MEO's bid and the evaluation of bids is irrelevant to the cancellation decision. Therefore, the Court should deny RKR's motion to supplement the administrative record with the MEO's bid and documents related to the evaluation of bids.

CONCLUSION

For the foregoing reasons, the Court should deny RKR's motion for leave to supplement the administrative record, except for the limited exceptions noted above.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

OF COUNSEL:
Gary R. Allen
Air Force Legal Operations Agency,
Commercial Litigation Division
1501 Wilson Blvd., Suite 600
Rosslyn, VA 22209

/s/ William P. Rayel
WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-0302
Fax. (202) 307-0972

February 21, 2008

Attorneys for Defendant