**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC | § | |
| A Mississippi Limited Liability | § | |
| Corporation | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 08-CV-00062-MCW |
| | § | Judge Williams |
| THE UNITED STATES | § | |
| Defendant. | § | |

# REPLY ON MOTION FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD

TO THE HONORABLE JUDGE OF THE U.S. COURT OF FEDERAL CLAIMS:

Plaintiff RKR JOINT VENTURE, LLC ("RKR") files this its Reply to Defendant's Response (Dkt #13) to its Motion for Leave to Supplement the Administrative Record (Dkt #11), and would show as follows:

## I. Cancellation Does Not Make Unlawful Action Irrelevant When Unlawful Action is the Foundation of the Cancellation Itself.

### *A. The Court Should Determine Whether the Solicitation is Clear or Ambiguous*

The solicitation accommodates the alleged changes in the needs of the Air Force because its requirements permit the awardee to change staffing configurations at the direction of the Air Force during performance of the contract. *See* RKR Original Complaint, Dkt #1 at ¶ 11-22; AR 144-171.

The issue of how and when to address "configuration changes" affecting this procurement drove the requirements of the solicitation, the Air Force's unlawful switch in positions, and the cancellation itself. *See id*. at ¶ 11-48 & Dkt #11 at 3-7. Thus the solicitation itself, and possibly the Air Force's shifting interpretation of it, is the issue. The details of an alleged "change in the Air Force's needs," or the make-weight

arguments used to support the cancellation decision which by themselves would not even justify amendment in this negotiated procurement, such as which version of the A-76 cost software would have to be used, time barriers, or updated wage rate and inflation factors, AR 1017-1021, are not relevant at this stage.

Supplementation is necessary if the solicitation is ambiguous because the record is not complete as to the alleged primary ground for cancellation—whether or not the solicitation accounted for configuration changes. Thus, the Court needs to determine whether the solicitation is ambiguous based on the record references in the Complaint, Dkt #1, Dkt #11, and this reply.

Holding that the solicitation is clear in the government's favor and does not accommodate configuration changes, per the government's litigation position, is not an option, since the government has already told GAO that the solicitation is ambiguous. AR 994 n.2 and Dkt #13 at 10.[1] However, it is no answer that the solicitation could have been cancelled if it was ambiguous, because that is not the government's position now and it is not what the government did. Rather, the government made irreconcilable clarifications.

If the solicitation is clear in RKR's favor and accommodates the Air Force's configuration changes, or, if the government switched its clarification of an ambiguous solicitation, there is agency action that is arbitrary, capricious, and not in accordance with law. Such conduct is actionable twofold: (1) as the foundation of the cancellation itself, and thus a basis for setting it aside if, without it, the decision to cancel would lack a rational basis; and (2) independently as the basis of a claim for bid preparation and proposal costs.

---

[1] References to the government's response will be to PDF page numbers.

*B. The Government's Attempts to Insulate Its Unlawful Acts From Review Fail*

1. Unlawful action underlying a cancellation is clearly reviewable.

Under the government's argument, for a similar solicitation, the Air Force could (1) tell one offeror: "Bid the solicitation according to existing requirements, all the changes will come during performance"; and (2) tell the incumbent "Bid the solicitation according to an estimate of future requirements"; and then (3) legally cancel, retaining itself (as in this case) or the incumbent contractor indefinitely, on the ground that those estimated future requirements are "changes in the needs of the Air Force" not provided for by the solicitation. Hands down, that is a violation of the FAR. *See e.g.*, FAR § 1.602-2(b) or 3.101-1 (impropriety or government conduct that favors one offeror over another).

Because it has cancelled the solicitation, the Air Force believes the scenario described above, or one similar to it, can occur without consequence and cast all arguments to the contrary as irrelevant. That is not the law.[2]

The government's statement that it incorporated 48 C.F.R. § 52.215-1(f)(2) into the solicitation, AR 55, which states that the "Government may reject any or all proposals if such action is in the Government's interest," underscores the irony: If the solicitation is ambiguous, but the government's argument to deny supplementation is correct, it is not possible to determine whether the government's interest was to have configuration

[2] RKR's analysis is fully consistent with the primary authorities. While there is "no right" to receive a contract award in the event of illegal Government bid processes, *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 864 (D.C. Cir. 1970)—except in the de facto terms requested by RKR here by virtue of being the last bidder standing—it does not follow that an unlawful act affecting or justifying a cancellation (in whole or in part) lacks a remedy, particularly one now specifically provided for by 28 U.S.C. § 1491(b)(2). The Federal Circuit has regularly held as much where illegality "permeated the cancellation" and the agency "had no rational basis" as a result. *E.g.*, *Parcel 49C Ltd. Partnership v. U.S.*, 31 F.3d 1147, 1153 (Fed. Cir. 1994) (injunction).

changes occur over the life of the contract (thus eliminating the primary justification for cancellation) or not.

This is essentially why RKR referenced FAR 15.206(e)'s reasonably anticipatable standard in Dkt #11.[3] The reasonably anticipatable standard in FAR 15.206(e) is just another way of understanding why the facts point to an unlawful cancellation, because there has been an arbitrary and unlawful reversal of the government's entire position on what could and could not be reasonably anticipated from the solicitation.

If it is impossible to tell what the solicitation meant, it is impossible to tell what the bidders are supposed to reasonably anticipate and it is impossible to tell what the government's interest is at any given time. If, in spite of all that, the government puts forth two diametrically opposite interpretations between the time the solicitation is issued and the time of litigation, and only the latter of those interpretations is fully discussed in the record, the Plaintiff has no way, besides supplementation or a *sua sponte* grant of summary judgment from the Court, to fully prove up the other interpretation and the arbitrary, capricious, and unlawful shift away from it (which is the foundation of the cancellation).

The cancellation cannot and does not eradicate or make irrelevant the effects of the type of violation described above, because the violation is the foundation for the cancellation itself. The government's argument, *see* Dkt #13 at 15-16, fails to address this

[3] The government seizes on RKR's reference to FAR 15.206(e), as opposed to the rational basis standard, even though RKR has acknowledged both are relevant. RKR does not mean to imply that the "reasonably could have anticipated" standard in FAR 15.206(e) takes the place of the rational basis standard for the merits here, and to the extent anything in Dkt #11 implies to the contrary, RKR requests that the Court read Dkt #11 in light of both the applicable FAR provisions and the rational basis standard.

legal context and the solicitation's unique language accommodating configuration changes.

a. RKR has properly challenged both the cancellation and the underlying unlawful acts.

In a gross mischaracterization of RKR's Complaint and RKR's arguments in Dkt #11, the government questions whether this Court even has jurisdiction over this case. Dkt #13 at 23 n.9.

The mischaracterization is revealing and significant, because it argues RKR has "not alleged any violation of statute or regulation regarding the cancellation of the solicitation." Actually, both the first and the second claims for relief in RKR's Complaint, Dkt #1 ¶ 61-67 (bid preparation and protest costs and declaratory/injunctive relief), put the government on notice that its actions were "otherwise not in accordance with law," which triggers jurisdiction, as cited, under 28 U.S.C. § 1491(b). Indeed, RKR has identified FAR provisions that have been violated, Dkt #11 at 2 n.5 and *supra*, page 3, and has stated facts in its Complaint that support findings that those provisions were violated. Dkt # 1 at ¶ 5-55. Further, it cannot logically be disputed that if a decision to cancel is arbitrary and capricious on the record presented, a FAR provision or another statute or regulation has certainly been violated "in connection with a procurement," and the cancellation is "otherwise not in accordance with law." 28 U.S.C. §§ 1491(b)(1), (4); 5 U.S.C. § 706(2)(A).

The government's argument to avoid that state of affairs assumes the violation, even if it existed, is no longer actionable. Dkt #11 at 24. That is clearly wrong. Cancellation does not moot unlawful action when unlawful action is the foundation of the cancellation itself.

b. An unlawful act with respect to the interpretation of the solicitation is the foundation for the cancellation

The issue of how and when to address "configuration changes" affecting this procurement drove the requirements of the solicitation, the Air Force's unlawful switch in positions, and the cancellation itself.

As the GAO acknowledged, configuration changes due to the "NOSC-centric initiative" had been underway since before the time of bidding. AR 995-996; Dkt #1 at ¶ 20 & n.2. The GAO found that as between the "NOSC-centric initiative" and "AFNetOps," there was "no dispute that both terms refer, generally, to the same centralization concept." AR 996 n.3.

Prior to bidding, the law obviously mandates a single understanding of whether or not the solicitation requirements accommodated this future centralized configuration plan of the Air Force by permitting the awardee to change staffing configurations at the direction of the Air Force during performance of the contract. And yet the proposals of RKR and the MEO differed on this understanding enough to affect which was the low bidder. *See* Dkt #1 at ¶ 30-32.

Regardless of whether the Air Force's original interpretation of the solicitation as clear in RKR's favor or made a clarification in the same respect otherwise, that interpretation was implicitly ratified by Maj. Gen. Maluda on May 23, 2007 in the disposition of the administrative appeal. *See* Dkt #1 at ¶ 33-39; AR 1118. If the solicitation did not accommodate the configuration changes that Maluda himself was overseeing, and as the government now urges in its litigation position, the administrative appeal would never have been decided as it was: In favor of awarding to the MEO under the solicitation.

And yet thereafter the Air Force changed its position on whether or not the solicitation requirements accommodated the future needs of the Air Force, not to "there is an ambiguity" as it told GAO, AR 994 n.2 and Dkt #13 at 10, but in fact to the current litigation position "[it] is clear from the record" (impliedly in the Air Force's favor, that the solicitation *did not*), e.g., "the solicitation no longer met the Air Force's needs." Dkt # 13 at 11 & 21.

It is clear the incumbent MEO had this latter understanding throughout, while the Air Force appeared to share RKR's contrary understanding, whether by agreeing with RKR's clear reading and/or by clarification, up until RKR brought a protest before the GAO. When RKR would not go quietly because the MEO did not bid the solicitation according to existing requirements, with all configuration changes to occur during performance, the Air Force's understanding of the solicitation had to change.

And change it did—three different times at GAO alone, and again with the CO's decision. Dkt #1 at ¶ 41-53. Yet the government's earlier understandings of the solicitation are absent from the record, and unless Maj. Gen. Maluda's implicit ratification of RKR's understanding of the solicitation through the disposition of the administrative appeal is conclusive—a finding RKR would obviously accept—further explanation is required in order for RKR to challenge the cancellation.

2. RKR is entitled to pursue its claim for bid preparation and proposal costs and to supplement the record accordingly.

The Court should also decide at this time that the supplementation requested is also relevant to RKR's claim for bid preparation and proposal costs. *See also* Dkt # 13 at 23 n.9 (requesting determination of issue).

The government argues that "any claims that the Air Force violated the FAR, prior to cancelling the solicitation, are moot because the solicitation has been cancelled," Dkt #13 at 23, and attempts to limit RKR's claim to events *regarding the evaluation* of RKR or the MEO's bids, *id*. at 24. This is wrong. The argument remains that cancellation does not moot unlawful action when unlawful action is the foundation of the cancellation itself.

RKR's claim for bid preparation and proposal costs is not limited to issues regarding the evaluation of bids. RKR has pled its claim under *both* 28 U.S.C. § 1491(a) *and* (b). *See* Dkt #1 at ¶ 61-63 (first claim for relief). Therefore, arguments regularly made by the government to undercut the viability of 28 U.S.C. § 1491(a)'s implied contract theory of recovery are not relevant here. *Cf*. Dkt #23 n.9. The text of § 1491(b) is sufficient in and of itself.

Section 1491(b) expressly provides that this Court has jurisdiction over "an action by an interested party objecting . . . to any violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b) (2000). "The statute does not limit the legal theories on which such an "objection" to [a violation of statute or regulation] might be based. Whether conduct be characterized as an arbitrary and capricious agency action or a breach of the implied duty to consider proposals fairly, such conduct is actionable in a bid protest." *L-3 Communications Integrated Systems, L.P. v. U.S.*, 79 Fed.Cl. 453, 462 (2007) (Williams, J.).

If there is a violation of the FAR as described at the beginning of Part I.B, *supra*—or any other violation of FAR § 1.602-2(b) or 3.101-1—that is not, as the government argues, an issue regarding the evaluation of RKR or the MEO's bids. *Cf*. Dkt

#13 at 24. Rather, that is a violation of law that can be declared, enjoined, and compensated for by bid preparation and proposal costs under 28 U.S.C. § 1491(b)(2).

The claim for bid preparation and proposal costs is in no way mooted by the cancellation. Rather, it is a remedy for a ripe claim challenging the type of unlawful conduct described in the scenario at the beginning of Part I.B of this reply.[4]

The cases cited by the government are not persuasive and indeed conflict with the obvious point that so long as the Court has jurisdiction to resolve a claim under 28 U.S.C. § 1491(b)(1), an award of bid preparation and proposal costs is possible under 28 U.S.C. § 1491(b)(2).

The government relies on language from *CCL Service Corp. v. U.S.*, 43 Fed.Cl. 680, 690 (1999) that "a decision on the merits of the award must be made prior to the award of bid preparation and proposal costs. Without analysis of the merits of the award, the court lacks a basis to grant further relief." From a legal standpoint, there is nothing in *CCL Service Corp.* that restricts "the merits" to an "award" of the contract; that just happened to be the only relief sought by the Plaintiff in that case. Again, it is difficult to see why the "merits" would be any narrower than the jurisdiction conferred by § 1491(b). Namely, if the Court found a "violation of any statute or regulation in connection with a proposed procurement," under § 1491(b)(1), there is nothing that would prevent it from

[4] The release of cost data, for instance, is only one of many possible bases for a finding of a violation of statute or regulation in connection with a procurement, and thus, an award of bid preparation and proposal costs, 28 U.S.C. § 1491(b)(1)-(2). It is telling that the government attempts to cast this argument as unripe, rather than moot as the government argues for RKR's other theories. Dkt #24 n.10. As this Court held in *L-3 Communications*, *supra*, all theories of bid preparation and proposal cost recovery are equally actionable in a bid protest, not just some of them. Further, though the price release is significant, even more significant is the release of the manner of performance by RKR. This trade secret type information is damaging far beyond the limits of this solicitation.

awarding bid preparation and proposal costs under § 1491(b)(2). This is true regardless of whether the cancellation can be upheld on some other ground. If the foundation of the cancellation is an unlawful act, § 1491(b) provides remedies for that unlawful act, and the government should not be heard to argue to the contrary.

In *SKJ & Associates v. U.S.*, 67 Fed.Cl. 218, 227 (2005) and *Lion Raisins v. U.S.* (*Lion Raisins III*), 69 Fed.Cl. 32, 26 (2005), the plaintiffs did not contest the cancellations at issue. Thus, a decision on the merits of the award was no longer possible. Nor did they allege a violation of any statute or regulation in connection with a proposed procurement under 28 U.S.C. 1491(b) (In *SKJ*, the claim was made solely under § 1491(a). In *Lion Raisins III*, there was simply no violation alleged other than a challenge to the award). That is not the situation here. A violation of statute or regulation in connection with a proposed procurement could be found. Further, if the cancellation is set aside, an award of bid preparation and proposal costs is plainly possible under 28 U.S.C. § 1491(b) and there will theoretically be a decision on the merits of the award to the MEO.

Finally, in *CWJ Gov't Travel, Inc. v. U.S.*, 46 Fed.Cl. 554, 559 n.6 (2000), "the Navy's cancellation of the solicitation was not arbitrary or capricious," thus the plaintiff could not recover bid preparation and proposal costs. Had the Court found arbitrary, capricious, or unlawful action by the Navy, there is nothing in that case that would bar a claim for bid preparation and proposal costs.

Cancellation does not moot unlawful action when unlawful action is the foundation of the cancellation itself. For its bid preparation and proposal cost claim standing alone, as well as for its claim challenging the cancellation, RKR is entitled to supplementation to fully capture the Air Force's unlawful change in position regarding

the solicitation. The facts and conduct happen to be similar for both claims, but even if they were not, RKR would still be entitled to pursue supplementation for either one, because this Court has jurisdiction over both claims under 28 U.S.C. § 1491(b), at a minimum.

II. <u>Leave to Supplement the Administrative Record Should Be Granted</u>

*A. RKR is not obligated to rebut all other alleged grounds for cancellation first*

In avoidance, the government points to all of the other alleged grounds for cancellation proffered by the contracting officer. Dkt #13 at 11-12 & 19. That argument is not sufficient to deny supplementation.

First, though cancellation is the primary issue, it is not the only issue. Cancellation does not make unlawful action irrelevant when unlawful action is the foundation of the cancellation itself and/or is independently actionable regardless of whether the cancellation is ultimately set aside, as RKR noted above in Part I.B.

Second, factual disputes that will arise if the solicitation is ambiguous merit a more fully developed record. If the solicitation is ambiguous, the foundation of the agency's decision and the Court's review is itself an unlawful act—an arbitrary shift in clarifying interpretations. That shift is not fully explained in the record.[5]

Third, the government, not RKR, bears the burden of showing support for all of its grounds for cancellation in an administrative record case. Dkt #13 at 16. The government's burden does not shift and require RKR to negate all other grounds in order to supplement. It is clear that in order to present a claim for relief, "the bidder does have

---

[5] If the solicitation is clear in RKR's favor, the Air Force's shift to a contrary position is by definition arbitrary and will likely be sufficient to set aside the cancellation when the other alleged grounds are considered and rebutted.

the right to introduce appropriate evidence to allow the court to determine whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Graphicdata, LLC v. U.S.*, 37 Fed.Cl. 771, 780 (1997).

Fourth, RKR need not show bad faith in order to supplement. *See* Dkt #11 at 8-9.

*B. The Deposition and Document Requests are Proper*

1. Depositions.

The government's argument for avoiding the depositions rests entirely on (1) its theory that a violation that is the foundation of the cancellation is irrelevant to the cancellation and (2) its litigation position, different from the position it took before GAO, that the solicitation is now clear in its favor and does not accommodate configuration changes. Dkt #13 at 19-21. If either one of those is incorrect (and the government admits it has previously taken a position contrary to the second, Dkt #13 at 10), there is a "serious question[n] as to the rationality of the contracting officer's . . . determination," *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1340-41 (Fed. Cir. 2001), and leave to notice depositions as to persons involved in the Air Force's shifting interpretations should be granted.

2. The Court should allow the parties to cite to AFI 33-115 and 33-115V1.

The government states that the contracting officer did not use AFI 33-115, which now includes and supersedes AFI 33-115V1, in his decision making. However, he was supposed to, because AFI 33-115V1 is incorporated into the solicitation. AR 172, 174. AFI 33-115 and AFI 33-115V1 are therefore properly part of an assessment of the existing configuration and changes to network operations that are at issue here.

3. The Court should allow inclusion of the Questions and Answers.

As to the Question and Answer allegedly already in the record, the question is where is it, and if it is the one attached to RKR's GAO protest, AR 1151-1154, will the government stipulate as to its authenticity and use without objection?

As to the other Questions and Answers, if the Court agrees in principle to permit supplementation as to any other Questions and Answers addressing Section 7 of Amendment 11 to the solicitation (the location of the network operations staffing requirements and configuration changes language), RKR will submit an additional motion to supplement citing and attaching those specific questions. The Question and Answer databases, as the Court will see by following the link at Dkt #13 at 29 n.14, are large and are not readily conducive to efficient sifting through. Since it prepared the Q&A, the identification burden should be on the government, but it has disclaimed this burden based on the two arguments identified in part II.B.1., *supra*.

4. The Court should grant leave to supplement for the balance of RKR's requests.

The government's only arguments on the balance of the requests are the same as before: (1) its theory that a violation that is the foundation of the cancellation is irrelevant to the cancellation and (2) its litigation position, different from the position it took before GAO, that the solicitation is now clear in its favor and does not accommodate configuration changes. Dkt #29-30. If either one of those arguments is incorrect—and they both are for the reasons explained herein and in Dkt #11—supplementation should be granted consistent with RKR's "right to introduce appropriate evidence to allow the court to determine whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Graphicdata, LLC v. U.S.*, 37 Fed.Cl. 771, 780 (1997).

III. Conclusion, Prayer and Request for Relief

What was until July of 2007 a procurement where configuration changes would be phased in at the direction of the Air Force over the life of the contract is now, the Air Force says, a case where solicitation authors, contracting officers, and even a director of the changes himself (Maj. Gen. Maluda) handled a procurement for four years as the proverbial right hands blissfully unaware of their own left hand's plan for the exact same configuration changes. This seems unlikely.

RKR acknowledges that the government has alleged other grounds for cancellation. However, RKR must have a chance to fully present its case as to the primary factor if it is to have any fair opportunity to show that the government's conduct here was arbitrary, capricious, or not in accordance with law.

RKR respectfully requests leave to supplement the Administrative Record filed in Dkt #9 with the depositions (including leave to notice) and documents and requests noted in Dkt #11 and requests that the Court order Defendant to produce the foregoing deponents and documents at a time to be agreed to by the parties or if necessary a time ordered by the Court.

DATED February 26, 2008

Respectfully submitted,

/s/

David F. Barton, Attorney-in-Charge
State Bar No. 01853300
**THE GARDNER LAW FIRM**
745 E. Mulberry Avenue, Suite 100
San Antonio, Texas 78212-3149
Telephone: (210) 733-8191

Telecopier: (210) 733-5538
E-Mail: dfb@tglf.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded in compliance with the Federal Rules of Civil Procedure to all counsel of record as set out below, on this the 26th day of February, 2008, as follows:

Will Rayel
Trial Attorney
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., NW, Room 12100
Washington, DC 20530 (20005 for FedEx)
phone: (202) 616-0302
facsimile: (202) 307-0972

***VIA E-FILING***

________/s/________________________
David F. Barton