IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-62C |
| | ) | (Judge Williams) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Defendant, the United States, respectfully replies to plaintiff's reply to defendant's opposition to plaintiff's motion for leave to supplement the administrative record. In neither its reply, nor its original motion, has plaintiff, RKR Joint Venture, LLC ("RKR"), proven that it is entitled to the extensive supplementation it requests. Rather, RKR has sought to confuse the Court as to the issues in this case, in hopes that the Court will grant it depositions and document discovery in order to determine the meaning of the solicitation in light of alleged "ambiguities." However, the irony of plaintiff's argument is that neither the Government nor plaintiff are arguing that the solicitation was ambiguous in any relevant way. The solicitation was not ultimately cancelled because of ambiguities, but rather, primarily, because of a change in requirements. AR 1016-21. Furthermore, in its reply RKR mischaracterized the Government's argument that alleged errors prior to the cancellation are moot. The Government is not arguing that RKR may not challenge violations of law or irrational decisions that caused the cancellation on the grounds of mootness. Rather, the Government is arguing that RKR wants to supplement the administrative record and create issues in this case that are irrelevant to the contracting officer's cancellation decision. Therefore, RKR's motion for leave to supplement the

administrative record should be denied, except for the limited exceptions noted in our opposition.

ARGUMENT

I. The Solicitation At Issue Is Not Ambiguous And Neither Side Is So Arguing

In its reply brief, RKR argues that the solicitation is clear that, if the needs of the United States Air Force ("Air Force") at Keesler Air Force Base ("Keesler AFB") changed from the requirements offerors were required to bid upon, then the Air Force could direct changes to the contract. E.g., Pl. Rep. 1-2.[1] Although the Government does not necessarily agree that "configuration changes" refers to AFNETOPs in the solicitation, the Government does agree with the substance of RKR's interpretation that, like in almost any Government contract, the Air Force was not bound to adhere to its staffing requirements at the date-in-time of the solicitation throughout the life of the contract. AR 43 (incorporating 48 C.F.R. § 52.243-2, Alternate II, which states, in relevant part, "The Contracting Officer may at any time, by written order . . . make changes within the general scope of this contract in any one or more of the following: (1) Description of services to be performed.")[2]; see also id. at 36 ("It is anticipated that adequate workload data will be available after the performance of the second option year for

[1] "Pl. Rep. __" refers to plaintiff's reply to defendant's opposition to plaintiff's motion for leave to supplement the administrative record, filed on February 26, 2008.

[2] It should be noted that this clause only enabled changes to the subsequent contract "within the general scope of the contract." It is highly questionable that a 63 percent change in requirements would have been considered "within the general scope of the contract." See, e.g., Cardinal Maint. Serv., Inc. v. United States, 63 Fed. Cl. 98, 106 (2004). Either way, as explained below, offerors were unambiguously instructed to bid upon the requirements as stated in the solicitation and it was rational for the contracting officer to cancel the solicitation when those requirements changed this drastically.

the service provider to predict a realistic cost to perform the remaining option years with minimal cost risk to the service provider; therefore, CLIN X003 of the resultant contract will be converted from cost plus award fee to fixed price award fee during the third option period.”).[3] The solicitation even notes that the Air Force was moving toward a NOSC-centric environment that was similar, but not identical to, the AFNETOPs environment that required the cancellation. Id. at 168 (“The goal of the AETC Network Control Center (NCC) Reengineering initiative is to implement a Network Operations and Security Center (NOSC) centric enterprise network within AETC.”); id. at 1350 (“the AFNetOps directive interrupted the completion of the NCC Reengineering Program. . . NCC Reengineering became the foundation for the AFNetOps Transformation effort.”).

However, while the solicitation noted the possibility of future changes based upon a NOSC-centric environment, offerors were specifically instructed not to base their bids upon a NOSC-centric environment. Id. at 1154. In its September 25, 2003, response to a question regarding the fact that an amendment had removed all references to a NOSC-centric environment from Section 7.1 of the Performance Requirements Document (“PRD”), the Air Force explained that it removed the references to a NOSC-centric environment from the PRD because of uncertainty based upon the fact that “funding and manning issues that have halted its implementation.”[4] Id. The Air Force affirmed that offerors should not base there offers upon a

---

[3] The conversion from cost plus to fixed price would have been a bilateral negotiated modification.

[4] Per RKR’s request in its reply, the Government agrees that the Question and Answer at AR 1154 is an accurate representation of the question and answer posted publicly and does not object to its use.

NOSC-centric environment, but rather, they should base their offers upon Section 7.1 of the PRD. Id. The Air Force merely retained a reference to a NOSC-centric environment in Section 7.4 of the PRD, id. at 168, as an "insight to the Air Force's future plans" that is "still a long range goal," not something upon which the offerors should base their bids. Id. at 1154. Nothing in the solicitation provided offerors with a definitive timeline regarding the implementation of a NOSC-centric environment. RKR agrees with the Government's interpretation that offerors were to base their offers upon Section 7.1 of the PRD, not the uncertain NOSC-centric environment or AFNETOPs. E.g., Compl. 4.[5]

In its reply brief, RKR alleges that the Air Force has had "shifting interpretations" of whether the solicitation accounted for "configuration changes." Pl. Rep. 1. However, this is inaccurate. The Air Force has never argued that the solicitation is unclear as to whether the Air Force can direct changes to the contractor's staffing during the life of the 10-year contract. Rather, before the GAO, the Air Force argued:

> There is an ambiguity in the solicitation's language concerning the requirements of staffing the Network Operations (SC1B) work center, which comprises a significant portion of the work. There was, and is currently, underway an initiative that would centralize certain operations and will significantly change personnel requirements. The solicitation, however, was ambiguous as to

[5] To the extent RKR is arguing that the offerors knew, with any reasonable certainty, the extent and schedule of the implementation of NCC Reengineering into a NOSC-centric environment based upon the solicitation, then the Government and RKR do have a disagreement. However, the September 25, 2003, answer explained above makes clear that offerors did not have any such certainty. Furthermore, as noted above, AFNETOPs, while similar to NCC Reengineering, interrupted and went beyond NCC Reengineering. AR 1350. In any event, if necessary, the Court is able to make a determination of what offerors were told in the solicitation based upon the solicitation itself, id. at 1-455, specifically Section 7.4 of the PRD, where such information would have been placed. Id. at 156-71, 1154.

> whether the initiative should be considered in staffing projections . . ."

AR 772 (emphasis added). In response to the above statement, the GAO quoted the September 25, 2003 question and answer referenced above and propounded the following pointed question: "Please identify the 'ambiguity' in the solicitation regarding this matter. More specifically, is it the Air Force's position that an offeror could reasonably believe that staffing for a NOSC-centric environment complied with the solicitation requirements?" Id. at 939 (emphasis added).

Clearly, the GAO did not see an ambiguity in the solicitation regarding whether offerors could base their offers upon a NOSC-centric environment, and there is, in fact, no ambiguity. In light of the GAO's question, the Air Force has not argued that there was an ambiguity since that time, but rather, that the implementation of AFNETOPs has caused a change in requirements. See, e.g., id. at 942-47. Given the emphasis RKR has placed upon this statement, we needed to clarify the correct significance of this alleged ambiguity, because it is irrelevant to the instant case. The Government is not arguing that the solicitation was ambiguous on this point, RKR is not arguing that the solicitation was ambiguous on this point and, most importantly, the contracting officer did not rely upon an ambiguity in the solicitation to justify cancellation. Rather, the contracting officer relied, primarily, upon a 63 percent change in requirements. Id. at 1017-20.

Therefore, RKR's primary justification for seeking supplementation, an alleged ambiguity in the solicitation, fails because both parties agree that there is no relevant ambiguity in the solicitation.

II. The Only Issue Before This Court, At This Time, Is Whether The Contracting Officer's January 7, 2008, Decision To Cancel The Solicitation Was Rational

The primary issue before this Court is whether the Government had a rational basis for cancelling the solicitation based upon a 63 percent change in the requirements upon which offerors were unambiguously instructed to bid and whether that decision is supported by the administrative record. A decision to cancel based upon a change in requirements is per se rational, see, e.g., Am. Gen. Leasing, Inc. v. United States, 218 Ct. Cl. 367, 587 F.2d 54, 59 (1978) ("the Government alleges a reasonable basis for cancelling the solicitation, i.e. a revision in specifications . . ."); cf. Aviation Enterprises, Inc. v. United States, 8 Cl. Ct. 1, 19 (1985) (holding a "cancellation based on overstated specifications to be reasonable.") (citation omitted), and such a decision is supported by the administrative record in this case. Furthermore, so long as it has a rational basis for doing so, an agency "may cancel a solicitation regardless of when the information precipitating the cancellation first surfaces or should have been known, even if the solicitation is not canceled until after proposals have been submitted and evaluated, . . . after contract award, . . . or, as here, after the announcement of a different course of action in response to a GAO protest." Lackland 21st Century Servs. Consol., B- 285938.7, B- 285938.8, 2001 C.P.D. ¶ 197, 2001 WL 1543693, *4 (Comp. Gen. Dec. 4, 2001) (internal citations omitted).[6]

RKR, however, seeks supplementation as to matters having nothing to do with the contracting officer's decision to cancel the solicitation. For example, RKR seeks supplementation regarding the MEO's management plan, Major General John W. Maluda's

[6] Although decisions of the GAO are not binding on this Court, the Court has stated that such decisions can be of great value when considering issues of Federal procurement law. See Park Tower Mgmt., Ltd. v. United States, 67 Fed. Cl. 548, 563 n.29 (2005) (citing Thompson v. Cherokee Nation of Oklahoma, 334 F.3d 1075, 1084 (Fed. Cir. 2003)).

administrative appeal decision[7] and Major Gen. Lord's August 2, 2007 memorandum. However, the solicitation was not cancelled because of anything in the MEO management plan or the administrative appeal decision, nor did the contracting officer rely upon General Lord's calculations regarding the effect of AFNETOPs on the solicitation in making his cancellation decision. Rather, the contracting officer relied upon a technical analysis from a member of his own staff at Air Education and Training Command ("AETC"), which is documented in the administrative record. AR 1345-51.

As we noted above, RKR's primary justification for supplementation, i.e., ambiguities in the solicitation, fails because the Government and RKR essentially agree that the Government could make changes pursuant to the solicitation's changes clause (48 C.F.R. § 52.243-2, Alternate II) to meet the Government's updated needs, which could affect the service provider's staffing at Keesler AFB during the life of the contract, so long as those changes were within the scope of the contract. However, alleged ambiguities are not the only basis RKR advances in support of supplementation. RKR also alleges that the supplementation is necessary to support its allegation of a "freestanding violation of the FAR." E.g., Pl. Mot. 12.[8] In our opposition, we

---

[7] It should be noted that General Maluda's decision had nothing to do with whether the solicitation accommodated "configuration changes," as RKR alleges in its reply. Pl. Rep. 6. As the administrative appeal authority, General Maluda was tasked with adjudicating RKR's administrative appeal, which was based upon alleged errors in evaluating the MEO's bid. AR 1115-18. General Maluda did not make any determination as to whether the solicitation met the requirements of the Air Force at the time of his decision. Rather, General Maluda determined that the MEO bid was staffed according to the requirements of the solicitation, which he stated do not include a NOSC-centric initiative. Id. at 1116 ("the MEO is aware of potential changes to current operations, but those changes or NOSC-centric operations were not quantified in the Management Plan. Thus the MEO staffing is based upon PRD requirements.").

[8] "Pl. Mot. __" refers to plaintiff's motion for leave to supplement the administrative record, filed on February 11, 2007.

demonstrated that: 1) there is no such thing as a "freestanding violation of the FAR"; and 2) unless and until the cancellation is permanently enjoined, any alleged illegality or irrationality on the part of the Air Force in connection with this procurement is a moot issue that this Court does not possess jurisdiction to entertain. Def. Opp. 15-19.[9]

In its reply, RKR contends that evaluation of the MEO and RKR's bids and other "unlawful action" is the "foundation of the cancellation itself." Pl. Rep. 8. However, RKR continues to miss the point of our argument. If the contracting officer had a rational basis for cancelling the solicitation, and that basis is supported by the administrative record, then the Court must find for the Government. Regardless of how unjustly RKR believes it has been treated by the Government throughout the procurement, if the Government's articulated basis for cancelling the solicitation is rational, all other alleged bad acts are moot. See Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32 (2005); S.K.J. & Associates, Inc. v. United States, 67 Fed. Cl. 218 (2005); CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554 (2000); CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 688-90 (Fed. Cl. 1999).

In this regard, the GAO's decision in Lackland is instructive. In Lackland, the Air Force decided to award a contract to protestor in an A-76 procurement, but then, in response to an administrative appeal, reversed course and decided to award to the MEO. 2001 WL 1543693, *2. Air Force then reversed course again, in response to a GAO protest, and decided to award to the protestor. Id. Approximately five months later, the Department of Defense Inspector General ("IG") publicly released a redacted report recommending cancelling the solicitation. Id.

---

[9] "Def. Opp. __" refers to defendant's opposition to plaintiff's motion for leave to supplement the administrative record, filed on February 21, 2007.

at 2-3. The Air Force then asked its own auditors, unbeknownst to the protestor, to do an independent evaluation of the procurement, and the auditors recommended cancellation as well. Id. at 3. The Air Force then cancelled the solicitation based upon of the auditor's report. Id. The protestor then filed a protest with the GAO alleging that the IG's report was flawed. Id. The GAO stated:

> Upon receipt of the agency report, however, L-21 learned for the first time that the IG report was not the basis the Air Force identified for canceling the solicitation. Instead, the Air Force identified the conclusions of its own AFAA review as the basis for its decision. Thus, none of L-21's initial challenges are relevant to the validity of the Air Force decision to cancel the underlying solicitation, revise its requirements, issue a new solicitation, and restart the A-76 cost comparison process, and we need not consider them further.

Id. at 4. The protestor was allowed to challenge the Air Force's stated bases for cancellation, but not the IG report, which was not a basis for cancellation. Id.

Similarly, in this case, RKR seeks to challenge a host of actions that were not the basis of the cancellation decision, such as, the evaluation of bids, the tentative decision to award to the MEO, the administrative appeal decision and the Air Force's statements before the GAO. None of this is relevant. Rather, what is relevant is the contracting officer's January 7, 2008 cancellation decision and the documentation underlying that decision. If that decision was rational, the Court must rule for the Government, period. If RKR is able to recover bid preparation and proposal costs, this recovery must be based upon an irrational, prejudicial cancellation, not a "freestanding violation of the FAR."

## CONCLUSION

For the foregoing reasons and the reasons set forth in our opposition to RKR's motion for leave to supplement the administrative record, the Court should deny RKR's motion, except for the limited exceptions noted in our opposition.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

OF COUNSEL:
Gary R. Allen
Air Force Legal Operations Agency,
Commercial Litigation Division
1501 Wilson Blvd., Suite 600
Rosslyn, VA 22209

/s/ William P. Rayel
WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-0302
Fax. (202) 307-0972

March 3, 2008

Attorneys for Defendant