**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC<br>A Mississippi Limited Liability<br>Corporation<br>Plaintiff, | §<br>§<br>§<br>§<br>§ | |
| VS. | §<br>§ | NO. 08-CV-00062-MCW<br>Judge Williams |
| THE UNITED STATES<br>Defendant. | §<br>§ | |

**SECOND DECLARATION OF DALE PATENAUDE**

Pursuant to 28 U.S.C. § 1746, I declare that:

1. My name is Dale Patenaude. I am a resident of Bexar County, Texas. I am over the age of twenty-one years, am competent to testify, and state that the following is of my own personal knowledge, true and correct.

2. I am the Vice President of RKR Joint Venture LLC ("RKR"), a Mississippi limited liability corporation, and the Vice President of Rothe Development Corporation, a Texas corporation and one of the joint venture member companies. In this declaration, I declare as an officer on behalf of RKR, as a member of its management team, and as one of the persons directly involved in the preparation of RKR's offer in response to the solicitation in this case.

3. I am experienced in the industry and with Air Force communications and information technology contracts in particular. I have been Vice President of Rothe Development Corporation since April 15, 1997. Prior to that time I worked as a consultant from 1991-1997 and as an employee from 1972 to 1990. I have managed government communications and IT contracts since 1972. I hold a bachelor of science degree in electrical engineering from the University of Texas. I have over 30 years of Government contract management experience since 1972 and consider myself an expert in all the foregoing matters. Between RKR Joint Venture LLC and Rothe Development Corporation, my companies have bid on several hundred government contracts in the past two decades, up to $ 100 million in value. I have attended numerous pre-bid conferences and have a through understanding of the small business contractors involved in furnishing communications and information technology services to the government. As Vice President of Rothe Development and RKR, I assist in preparing the bid proposals, and assist in negotiations with the project owner and/or general contractor. This combined experience has given me special expertise in formulating bids and proposals for government contracts, and in performing the mathematical calculations necessary for those tasks.

4. The purpose of this declaration and its accompanying attachments (labeled exhibits) is to provide facts and context concerning Mr. Ron Mortag's Determination and Findings (D&F), dated January 9, 2007, regarding paragraph 10, Administrative Record (AR) 1019-1020, and his assertion that the number of attendees at the Sheppard AFB, Texas pre-bid conference is relevant to the cancellation of the Little BOS at Keesler AFB, MS and, as relied upon by him, is a major factor for his determination to cancel the Little BOS.

5. The D&F contains the following quote:

> The roster (Atch 9) page from the July 2007 site visit shows ten small business concerns are interested in the COMM/IT solicitation or "all" the solicitations including the one for COMM/IT: C2Technologies, RSI, FSI, Rothe Development, Rothe Enterprises, Rome Research Corp., MTCI, Betis Group, MAT and LCI Leader Corporation. There were also four large businesses expressing interest in the COMM/IT solicitation at Sheppard, probably as subcontracting or teaming opportunities. In contrast, there were only two qualified small businesses in the Keesler Little BOS competition, for essentially the same PRD as at Sheppard.

6. This quote caused me concern as one of the joint venturer plaintiffs in this case, because it contradicted what I saw and heard as an attendee at the pre-bid conferences at Sheppard and Keesler for the solicitations referred to by the contracting officer. The number of available bidders at Sheppard has been mischaracterized, resulting in a flawed analysis in the D&F regarding fairness as portrayed at AR 1020. The mischaracterization is not clear on the face of the contracting officer's conclusory statement.

7. When I attended the pre-proposal conference at Keesler Air Force Base concerning the Little BOS solicitation, there were 20 small business contractors there as prospective offerors. See **Exhibit 4-1** (Keesler site visit attendee list).

8. The following is an analysis of the D&F's assertion regarding an increase in potential bidders post-cancellation as alleged at Sheppard.

9. The Sheppard COMM/TSS bid contains two separate functions in one bid and is often bid through joint venture or prime/sub contracting. The Communications (COMM or Comm) section was similar to the Comm section of the Keesler bid in that it contained communications and information technology requirements. The TSS (Training Support Services) section consisted of development of interactive computerized training. The TSS function was not in the Keesler bid. The multimedia services in the Keesler bid were not similar to anything in the Sheppard bid.

10. The COMM/IT section of the Sheppard solicitation was manned with 78 Communications people and the TSS section was manned with 33 people at the

time the Sheppard solicitation was issued. **Exhibit 6** (Sheppard AFB Competitive Sourcing Decision Package, Exh.5, at 4.1.2 & 4.1.6, pages 5-6). At Keesler the COMM section was much larger than the Multimedia section, approximately 138 people in COMM compared to 28 people in Multimedia. (Based on Keesler UMD, AR 1618-1678).

11. The Keesler solicitation was a small business set aside for NAICS code 561210, and is limited to businesses with an average income less than $23 million dollars. The bid at Sheppard was set aside for NAICS code 561210 and was specified in the bid set at $20 million dollars. Businesses that are larger than this could not bid and, therefore, would not be viable competitors.

12. To be competitive for Sheppard as a prime contractor the bidder must be COMM qualified. Bidders that were only qualified for the TSS section could be part of a team but the team must have as the main company a COMM contractor.

13. The Sheppard attendees stated in the D&F Attachment 9 (AR 1609) self reported their size and areas of interest (which may or may not necessarily corresponded to expertise, since subcontracting was permitted). In order to assess whether the contracting officer's assertion is valid, the self reporting at AR 1609 must be compared to actual data. The contracting officer did not make such a comparison.

14. I made an initial verification the business size of the Sheppard attendees stated in the D&F Attachment 9 (AR 1609) by reference to their self certifications in Central Contractor Registration ("CCR"), a self-authenticating federal government database at http://www.ccr.gov.

15. To further determine eligibility with respect to size and Comm experience, I downloaded a copy of the Sheppard site visit list that was provided on the self-authenticating Federal Business Opportunities (FedBizOps) website, http://www.fbo.gov, along with the RFP for the Sheppard COMM/TSS RFP. The list I downloaded is shown as **Exhibit 1**. The list had the full names for most of the companies and with it I was able to identify those that are not fully identified in D&F Attachment 9 as FSI (Facilities Services Management Inc), MTCI (Management and Training consultants), and MAT (McLane Advanced Technologies).

16. To further evaluate business size of the businesses on the list, I downloaded the latest self-authenticating size tables from the Small Business Administration, http://www.sba.gov/idc/groups/public/documents/sba_homepage/serv_sstd_tablepdf.pdf.

17. I attached pages 29 and 30 (**Exhibit 2**) from those tables to cover NAICS codes 541511, 541512, 541513 and 541519, the TSS NAICS codes, all of which

are $23 million dollars. For a version of the SBA size standards matched to NAICS codes, see also: http://www.naics.com/sba_sizestandards.htm.

18. SBA size table page 30 also includes NAICS code 561210, Facility Support Services, at $32 million dollars.

19. The Sheppard bid was set aside at $20 million dollars and the Kessler bid was set aside at $23 million dollars.

20. After comparing the listed businesses to the information shown in the government databases, I conclude that several of the businesses listed on Attachment 9 to the contracting officer's D&F and referenced in the D&F paragraph #10 (AR page 1019) only had TSS experience, but did not have Comm experience and, therefore, were not viable competitors on that basis alone. Others were not small businesses and were not viable competitors on that basis.

21. RSI (Rohmann Services), Rothe Enterprises, Rothe Development and K-Mar Corporation (KMI) are all part of the RKR team from the Keesler bid that were going to bid on the Sheppard COMM/TSS solicitation until it was cancelled. Raytheon would have been a subcontractor for RKR. The composition of the RKR team was discussed with the government, including Mr. Mortag, during a one on one conference at the Sheppard site visit, and he was fully aware that these four bidders comprised only one bid team. Mr. Mortag apparently incorrectly considered KMI as a large business, but the existence of the RKR joint venture as a small business eliminates three of the small businesses and two of the businesses Mr. Mortag counted as large businesses, KMI and Raytheon, from the justification given in paragraph 10 of the D&F. This reduces the number of alleged eligible bidders a great deal but there are further reductions.

22. C2 Technologies is a small business but has no COMM/IT experience that would qualify them to bid this contract as a prime bidder. It has experience in the TSS part of the contract but not the Comm/IT areas. This is not clearly confirmed by their CCR data and Small Business Profile (From CCR) **Exhibit 3-1**. I further verified this by calling their CCR point of contact, Webster Sewell, who confirmed my prior knowledge that its expertise is in web training development, not in Comm.

23. FSI (Facilities Services Management Inc) has no COMM/IT qualifications. It is a small business whose main area of expertise is housing and facility maintenance. A quick review of their CCR Data and Small Business Profile (**Exhibit 3-2**) entries indicates this. In addition, I talked to the CCR point of contact, Jill Workman, who verified it does not have COMM/IT expertise.

24. MTCI (Management and Training consultants) has no COMM/IT background. (See CCR Data and Small Business Profile **Exhibit 3-3**) They would make a good prime contractor for the TSS contract because they have a lot of training experience, but no COMM/IT services.

25. MAT (McLane Advanced Technologies) has Comm experience but it is a large business within the size requirements for the RFP. It self certifies that it is not a small business for the 23 million size standard in their CCR Data and Small Business Profile (**Exhibit 3-4** see NAICS code 541513). Sheppard had a $20 million size standard Keesler had a $23 million size standard.

26. LCI (Leader Communications) appears to be an experienced Comm/IT bidder, but it is not qualified to bid because it is a large business within the size requirements for the RFP. Its CCR Data and Small Business Profile (**Exhibit 3-5**) certifies that it is too big for NAICS code 541511,541512 and 541513, all $23 million.

27. The Betis Group is a small business with COMM/IT experience. See CCR Data and Small Business Profile (**Exhibit 3-6**). The Betis Group is the only small business that might possibly be a qualified bidder from the Sheppard bidders list for the COMM/IT, other than the fully qualified RKR Joint Venture team.

28. Other large businesses (Shaw, Phoenix Management, Rome) are also not qualified to bid on the Keesler solicitation due to their size. See **Exhibits 3-7 to 3-9.**

29. The Keesler Site Visit Bidder list is attached as **Exhibit 4-1**. My review of the site visit list at Keesler showed there were only two RFP's. Each bidder had to sign up for the separate RFP's. There was no "all" option like at Sheppard. Therefore, unlike Sheppard, bidders had to specifically sign up for the Little BOS. There were twenty small businesses that were at Keesler that were interested in COMM/IT. There were three large business's interested in COMM/IT. The D&F states that only two small businesses made acceptable bids on the Little Boss at Keesler out of the twenty small businesses that were interested.

30. The reduction from interested bidders to qualified bidders was a 20 to 2 reduction at Keesler. An evaluation of the foregoing facts makes it clear that if there were only two qualified bidders at Keesler out of twenty and only one fully qualified bidder – RKR – at Sheppard, it is unlikely there would be any more than two or three at Keesler, at most, in a re-solicitation of the Little BOS, or, at least, no quantifiably large group of bidders as implied in the D&F that would provide the amorphous fairness alleged in the D&F.

31. Further, it is likely it will be difficult to interest bidders in any solicitation at Keesler after the debacle of the contested cancellation in this case. One must keep in mind that a comparison of Keesler and Sheppard bidders lists, as asserted in the D&F, lacks relevance to Mr. Mortag's claim in the D&F that he would expect more bidders if Keesler was resolicited and that it would be fairer to someone to rebid it, without designating who would be treated more fairly. It certainly wouldn't be RKR who already expended its sweat and equity in bidding on the Keesler Little BOS solicitation, expecting a fair evaluation, which it has been denied. It also would not be the government, as it continues to pay higher rates with more people than what it would have if RKR had been awarded the contract for the contested solicitation. **Exhibit 5**, at page 1.

32. Lastly the current rules the Air Force is using require all A-76 RFP's to be fixed price rather than negotiated procurements. This further reduces the competition."

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this, the 2nd day of July, 2008.

DALE PATENAUDE