**No. 7 Nash & Cibinic Rep. ¶ 36**

**Nash & Cibinic Report**
**July, 1993**

**Competition & Award**

# CANCELLATION OF SOLICITATIONS: ARE BIDS AND PROPOSALS SWEETER THE SECOND TIME AROUND?

Ralph C. Nash
John Cibinic
Professors Emeriti of Law, George Washington University

Copyright (c) 1993 Federal Publications, Inc.; Ralph C. Nash, John Cibinic

The cancellation of a solicitation after bids have been opened or proposals have been submitted is an unfortunate, but sometimes necessary, event. In most cases, someone is disappointed, so this is a frequently protested occurrence.

### "Compelling Reason" vs. "Reasonable Basis"

Much stricter standards apply to the cancellation of an invitation for bids (IFB) after bid opening than to the cancellation of a request for proposals (RFP) after the receipt of proposals. Federal Acquisition Regulation (FAR) 14.404-1(a) imposes a "compelling reason" test for cancellation of an IFB after opening:

(1) Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation.

(2) Every effort shall be made to anticipate changes in a requirement before the date of opening and to notify all prospective bidders of any resulting modification or cancellation. This will permit bidders to change their bids and prevent unnecessary exposure of bid prices.

(3) As a general rule, after the opening of bids, an invitation should not be canceled and resolicited due solely to increased requirements for the items being acquired. Award should be made on the initial invitation for bids and the additional quantity should be treated as a new acquisition.

By contrast, the FAR does not specify any particular standard for cancellation of an RFP. In *CFM Equipment Co.*, Comp. Gen. Dec. B-251344, 93-1 CPD ¶ 280, the Comptroller held that an agency needs only a "reasonable basis" to cancel an RFP after receipt of proposals. The Comptroller discussed the difference between the two standards as follows:

Under FAR § 15.608(b)(4), a procuring agency may reject all proposals received in response to an RFP if cancellation is clearly in the government's interest. Thus, as a general rule, in a negotiated procurement the contracting agency need only demonstrate a reasonable basis to cancel a solicitation after receipt of proposals, as opposed to the "cogent and compelling" reason required to cancel an IFB where sealed bids have been opened. *Xactex Corp.*, B-241739, May 5, 1992, 92-1 CPD ¶ 423. The standards differ because in procurements using sealed bids, competitive positions are exposed as a result of the public opening of bids, while in negotiated

procurements there is no public opening. *ACR Elecs., Inc.*, B-232130.2; B-232130.3, Dec. 9, 1988, 88-2 CPD ¶ 577. The question presented by this protest is whether the agency's second thoughts about its procurement strategy have a reasonable basis.

The harm done by the disclosure of bid prices in a sealed bid public opening is only part of the story. There are other cogent reasons to refrain from canceling that are applicable equally to negotiated procurements. The wasted effort resulting from cancellation and the additional time and effort required if there is a resolicitation would seem to require that decisions to cancel should only be made as a last resort. Further, in a negotiated procurement, problems can often be remedied in the discussion and best and final offer stages thereby making cancellation an extraordinary remedy.

**Grounds For Cancellation**

FAR 14.404-1(b) makes cancellation of the solicitation *mandatory* if it is discovered, prior to award, that the specifications cited in the IFB were not available to bidders. Other reasons for cancellation are *discretionary* and are listed in FAR 14.404-1(c) as follows:

Invitations may be canceled and all bids rejected before award but after opening when, consistent with paragraph (a)(1) above, the agency head determines in writing that--

(1) Inadequate or ambiguous specifications were cited in the invitation;

(2) Specifications have been revised;

(3) The supplies or services being contracted for are no longer required;

(4) The invitation did not provide for consideration of all factors of cost to the Government, such as cost of transporting Government-furnished property to bidders' plants;

(5) Bids received indicate that the needs of the Government can be satisfied by a less expensive article differing from that for which the bids were invited;

(6) All otherwise acceptable bids received are at unreasonable prices, or only one bid is received and the contracting officer cannot determine the reasonableness of the bid price;

(7) The bids were not independently arrived at in open competition, were collusive, or were submitted in bad faith (see Subpart 3.3 for reports to be made to the Department of Justice);

(8) No responsive bid has been received from a responsible bidder.

(9) A cost comparison as prescribed in [Office of Management and Budget] Circular A-76 and Subpart 7.3 shows that performance by the Government is more economical; or

(10) For other reasons, cancellation is clearly in the public's interest.

The following *discretionary* reasons for cancellation of an RFP subsequent to the receipt of proposals are set forth in FAR 15.608(b):

All proposals received in response to a solicitation may be rejected if the agency head determines in writing that--

(1) All otherwise acceptable proposals received are at unreasonable prices;

(2) The proposals were not independently arrived at in open competition, were collusive, or were submitted in bad faith (see Subpart 3.3 for reports to be made to the Department of Justice);

(3) A cost comparison as prescribed in [Office of Management and Budget] Circular A-76 and Subpart 7.3 shows that performance by the Government is more economical; or

(4) For other reasons, cancellation is clearly in the Government's interest.

(5) A violation or possible violation of section 27 of the Office of Federal Procurement Policy Act, as amended (41 U.S.C. 423), has occurred (see 3.104).

Some of these reasons for cancellation are relatively noncontroversial, and other nonspecified reasons for cancellation are not likely to be overturned. For example, if the Government no longer needs the item, cancellation would seem to be required, e.g., *Discount Machinery & Equipment, Inc.*, Comp. Gen. Dec. B-233853.2, 89-1 CPD ¶ 544. Similarly, if an IFB violates a statute, *Pavel Enterprises, Inc.*, Comp. Gen. Dec. B-249332, 92-2 CPD ¶ 330; the prices offered exceed the available funds, *AT&T*, Comp. Gen. Dec. B-251177, 93-1 CPD ¶ 236; or the solicitation failed to reflect the agency's minimum needs, *Renic Government Systems*, Comp. Gen. Dec. B-249484 (Nov. 9, 1992), cancellation would seem to be the only option available.

However, two bases for cancellation are more controversial--(1) where the Contracting Officer (CO) determines that the lowest price is unreasonably high and (2) where the competitive process has been impaired.

• *Unreasonable Prices*--The Comptroller General has accorded the CO great discretion in determining that the prices are unreasonable. See, for example, *California Shorthand Reporting*, Comp. Gen. Dec. B-250302, 93-1 CPD ¶ 202, where the Comptroller stated: "An agency's determination of price reasonableness involves the exercise of discretion on the part of the contracting officer, which our Office will not question, unless it is clearly unreasonable or there is a showing of fraud or bad faith on the part of the contracting official."

There are a number of techniques that may be used to evaluate the reasonableness of prices. In *Bay Cities Refuse Service, Inc.*, Comp. Gen. Dec. B-250807, 93-1 CPD ¶ 151, the Comptroller discussed these various techniques and held that the CO may rely on any one of them:

Finally, the protester contends that "at a minimum" the agency's determination of price reasonableness should be based on a comparison of proposed prices with a "number of factors" including government estimates, past procurement history, current market conditions, and other relevant factors. *See Crown Laundry & Dry Cleaners, Inc.*, B-224374.2, Jan. 20, 1987, 87-1 CPD ¶ 71. BCRS states that its per quarters bid ($6.60) was less than the per house cost ($9.44) in the San Francisco Bay region, and asserts that the Army's failure to conduct a "timely" market survey was improper. We disagree.

FAR § 14.407-2(a) directs contracting officers to FAR § 15.805-2 for price analysis techniques that may be used to determine whether prices are reasonable. FAR § 15.805-2 provides that contracting officers are responsible for selecting and using whatever price analysis techniques will ensure a fair and reasonable price, and it lists a number of techniques, "one or more" of which may be used for this purpose. This is what we held in *Crown.* In that case, we stated that a determination of price reasonableness was a matter of administrative discretion involving the exercise of business judgment. We found that such a determination "may" be based on a comparison with "such factors" as government estimates, past history, and current market conditions or other relevant factors, "including any which have been revealed by the bidding." *Id.* While a market survey of current conditions may be a valid basis for comparison, it is not required. Nor is any combination of factors required. A decision based solely on comparison to an IGE [independent government estimate] may be reasonable. *See G. Marine*

Diesel Corp., B-238703; B-238704, May 31, 1990, 90-1 CPD ¶ 515. Here, the decision was based on comparison to a reasonably based IGE and to the prior year's contract as well. The absence of a presolicitation market survey does not make the Army's decision unreasonable.

The most questionable technique is the use of a nonresponsive bid to determine that the price of the lowest responsive bid is unreasonable. It is possible that the nonresponsive bid price was unreasonably *low* rather than the low responsive bid was unreasonably *high*. The Comptroller General seemed to recognize this problem in *Sigma West Corp.*, Comp. Gen. Dec. B-247916, 92-2 CPD ¶ 31, indicating that caution should be used in such situations, but holding that a nonresponsive bid could be used if there was no better method available. The Comptroller stated: "Although a contracting agency should exercise caution when using a nonresponsive bid as the only benchmark of price reasonableness, primary reliance on a nonresponsive bid is appropriate when other methods of determining current market price are not reasonably available."

Reliance on the nonresponsive bid has been rationalized on the grounds the deviation in the bid had a "negligible" impact on price, *Sigma West* ($3 out of a bid price of $801.13 and the bidder "seriously wished" to be bound by its bid) and the deviation did not affect the price, *State Management Services, Inc.*, Comp. Gen. Dec. B-250538, 93-1 CPD ¶ 108. We wonder why award wasn't made in these cases on the ground that the deviations were minor and that the bids were, therefore, responsive.

The use of a nonresponsive bid price is significantly more reliable when it is coupled with another technique, such as an independent Government estimate, *Dutra/AmClyde Joint Venture*, Comp. Gen. Dec. B- 249364, 92-2 CPD ¶ 453.

• *Flawed Competition*--Cancellation decisions have been uniformly upheld based on a determination that there has been some flaw in the competition, e.g., *Maytag Aircraft Corp.*, Comp. Gen. Dec. B-250628, 93-1 CPD ¶ 93 (only one bid received and CO only learned of potential for increased competition just before closing); *RII*, Comp. Gen. Dec. B-251436, 93-1 CPD ¶ 223 (procurement misclassified in the *Commerce Business Daily*); and *Sweepster Jenkins Equipment Co.*, Comp. Gen. Dec. B-250480, 93-1 CPD ¶ 111 (bidder was reasonably misled by solicitation provisions). Often there are available alternatives to cancellation in such cases, *JANA, Inc.*, Comp. Gen. Dec. B-247880, 92-2 CPD ¶ 94 (inaccurate estimates for requirements contract could be accomplished by an RFP amendment); and *Tennessee Valley Service Co.*, Comp. Gen. Dec. B-188771, 77-2 CPD ¶ 40 (cancellation not required where an appropriate evaluation could be accomplished without prejudice to other bidders).

**Use It Wisely**

Cancellation of solicitations is a valuable procurement tool. However, just as any other tool, it should be used wisely. COs should consider the time and expense involved in cancellation as well as its impact on the integrity of the competitive system. Thus, cancellation should be used only after all other alternatives have been considered and a judgment has been made that the cancellation is in the best interests of the Government. One other point: many, if not most, of the cancellations of solicitations are due to poor or nonexistent acquisition planning. A better idea is to do it right the first time.

7 No. 7 NASHCIBINIC ¶ 36

END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.