# Formation of Government Contracts
## third edition

John Cibinic, Jr.
Ralph C. Nash, Jr.

The George Washington University
WASHINGTON DC

LAW SCHOOL

GOVERNMENT CONTRACTS PROGRAM

© Copyright 1998 by The George Washington University

*All rights reserved.* No part of this book may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, except for the inclusion of brief quotations in a review, without the prior written permission of the publisher. For information, contact The George Washington University Law School, Government Contracts Program, Suite 100, 600 New Hampshire Avenue, N.W., Washington, D.C. 20037. Printed in the United States of America.

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional service. If legal advice or other expert assistance is required, the services of a competent professional person should be sought.

— From the *Declaration of Principles* jointly adopted by a Committee of the American Bar Association and a Committee of Publishers and Associations.

This book does not represent an official position of the U.S. Government or any U.S. Government agency.

Library of Congress Catalog Card Number: 98-70436
casebound ISBN 0-935165-41-X
perfectbound ISBN 978-0-8080-1679-3

# PREFACE

In 1960 the National Law Center of The George Washington University decided to establish a special program devoted to research and teaching in the field of Government procurement. We named it the Government Contracts Program and began to teach a series of continuing education courses and to publish in the field. In the early years, we devoted our attention to publishing a casebook on the law, *Federal Procurement Law*, and a series of monographs. The University was highly supportive in establishing two tenured positions on the law faculty devoted to work in the field of Government procurement. We were fortunate to hold those positions for thirty years, enabling us to accomplish the work that we have done.

By 1980 it was clear that our publications were being used by many business people as well as lawyers and that our courses were being heavily attended by contracting officers and corporate contract managers. To assist these people in performing their jobs, we embarked on a project to publish a series of textbooks in the field. *Formation of Government Contracts*, published in 1982, was the second of this series. After the enactment of the Competition in Contracting Act and the issuance of the *Federal Acquisition Regulation* in 1984, it became clear that a revision was necessary. Hence, the second edition of *Formation of Government Contracts* was published in 1986. It has been a best seller, with more than 20,000 copies sold in the ensuing years.

The passage of the Federal Acquisition Streamlining Act in 1994 and the Clinger-Cohen Act in 1996 made such significant changes in the Government contracting process that it was clear that a third edition was needed. It was ready for publication early in 1997 but we decided to wait until Part 15 of the *Federal Acquisition Regulation* was rewritten. This has enabled us to include all of the current statutes and regulations as well as the cases into the early part of 1998.

The book integrates the three sources of the rules of the formation of Government contracts — statutes, regulations and cases — into a single work. It is long because these rules are detailed and complex. We have attempted to assist our readers in dealing with the length of the book by

> The submission of a below-cost bid is not illegal and provides no basis for challenging the award of a government contract to a responsible prospective contractor. Whether the low bidder can perform the contract at the price bid is a matter of responsibility. Our office does not review protests concerning affirmative determinations of responsibility absent a showing that the contracting officer acted fraudulently or in bad faith or that definitive responsibility criteria in the solicitation have not been met.

See also *Seaton Van Lines, Inc.*, Comp. Gen. Dec. B-217298, 85-1 CPD ¶ 26.

## C. Cancellation after Bid Opening

Cancellation of a procurement after bid opening is a serious matter because it can give bidders an unfair advantage if they are later permitted to recompete with knowledge of the prior bids. FAR 14.404-1(a) permits such cancellation only for compelling reasons:

> (1) Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation.

The Comptroller General has stated that the determination of whether a sufficiently compelling reason exists for bid cancellation is "primarily within the discretion of the administrative agency and will not be disturbed absent proof that the decision was clearly arbitrary, capricious, or not supported by substantial evidence," *Ace-Federal Reporters, Inc.*, Comp. Gen. Dec. B-237414, 90-1 CPD ¶ 144. In some cases the Comptroller General has sustained a cancellation because there was no showing of bad faith or fraud on the part of the agency, *J. Morris & Assocs.*, Comp. Gen. Dec. B-256840, 94-2 CPD ¶ 47 (cancellation was proper where the agency determined that prices were unreasonable and there was no showing of bad faith or fraud); *Moore's Cafeteria Servs., Inc.*, Comp. Gen. Dec. B-234063.4, 89-2 CPD ¶ 11 (cancellation of an IFB in order to initiate a solicitation under Section 8(a) of the Small Business Administration Act was upheld because there was no showing of bad faith or fraud on the part of the agency). In cases where the agency erroneously cancels the solicitation after bid opening, reinstatement of the IFB may be proper if it would not prejudice other bidders and if the award under the original solicitation



[illegible]serve the actual needs of the Government, *Bilt-Rite Contractors, Inc.*, [illegible] Gen. Dec. B-259106.2, 95-1 CPD ¶ 220.

[illegible]hen an agency cancels a solicitation after opening, all facts and cir[illegible]ances will be considered in determining whether appropriate grounds [illegible]cellation existed, *International Graphics, Div. of Moore Business [illegible] Inc. v. United States*, 5 Cl. Ct. 100 (1984) (A-76 cost comparison [illegible]nducted after cancellation of a solicitation and was used to prove that [illegible]vernment had a compelling reason to cancel the solicitation); *McGhee [illegible], Inc.*, Comp. Gen. Dec. B-250073.3, 93-1 CPD ¶ 379 (all relevant [illegible]ation was considered to determine that cancellation was appropriate); [illegible] *Corp.*, Comp. Gen. Dec. B-242725, 91-1 CPD ¶ 518 (when agency's [illegible]reason was inadequate, other information justified cancellation).

[illegible] most cases where an IFB is defective, the Comptroller General will [illegible]mend cancellation of the entire IFB. However, there may be certain [illegible]ons where only partial cancellation of the solicitation is appropriate. In [illegible] case, the Government may cancel the defective portion of the IFB [illegible]ard a contract for the remainder of the solicitation items to the bidder [illegible]tting the lowest bid for those items, *Adrian Supply Co.*, Comp. Gen. [illegible]-240871, 90-2 CPD ¶ 515.

[illegible]e FAR offers guidance to determine when cancellation is proper. [illegible]14.404-1(b) requires cancellation in only one circumstance — when [illegible]ency finds that it has not properly disclosed the identity or availability [illegible] necessary specifications. In all other situations, cancellation is [illegible]tionary provided that there is a compelling reason. FAR 14.404-1(c) [illegible]ome compelling reasons:

> [illegible]vitations may be canceled and all bids rejected before award but after [illegible]ening when . . . the agency head determines in writing that —
>
> (1) Inadequate or ambiguous specifications were cited in the invitation;
>
> (2) Specifications have been revised;
>
> (3) The supplies or services being contracted for are no longer required;
>
> (4) The invitation did not provide for consideration of all factors of cost to the Government, such as cost of transporting Government-furnished property to bidders' plants;

### a. No Prejudice and Low Bidder Meets Agency's Needs

Cancellation after bid opening is generally inappropriate where an IFB or specification defect did not cause any competitive prejudice and an award under the solicitation would serve the actual needs of the Government. *Canadian Commercial Corp.*, Comp. Gen. Dec. B-255642, 94-1 CPD ¶ 202 (no bidder prejudiced where an allegedly ambiguous provision only had one reasonable interpretation); *Sierra Forest Prods.*, Comp. Gen. Dec. B-245393, 92-1 CPD ¶ 4 (failure to send required form to prospective bidders did not prejudice bidders when they were on notice of the requirement and could have obtained a copy of the missing form); *Richard Hoffman Corp.*, Comp. Gen. Dec. B-212775.2, 83-2 CPD ¶ 656 (solicitation was ambiguous regarding pricing of informational items but no bidder was misled); *American Mut. Protective Bureau*, 62 Comp. Gen. 354 (B-209192), 83-1 CPD ¶ 469 (IFB ambiguous but no prejudice where all six bidders correctly computed their bids); *Tennessee Valley Serv. Co. — Recons.*, Comp. Gen. Dec. B-188771, 77-2 CPD ¶ 241 (no bidder prejudiced by having the contracting officer multiply the unit prices by the applicable estimated quantities to determine the low bidder). See also *Twehous Excavating Co.*, Comp. Gen. Dec. B-208189, 83-1 CPD ¶ 42, where the solicitation did not fully describe the mathematical calculations for one of 32 items but the simple calculation was obvious. The Comptroller General stated:

> The fact that some terms of an invitation are in some way deficient does not, of itself, constitute a compelling reason to cancel. Our Office generally regards cancellation after opening as inappropriate when other bidders would not be prejudiced by an award under the ostensibly deficient solicitation.

In *Immigration & Naturalization Serv.*, Comp. Gen. Dec. B-182949, 75-1 CPD ¶ 165, the Comptroller General indicated that cancellation for ambiguous specifications would not be appropriate

> if no prejudice would result from an award to an otherwise responsive bidder whose bid would meet the Government's actual needs, i.e., (1) where there was no reason to believe that additional firms would bid on revised specifications included in a resolicitation or that the original bidders would have offered any different equipment on a resolicitation . . . and (2) that there was in any event only one responsive bidder.



solicitation was improperly canceled on the grounds of a purported ity where evidence available from the offeror's cost proposals that to disprove the ambiguity was ignored, *Apex Int'l Management Inc.*, 60 Comp. Gen. 172 (B-200008), 81-1 CPD ¶ 24.

### b. Potential Competitor Not Solicited

ure to solicit a potential competitor is not a compelling reason for ation if competition is otherwise adequate, prices are reasonable, the does not deliberately exclude a bidder, and it complies with all ons governing the distribution and advertisement of a solicitation. *Creek Archaeological Servs., Inc.*, Comp. Gen. Dec. B-258480, 95-1 43 (no compelling reason for cancellation when agency did not ately exclude bidder, and the record showed there was adequate tion and reasonable prices); *Energy Management Sys.*, Comp. Gen. B-258391, 94-2 CPD ¶ 208 (no showing that agency deliberately d a bidder from competition where bidder failed to review the CBD apply for inclusion on the mailing list); *Cinema Color Group*, Comp. Dec. B-210666, 83-2 CPD ¶ 257 (advertising procurement under ng of "photographic equipment" not shown to be a deliberate attempt clude protester from bidding). In 52 Comp. Gen. 281 (B-176839) a potential supplier was precluded from bidding because the IFB ment, which advanced the bid opening 10 days, was sent to San California, rather than San Benito, Texas. The Comptroller General at 283:

> have also held that the propriety of a particular procurement must be rmined from the Government's point of view upon the basis of whether equate competition and reasonable prices were obtained, not upon ether every possible prospective bidder was afforded an opportunity to . While it is unfortunate that your address was not correctly recorded he bidders list, we do not find anything in the record to indicate that the or was other than an inadvertent mistake, or that it was occasioned by deliberate attempt on the part of the procuring personnel to exclude you participating in the procurement. In such circumstances, although we cognize the resulting hardship which may be experienced by your firm, it been our consistent position that the nonreceipt or delay in receiving dding documents by a prospective bidder does not require cancellation or endment of the invitation.

er, where an agency fails to comply with the statutory and regulatory ments regarding distribution of solicitations, cancellation is appropri-

section 7 [41 U.S.C. § 356], whether negotiated or advertised, the principal purpose of which is to furnish services in the United States (other than any person employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in part 541 of title 29, Code of Federal Regulations, as of July 30, 1976, and any subsequent revision of those regulations); and shall include all such persons regardless of any contractual relationship that may be alleged to exist between a contractor or subcontractor and such persons.

The Department of Labor has found several classes of white collar workers to be service employees. For example, 29 C.F.R. § 4.152 considers stenographers to be service employees, and wage determinations have been issued covering marine engineers, priests, ministers, librarians, and radio announcers.

## 2. *Wage Determinations*

The principal purpose of the Act is to specify the minimum wages and benefits to be paid to service employees in accordance with prevailing rates in the locality, 41 U.S.C. § 351. When a procuring agency determines that a prospective contract is subject to the Act, it must file Standard Form 98, FAR 53.301-98 and Standard Form 98a, FAR 53.301-98a, "Notice of Intention to Make Service Contract and Response to Notice" and "Attachment A" with the Department of Labor not less than 30 days prior to the solicitation, FAR 22.1007. This allows time to provide a wage determination to be attached to the solicitation so that all offerors will be informed of the minimum wages applicable to the contract. The Department of Labor has encountered great difficulty in providing wage determinations for all types of services; consequently, numerous service contracts have been awarded without such determinations. The discretion of the Department to decide not to issue a wage determination has been upheld, *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166 (D.C. Cir. 1973). See also *International Ass'n of Machinists & Aerospace Workers v. Hodgson*, 515 F.2d 373 (D.C. Cir 1975). As a result, Congress amended the Act in 1972 to state that its intention was that wage determinations be made for all service contracts over $2,500 as soon as administratively feasible, 41 U.S.C. § 358, and to limit the power of the Secretary to create variations on or exemptions from the Act, 41 U.S.C. § 353(b).

Since it is extremely difficult to prepare a wage determination for each service contract, the Department of Labor has established a register of wage



determinations for various types of services in different localities in the United States, 29 C.F.R. § 4.3. If the contract is to be performed in one of these localities, the contracting officer is authorized to select the appropriate class of service employees from the descriptions and wage rate determinations provided by the Department of Labor, *IBI Security Servs., Inc.*, Comp. Gen. Dec. B-218565, 85-2 CPD ¶ 7, *recons. denied*, 85-2 CPD ¶ 136. If a procuring agency does not receive a wage determination from the Department of Labor in response to its SF 98, it is required to use the most current wage determination in the register for the procurement. In sealed bid procurements, any revisions to the determination received by the procuring agency earlier than 10 days prior to bid opening must be incorporated in the procurement by amendment to the solicitation. Revisions received later than this time may be ignored by the procuring agency if found that reasonable time is not available to notify bidders, 29 C.F.R. 4.5(a)(2). In negotiated procurement, revisions received by the agency after contract award will not be effective if the contract start of performance is within 30 days of such award, 29 C.F.R. § 4.5(a)(2). If the contract does not specify a start of performance and if contract performance does not commence within 30 days of the award, the Department of Labor must be notified and any revision received by the contracting agency not less than 10 days before commencement will be effective, 29 C.F.R. § 4.5(a)(2). Where a wage determination that is included in the contract omits one or more categories of service employees, the contractor must classify such employees and pay them wages and fringe benefits as determined by agreement of the contracting agency, the contractor, and the employees, 29 C.F.R. § 4.6(b)(2). A contractor can rely on a wage determination for the life of the contract, but new wage determinations are required in the event of a modification or change to the contract or use of an option clause, 29 C.F.R. § 4.143.

There are two major obstacles confronting the Secretary of Labor in exercising the authority to make wage determinations: (1) defining what is meant by "locality" and (2) deciding between prevailing wages and higher wages under a collective bargaining agreement.

### a. *Determining Locality*

Wage determinations must include wages for the "locality" where the work will be performed. When a contract requires services to be performed at a Government site, locality has been defined as the area in which the facility is located. However, some controversy has ensued in identifying the