# The Government Contracts Reference Book

## A Comprehensive Guide to the Language of Procurement

SECOND EDITION

Ralph C. Nash, Jr.
Steven L. Schooner
Karen R. O'Brien

The George Washington University
WASHINGTON DC

LAW SCHOOL
GOVERNMENT CONTRACTS PROGRAM

© Copyright 1998 by The George Washington University

*All rights reserved.* No part of this book may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, except for the inclusion of brief quotations in a review, without the prior written permission of the publisher. For information, contact The George Washington University Law School, Government Contracts Program, 4301 Fairfax Drive, Suite 800, Arlington, Virginia 22203.
Printed in the United States of America.

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional service. If legal advice or other expert assistance is required, the services of a competent professional person should be sought.

— From the *Declaration of Principles* jointly adopted by a Committee of the American Bar Association and a Committee of Publishers and Associations.

This book does not represent an official position of the U.S. Government or any U.S. Government agency.

Library of Congress Catalog Card Number: 97-75247
ISBN 0-935165-54-1

# Contents

Preface to the Second Edition .......... vii

How to Use This Reference Book .......... ix

About the Authors .......... xiii

**The Government Contracts Reference Book .......... 1**

Acronyms and Abbreviations Used in This Book .......... 551

Internet Resources .......... 567

Texts Cited in This Book .......... 577

Periodicals Cited in This Book .......... 583

# C

**CABLE TELEVISION FRANCHISE AGREEMENTS** See FRANCHISE AGREEMENTS.

**CANCELLATION CEILING** The maximum amount that the Government is obligated to pay a contractor when there is a CANCELLATION OF a MULTIYEAR CONTRACT. FAR 17.101. Under 10 U.S.C. § 2306b(c), both RECURRING COSTS and NONRECURRING COSTS may be included in this ceiling. 41 U.S.C. § 254c permits the civilian agencies to use multiyear contracts but contains no guidance on the costs to be included in cancellation ceilings. FAR 17.103(d) provides that the contracting officer will establish a cancellation ceiling, in diminishing amounts, for each program year and that it will include a reasonable estimate of the nonrecurring costs that will not have been recovered if the contract is canceled. See also DFARS 217.103(d). The amount that is actually paid to the contractor upon settlement for unrecovered costs (which cannot exceed the ceiling) is referred to as the cancellation charge. See Cibinic & Nash, chap. 8, Sec. VI., *Formation of Government Contracts* (3d ed. 1998); Nash, *Multiyear Procurement: The Different Faces of Congress*, 9 N&CR ¶ 40 (July 1995).

**CANCELLATION OF CONTRACT** Notification to a contractor that the Government considers the contract null and void and will not be bound by its terms. Cancellation is generally proper only when the contractor has violated a criminal statute or committed some other gross impropriety. *United States v. Mississippi Valley Generating Company*, 364 U.S. 520 (1961). Cancellation for BRIBERY, gratuities (see GRATUITY), or CONFLICT OF INTEREST is permitted by 18 U.S.C. § 218. See FAR Subpart 3.7.

**CANCELLATION OF MULTIYEAR CONTRACT** Notification to a contractor that the Government will not make funds available for contract performance for the total requirement of any future year of a multiyear contract, or failure to notify the contractor that funds are



FAR 17.101. Such cancellation permits the contractor to recover costs in accordance with the Cancellation of Items clause in FAR 52.217-2, up to the amount of the CANCELLATION CEILING.

**CANCELLATION OF SOLICITATION** Notification to potential offerors, before AWARD, that a procurement will be permanently or temporarily stopped. Cancellation of an INVITATION FOR BIDS (IFB) involves a loss of time, effort, and money spent by the Government and bidders. Therefore, IFBs should not be canceled unless cancellation is clearly in the public interest (for instance, when the supplies or services are no longer required or when amendments to the IFB would be of such magnitude that a new IFB is desirable). FAR 14.209. When an IFB is canceled, bids that have been received must be returned unopened to the bidders and a notice of cancellation must be sent to all prospective bidders to which IFBs were issued. For bids received electronically, the data received must not be viewed and must be purged from primary and backup storage systems. Cancellation of IFBs after BID OPENING is to be avoided even more than cancellation before bid opening because at that time all of the bids have been exposed. Therefore, FAR 14.404-1 prohibits cancellation after bid opening unless there is a compelling reason to reject all bids and cancel the invitation. See Cibinic & Nash, chap. 5, Sec. III, *Formation of Government Contracts* (3d ed. 1998). With regard to competitive proposals solicited in contracting by NEGOTIATION, the contracting officer is to cancel the original REQUEST FOR PROPOSALS (RFPs) and issue a new one, regardless of the stage of the acquisition, if a change is so substantial that it warrants complete revision of the RFP. FAR 15.206(e). See Cibinic, *Cancellation of Solicitations: Are Bids and Proposals Sweeter the Second Time Around?*, 7 N&CR ¶ 36 (July 1993); Ginsburg & Patin, chap. 2, *Construction Contracting* 169–80 (1991).

**…ABILITY** The ability of a prospective contractor to perform a contract. In procurement using SEALED BIDDING, capability is assessed by making a RESPONSIBILITY determination. In procurement using COMPETITIVE NEGOTIATION, capability is assessed by using one or more capability EVALUATION FACTORs.

**…ABILITY OR PERFORMANCE** One of eight required elements … the Acquisition Background and Objectives in the written ACQUI…TION PLAN prepared by the contracting agency. FAR 7.105(a)(4) …ides that the acquisition should specify the required capabilities or

information in a proposal may be marked as proprietary inform... FAR 15.609 provides that all information in UNSOLIC... PROPOSALS may be marked as proprietary information. NASA... more restrictive policy defining "proprietary information" as "... mation (data) that constitutes a TRADE SECRET and/or inform... that is commercial or financial and confidential or privileged." ... 18-5.202(a). This information is also subject to protection from re... in accordance with the FREEDOM OF INFORMATION ACT... Manos, *Protecting Proprietary Information*, 94-13 Briefing P... (Dec. 1994).

**PROSECUTION OF CLAIMS** The assertion by a contractor ... CLAIM for additional compensation or other benefit from the Gov... ment in a court or BOARD OF CONTRACT APPEALS. The fee... expenses of attorneys incurred in this effort are barred from be... included in a judgment by 28 U.S.C. § 2412(a)(1). FAR 31.205-... provides that costs of legal, accounting, and consulting services ... directly associated costs incurred by contractors for such efforts ... UNALLOWABLE COSTs. See Nash, *Postscript II: More Reflecti... on Reflectone*, 10 N&CR ¶ 35 (July 1996); Cibinic, *Allowable Con... Administration Costs vs. Unallowable Claim Costs: Bill St... Reversed*, 9 N&CR ¶ 27 (Apr. 1995); Cibinic, *Costs Associated w... Claims by or Against the Government: Reshuffling the Deck*, 4 N&C... ¶ 33 (May 1990). See also EQUAL ACCESS TO JUSTICE AC... PROFESSIONAL AND CONSULTANT SERVICES.

**PROSPECTIVE PRICING** Pricing of a contract before the work... begun. It is the policy of the Government to use prospective pric... whenever possible. See LETTER CONTRACT.

**PROTECTIVE ORDER** An order of a court or administrative tribu... limiting the scope of the disclosure of PRIVILEGED INFORMATIO... Protective orders are used to ensure that information obtained ... DISCOVERY is not improperly used. They are issued under Rule 26... of the Federal Rules of Civil Procedure, Rule 14 of the UNIFOR... RULES (in cases before the BOARDs OF CONTRACT APPEAL... and Rule 21.4 of the GENERAL ACCOUNTING OFFICE ... PROTESTs). See Cibinic, *Protective Orders: Expert Witnesses Exi... to Siberia*, 7 N&CR ¶ 64 (Nov. 1993); Peterson, *In-House Counsel ... Protective Orders in Bid Protests*, 21 Pub. Cont. L.J. 53 (1991).

**PROTÉGÉ FIRM** See MENTOR-PROTÉGÉ PILOT PROGRAM.

**PROTEST** An objection, submitted by an INTERESTED PARTY in writing, protesting an agency solicitation for offers, the cancellation of a SOLICITATION, or the award or proposed award of a contract. FAR 33.101. Protests are also known as "bid protests," "award protests," or "protests against award." Protests can be made to (1) the procuring agency, before or after award, FAR 33.103; (2) the GENERAL ACCOUNTING OFFICE (GAO), within 10 calendar days after the grounds for the protest are known or should have been known, see GAO Bid Protest Regulations for detailed timing rules, 4 C.F.R. Part 21, FAR 33.104; (3) the UNITED STATES COURT OF FEDERAL CLAIMS, 28 U.S.C. § 1491(b)(1); and (4) the U.S. District Court, if the protester has suffered an "injury in fact" within six years of the date the cause of action arose (see SCANWELL ACTION). See FAR 52.233-2 and -3. See also Cibinic & Nash, chap. 11, *Formation of Government Contracts* (3d ed. 1998); Nash, *Protests & Debriefings: A Tangled Web*, 11 N&CR ¶ 47 (Sept. 1997); Cibinic, *Bid Protests: Additional Authority for the Courts*, 11 N&CR ¶ 14 (Mar. 1997); Lieberman, *Bid Protests at the Court of Federal Claims and the General Accounting Office: A Comparison*, 67 Fed. Cont. Rep. 382 (Mar. 31, 1997); Schnitzer, *The 1996 GAO Bid Protest Rules*, 96-13 Briefing Papers (Dec. 1996); Nash, *Protests in the General Accounting Office: The New Discovery Rules*, 10 N&CR ¶ 57 (Nov. 1996); Adelson, *The New Bid Protest Procedures—A Cautionary Note*, 36 Cont. Mgmt. 4 (June 1996); Allen & Harrington, *Pursuing a Classified Protest at the GAO*, 31 Procrmt. Law 21 (Fall 1995); Adelson, *Protests Against Procurements by Nonappropriated Fund Instrumentalities*, 95-12 Briefing Papers (Nov. 1995); American B. Ass'n, *The Protest Experience under the Competition in Contracting Act*, A.B.A. Sec. Pub. Cont. L. 1989; Shnitzer, *How to Recognize a Protestable Issue*, 93-3 Briefing Papers (Feb. 1993); Brittin, *The Comptroller General's Dual Statutory Authority to Decide Bid Protests*, 22 Pub. Cont. L.J. 636 (1993); Shnitzer, *The New GAO Protest Rules*, 92-4 Briefing Papers (Mar. 1992).

**PROVISION** A written term or condition used only in SOLICITATIONs and applying only before contract award. FAR 52.101. Solicitation provisions are distinguished from CLAUSEs, which are terms and conditions in contracts. FAR Subpart 52.2 sets forth the text of all FAR provisions and clauses (as do DFARS Subpart 252.2 and NFS Subpart 18-52.2 for DFARS and NASA provisions and clauses, respectively), each in its own separate subsection. The subpart is arranged by subject matter in the same order as, and keyed to, the parts of the FAR. All FAR provision numbers begin with "52.2." The next two digits