# Competitive Negotiation: The Source Selection Process

## Second Edition

Ralph C. Nash, Jr.
John Cibinic, Jr.
Karen R. O'Brien

The George Washington University
WASHINGTON DC

LAW SCHOOL
GOVERNMENT CONTRACTS PROGRAM

© Copyright 1999 by The George Washington University

First Edition 1993

*All rights reserved.* No part of this book may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, except for the inclusion of brief quotations in a review, without the prior written permission of the publisher. For information, contact The George Washington University Law School, Government Contracts Program, Suite 100, 600 New Hampshire Avenue, N.W., Washington, D.C. 20037. Printed in the United States of America.

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional service. If legal advice or other expert assistance is required, the services of a competent professional person should be sought.

— From the *Declaration of Principles* jointly adopted by a Committee of the American Bar Association and a Committee of Publishers and Associations.

This book does not represent an official position of the U.S. Government or any U.S. Government agency.

Library of Congress Catalog Card Number: 99-71456
casebound ISBN 0-935165-66-5
perfectbound ISBN 978-0-8080-1678-6

# PREFACE

Since the passage of the Competition in Contracting Act in 1984, competitive negotiation has become the major procurement technique used by the Government for purchases above the simplified acquisition threshold. It is described in many ways, such as "competitive proposals," "source selection," and "best value," but essentially it is a technique that permits the Government to conduct negotiations with two or more competitors after the receipt of proposals. We have chosen to call it "competitive negotiations" — its traditional and long-standing name. In 1993 we published the first edition of *Competitive Negotiation: The Source Selection Process*, which went into full detail on these rules. The passage of the Federal Acquisition Streamlining Act in 1994 and the Clinger-Cohen Act in 1996 along with the "Rewrite" of Part 15 of the *Federal Acquisition Regulation* (FAR) made such significant changes in the competitive negotiation process that it was clear that a second edition was needed.

This book discusses all phases of the competitive negotiation process from the inception of the requirement for goods or services to the award of the contract and notification and debriefing of unsuccessful offerors. We organized the chapters to follow the discrete steps of the process, with the result that many topics are included in two or more chapters. For example, choosing evaluation factors is dealt with in Chapter 2, using the factors is dealt with in Chapter 6, and their impact on the source selection decision is dealt with in Chapter 10. We have generally included cross references when this occurs but readers should also check topics in the index to ensure that they have all the material on each topic.

In the text, we have included citations to and quotations from the FAR as well as from agency regulations supplementing the FAR. To assist our readers, we have also included the full text of these regulations as attachments in the back of the book. The text also includes citations to and quotations from numerous internal documents which amplify the FAR. All of this material is included to help readers find the most relevant discussion of each topic but it should not be construed as establishing required procedures. Many of the documents cited deal with major procurements where complexity seems to be the norm but readers must understand that the current goal is to make the process as simple and straightforward as possible. Hence, the material cited in the book must be used selectively as it

*lec. Co.*, 55 Comp. Gen. 1450 (B-186372), 76-2 CPD ¶ 269; *Management Technical Servs. Co.*, Comp. Gen. Dec. B-209513, 82-2 CPD ¶ 571 (new management technique rendered proposal unacceptable); *Aircraft Porous Media, Inc.*, Comp. Gen. Dec. B-241665.2, 91-1 CPD ¶ 356 (reduced cost adjusted upward because not realistic and rationale for reduction not sufficiently explained); *Logicon RDA*, Comp. Gen. Dec. B-261714.2, 95-2 CPD ¶ 286 (unsupported cost reduction introduced for first time in BAFO); *untron Corp.*, Comp. Gen. Dec. B-270456, 96-1 CPD ¶ 143 (unexplained cost reduction rendered proposal unacceptable).

This rule has been carried to the extreme in holding that an agency need not reopen discussions to permit correction of a mistake in the BAFO, *tandard Mfg. Co.*, 65 Comp. Gen. 451 (B-220455), 86-1 CPD ¶ 304; *merican Elec. Lab., Inc.*, 65 Comp. Gen. 62 (B-219582), 85-2 CPD ¶ 545. ee also *International Bus. Machs. Corp.*, GSBCA 11324-P, 92-1 BCA 24,439, holding that it was improper to reopen discussions after disclosure of the award price when the agency found that the next offeror had been misled by an ambiguity in the RFP. Compare *FCC.O&M, Inc.*, Comp. Gen. ec. B-238610.2, 91-1 CPD ¶ 26, where it was found proper to conduct nother round of discussions in order to correct a mistake in the winning fferor's proposal. Thus, an agency may, but is not required to, reopen scussions after submission of BAFOs, and the agency's decision will not e disturbed unless it is found to be unreasonable.

The rule permitting the contracting officer not to reopen discussions hen an offeror has included newly introduced material in a final proposal oes not apply to information which the agency learns from other sources at appears to modify a proposal. See *AAA Eng'g & Drafting, Inc.*, Comp. en. Dec. B-250323, 93-1 CPD ¶ 287, where the contracting officer gave a AFO a low evaluation based on a manning table obtained in a preaward rvey that appeared to conflict with the manning table that had been cluded in the BAFO. The Comptroller General ruled that the contracting ficer should have sought clarification because the offeror did not state that e new manning table modified its BAFO.

## II. AMENDMENT AND CANCELLATION OF THE RFP

When the needs or circumstances change or when new information or fects in the RFP are discovered, the agency may be required to amend or ncel the RFP. Cancellations resulting from the Government no longer



having a need for the procurement or from lack of funds are not at issue. However, where the Government still intends to go on with the procurement, the RFP must be amended. See FAR 15.206(a), which states:

> When, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer shall amend the solicitation.

Whether the amendment requires or permits cancellation and resolicitation or is such that the procurement is allowed to proceed depends on the nature and timing of the changes. Although cancellation followed by a resolicitation with an amended RFP and an amendment without cancellation each involve amended RFPs, the latter action permits the Government to continue with the procurement. Thus, it may be more attractive to procurement officials because it saves both time and administrative effort. Conversely, resolicitation may expand the field of competition and result in a more advantageous deal for the Government.

### A. Cancellation and Resolicitation

The only FAR provision dealing with cancellation and resolicitation is FAR 15.206(e), which states:

> If, in the judgment of the contracting officer, based on market research or otherwise, an amendment issued after offers are received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the substance of the amendment been known to them, the contracting officer shall cancel the original solicitation and issue a new one, regardless of the stage of the acquisition.

The pre-FAR 15 Rewrite version of this regulation had an additional provision that directed that the new solicitation be furnished to all firms originally solicited and any added to the original list. Although the normal rules of full and open competition would take into consideration those firms added to the list, it would seem appropriate for the Government to resolicit those originally solicited.

In *Loral Fairchild Corp.*, Comp. Gen. Dec. B-242957.2, 91-2 CPD ¶ 218, the Comptroller General stated that the changes would have to "significantly alter the purpose or nature of the contract" or change the "field of competition" in order to require a cancellation. See *Denwood Properties*

*Corp.*, B-251347.2, 93-1 CPD ¶ 380, where the changes involved a reduction in the amount of space to be leased and the agency's desire to open the competition to consider build-to-suit facilities. The Comptroller General stated that "it would not have been proper" to simply amend the specifications because the changes were substantial and would likely increase the field of competition.

Whether the field of competition would be increased by competition depends on the facts and circumstances of each individual case. A number of cases have held that cancellation and resolicitation was not required even hough significant changes were made. For example, in *Atkins Enters., Inc.*, Comp. Gen. Dec. B-241047, 91-1 CPD ¶ 42, a change from a 690-day, eight-phase construction schedule to one of 630 days with two phases was found not to be an appreciable change. See also *Defense Group, Inc.*, Comp. Gen. Dec. B-253795, 94-1 CPD ¶ 196, where a 12.3 percent increase in overall contract effort was not considered a substantial change to the basic nature of the contemplated contract. For other cases finding that cancellation of a solicitation was not required because the change was not substantial, see *'MS Data Prods. Group v. Austin*, 940 F.2d 1514 (Fed. Cir. 1991) (changing the solicitation by advancing the commercial availability date of laptop computers); *Corporate Jets, Inc.*, GSBCA 11049-P, 91-2 BCA ¶ 23,998 adding option with a potential to increase the number of helicopters from 26 to 75); *Cape Fear Paging Co.*, Comp. Gen. Dec. B-252160.2, 93-1 CPD 347 (elimination of separate line item and combining prices into remaining item); *Di Frances Co.*, Comp. Gen. Dec. B-245492, 91-2 CPD ¶ 323 (5.9 percent decrease in the requirements); *Goodway Graphics of Virginia, Inc.*, Comp. Gen. Dec. B-236386, 89-2 CPD ¶ 491 (change affecting only five of 1 items); *Chromatics, Inc.*, Comp. Gen. Dec. B-224515, 87-1 CPD ¶ 171 deletion of design requirements from specification); and *Hughes Aircraft Co.*, Comp. Gen. Dec. B-222152, 86-1 CPD ¶ 564 (elimination of one of two alternative technical approaches).

## B. Amendment without Cancellation

Even if the agency decides not to cancel the RFP, an amendment is required if changes would have a significant impact on competition, *Joint Action in Community Serv., Inc.*, Comp. Gen. Dec. B-214564, 84-2 CPD 228; *Computek, Inc.*, 54 Comp. Gen. 1080 (B-182576), 75-1 CPD ¶ 384. significant impact on competition occurs when (1) mandatory specifications or terms and conditions are changed and (2) offerors not receiving



notice of the changes would be prejudiced. In *Management Sys. Designers, Inc.*, Comp. Gen. Dec. B-244383.8, 92-1 CPD ¶ 496, prejudice was found where an offeror showed that it might have revised its proposal.

An amendment is called for where the relative importance of the evaluation factors is altered, *Unisys Corp.*, 67 Comp. Gen. 512 (B-230019.2), 88-2 CPD ¶ 35 (clarifying the importance of cost), or the overall evaluation scheme is changed, *Galler Assocs., Inc.*, Comp. Gen. Dec. B-210204, 83-1 CPD ¶ 515 (changing from lowest-cost, technically acceptable offer scheme to best-value scheme). See also *Occu-Health, Inc.*, Comp. Gen. Dec. B-270228.3, 96-1 CPD ¶ 196, requiring amending the RFP when the agency decides not to evaluate options.

FAR 15.206(d) permits an amendment to take advantage of an offer that deviates from the RFP:

> If a proposal of interest to the Government involves a departure from the stated requirements, the contracting officer shall amend the solicitation, provided this can be done without revealing to the other offerors the alternate solution proposed or any other information that is entitled to protection (see 15.207(b) and 15.306(e)).

See *IRT Corp.*, Comp. Gen. Dec. B-246991, 92-1 CPD ¶ 378 (deviation in specifications for x-ray machine); *Loral Terracom*, 66 Comp. Gen. 272 (B-224908), 87-1 CPD ¶ 182 (different technical approach suggested by an offeror).

Amendments are not required if the claimed deviation is from a provision that is not mandatory, *Howard Cooper Corp. v. United States*, 763 F. Supp. 829 (1991). In *AEL Defense Corp.*, Comp. Gen. Dec. B-251376, 93-1 CPD ¶ 256, the protester alleged that the agency improperly awarded the contract to a firm whose proposal did not conform to a design referenced in a RFP document. The protester asserted that the design was mandatory and, therefore, the RFP should have been amended. The Comptroller General denied the protest, stating that the design was not mandatory under the hierarchy established in the specification. Similarly, a contracting officer was not required to issue an amendment to an RFP after changing specified computer systems where the Government provided all equipment necessary for performance of the contract and the change brought about no cost savings to offerors, *Optimum Sys., Inc.*, Comp. Gen. Dec. B-194984, 80-2 CPD ¶ 32. See also *Litton Sys., Inc. v. Department of Transportation*, GSBCA 12911-P, 94-3 BCA ¶ 27,263.