No. 08-62C
(Judge Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

RKR JOINT VENTURE, LLC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS, AND IN THE ALTERNATIVE, CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S PARTIAL MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-0302
Fax. (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

Gary R. Allen
Air Force Legal Operations Agency,
Commercial Litigation Division
1501 Wilson Blvd., Suite 600
Rosslyn, VA 22209

July 31, 2008

**TABLE OF CONTENTS**

**PAGE(S)**

STATEMENT OF THE ISSUES . . . . . 2

STATEMENT OF FACTS . . . . . 2

I. The Solicitation And A-76 Study . . . . . 2

II. Course of Proceedings At GAO . . . . . 5

III. Course of Proceedings At This Court And The Contracting Officer's Cancellation Decision . . . . . 6

SUMMARY OF THE ARGUMENT . . . . . 8

ARGUMENT . . . . . 9

I. Standard Of Review . . . . . 9

A. Standard For Motion To Dismiss . . . . . 10

B. Standard For Procurement Challenges . . . . . 11

C. Standard For Judgment Upon The Administrative Record . . . . . 14

II. This Court Does Not Possess Jurisdiction To Entertain RKR's Challenge To The Cancellation Of The Solicitation Because RKR Has Not And Cannot Prove That It Is Challenging A Solicitation, Proposed Award Or Award, Or That The Air Force Has Violated Any Statutes Or Regulations Related To The Procurement . . . . . 15

III. The Decision Of The Air Force To Cancel The Solicitation Was Rational . . . . . 17

A. Because The Solicitation No Longer Accurately Reflects The Requirements Of The Air Force, The Decision To Cancel The Solicitation Was Rational . . . . . 17

1. The Requirements Of The Solicitation Do Not Include A NOSC-Centric Initiative . . . . . 19

2. The Fact That General Maluda Did Not Identify Any "Quantum Leap" In AFNETOPs Between May 2007 And July 2007 Does Not Render The Cancellation Decision Irrational . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

3. The Fact That AFNETOPs Has Not Been Completed Does Not Render The Cancellation Irrational . . . . . . . . . . . . . . . . . . . . . 24

4. The Air Force's Mistaken Interpretation Of The Solicitation Before The GAO Does Not Render The Cancellation Irrational . 26

5. Even if AFNETOPs Alone Is Not A Sufficient Justification For Cancellation, The Uncertainty Created By Other Potential Changes Provides Sufficient Justification For Cancellation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

6. The Contracting Officer's Determination That Cancellation And Re-Solicitation Would Likely Increase The Number Of Bidders Was Rational . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

B. The Contracting Officer Had A Rational Basis For His Determination To Cancel The Solicitation Based Upon A Change In Requirements And/Or Evaluation Criteria That Required Him To Amend The Solicitation And Seek New Proposals, And Substantial Concern That Amending The Solicitation And Obtaining New Proposals Would Be Illegal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

1. The Contracting Officer Had A Rational Basis For His Determination That There Was A Significant Change In Requirements That Required Him To Amend The Solicitation And Seek New Proposals . . . . . . . . . . . . . . . . . . . . 31

2. The Contracting Officer Had A Rational Basis For His Determination That The Solicitation Would Need To Be Amended To Add New Source Selection Criteria Required By Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

3. The Contracting Officer Had A Rational Basis For His Determination That There Was Substantial Concern That Amending The Solicitation And Obtaining New Proposals Would Be Illegal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

IV. RKR's Challenge To The Air Force's Cost Comparison Or Tentative Decision To Implement The MEO Is Moot . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

V. RKR Is Not Entitled To Any Relief At This Stage, Even If The Court Determines That The Cancellation Was Irrational, Because RKR Has Not Proven Prejudice . . . . . . . . . . 38

VI. RKR Is Not Entitled To Injunctive Relief, Because RKR Has Not Proven That It Will Suffer Irreparable Harm Without Injunctive Relief, Or That Injunctive Relief Is In The Public Interest . . . . . . . . . . 41

A. RKR Cannot Demonstrate That It Will Suffer Irreparable Harm If The Cancellation Is Not Overturned . . . . . . . . . . 42

B. RKR Cannot Demonstrate That Its Harm Outweighs The Harm To The Government Or That It Is In The Public Interest To Overturn The Cancellation . . . . . . . . . . 45

CONCLUSION . . . . . . . . . . 46

Attachment 1: Revised Supplemental Handbook, OMB Circular A-76 (Oct. 1984), Part I, Chapter 1, para. G.2 and Part I, Chapter 3, para. K.1.b (dated March 1996, updated through June 1999)

# TABLE OF AUTHORITIES

## CASES AND ADMINISTRATIVE DECISIONS

ABF Freight System, Inc. v. United States,
55 Fed. Cl. 392 (2003) . . . . . . . . . . 12, 46

AT&T Commc'n, Inc. v. Wiltel, Inc.,
1 F.3d 1201 (Fed. Cir. 1993) . . . . . . . . . . 20

Aero Corp. v. United States,
38 Fed. Cl. 237 (1997) . . . . . . . . . . 45, 46

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . 10

Am. Gen. Leasing, Inc. v. United States,
218 Ct. C 587 F.2d 54 (1978) . . . . . . . . . . 17

Aviation Enterprises, Inc. v. United States,
8 Cl. Ct. 1, 19 (1985) . . . . . . . . . . 12, 17

Baird Corp. v. United States,
1 Cl. Ct. 662, 664 (1983) . . . . . . . . . . 42

Bannum, Inc. v. U.S.,
404 F.3d 1346 (Fed. Cir. 2005) . . . . . . . . . . 14, 15, 39

Bannum, Inc. v. United States,
56 Fed. Cl. 453 (2003) . . . . . . . . . . 41

Beta Analytics Int'l, Inc. v. United States,
67 Fed. Cl. 384 (2005) . . . . . . . . . . 11

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981) . . . . . . . . . . 10

Bromley Contracting Co. v. United States,
15 Cl. Ct. 100, 105 (1988) . . . . . . . . . . 11

CACI, Inc.-Federal v. United States,
719 F.2d 1567 (Fed. Cir. 1983) . . . . . . . . . . 41

CC Distrib., Inc. v. United States,
38 Fed. Cl. 771 (1997) . . . . . . . . . . 10

CCL Serv. Corp. v. United States,
43 Fed. Cl. 680 (1999) . . . . . . . . . . passim

CW Gov't Travel, Inc. v. United States,
46 Fed. Cl. 554 (2000) . . . . . . . . . . 38

California Marine Cleaning, Inc. v. United States,
42 Fed. Cl. 281 (1998) . . . . . . . . . . 44

Camp v. Pitts,
411 U.S. 138, 142 (1973) . . . . . . . . . . 15

Campbell v. United States,
2 Cl. Ct. 247 (1983) . . . . . . . . . . 12

Candle Corp. v. United States,
40 Fed. Cl. 658 (1998) . . . . . . . . . . 33

Cincom Sys., Inc. v. United States,
37 Fed. Cl. 263 (1997) . . . . . . . . . . 45

Cincom Sys., Inc. v. United States,
37 Fed. Cl. 663 (1997) . . . . . . . . . . 11

Claude E. Atkins Enterprises, Inc.,
B-241047, 91-1 CPD ¶ 42, 1991 WL 79363 (Comp. Gen. Jan. 15, 1991) . . . . . . . . . . 18

County of Los Angeles v. Davis,
440 U.S. 625 (1979) . . . . . . . . . . 10

Cygnus Corp. v. United States,
72 Fed. Cl. 380 (2006) . . . . . . . . . . 12, 30

DGS Contract Serv., Inc. v. United States,
43 Fed. Cl. 227 (1999) . . . . . . . . . . 41

D-K Assocs., Inc.,
62 Comp. Gen. 129 (1983) . . . . . . . . . . 29

Data Monitor Sys., Inc. v. United States,
74 Fed. Cl. at 73 . . . . . . . . . . 16, 41

Defense Group, Inc.,
B-253795, 94-1 CPD ¶ 196, 1993 WL 603568 (Comp. Gen. Oct. 23, 1993) . . . . . . . . . . 18

Florida Power & Light v. Lorion,
470 U.S. 729 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

GAF Bldg. Materials Corp. v. Elk Corp.,
90 F.3d 479 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Great Lakes Dock & Dredge Co. v. United States,
60 Fed. Cl. 350 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Heritage of Am., LLC v. United States,
77 Fed. Cl. 66 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Hospital Klean of Tex, Inc. v. United States,
65 Fed. Cl. 618 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Impressa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kalvar Corp. Inc. v. United States,
211 Ct. C 543 F.2d 1298 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Keco Industries v. United States,
203 Ct. Cl. 566, 492 F.2d 1200 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 43

Lackland 21st Century Servs. Consol.,
B- 285938.7, B- 285938.8, 2001 CPD ¶ 197,
2001 WL 1543693, *4 (Comp. Gen. Dec. 4, 2001) . . . . . . . . . . . . . . . . . . . . . . . . 13, 24

Lion Raisins, Inc. v. United States,
69 Fed. Cl. 32 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Lions Raisins, Inc. v. United States,
51 Fed. Cl. 238 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Logistics Solutions Group, Inc.,
B-294604.7, 2005 CPD ¶ 141, 2005 WL 1845177 (Comp. Gen. July 28, 2005) . . . . 17, 25

MVM, Inc. v. United States,
46 Fed. Cl. 126 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 32, 33

Mike Hooks, Inc. v. United States,
39 Fed. Cl. 147 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Minor Metals, Inc. v. United States,
38 Fed. Cl. 379 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M.W. Kellogg Co. v. United States,
10 Cl. Ct. 17, 23 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Northrop Gruman Info. Tech., Inc.,
B-295526, et. al., 2005 CPD ¶ 45, 2005 WL 735939 (Comp. Gen. Mar. 16, 2005) . . . . 31

OAO Corp. v. United States,
49 Fed. Cl. 478 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

PGBA, LLC v. United States,
389 F.3d 1219 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 42

Park Tower Mgmt., Ltd. v. United States,
67 Fed. Cl. 548 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Redland Genstar, Inc. v. United States,
39 Fed. Cl. 220 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SEI Group, Inc.,
B-299108, 2007 CPD ¶ 35, 2007 WL 416047 (Comp. Gen. Feb 6, 2007) . . . . . . . . . . . 13

S.K.J. & Associates, Inc. v. United States,
67 Fed. Cl. 218 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Sanders v. United States Postal Serv.,
801 F.2d 1328 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Satellite Servs., Inc.,
B-288848.3, 2003 CPD ¶ 88,
2003 WL 21048768, at *6 (Comp. Gen. Apr. 28, 2003) . . . . . . . . . . . . . . . . . . . . . passim

Scheuer v. Rhodes,
416 U.S. 232 (1974), overruled on other grounds by, Harlow v. Fitzgerald,
47 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sierra Military Health Serv. v. United States,
58 Fed. Cl. 573 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Southwest Marine, Inc.,
B-229596, 88-1 CPD ¶ 22, 1988 WL 226887 (Comp. Gen. Jan. 12, 1988) . . . . . . . . . . 29

Sperry Corp.,
65 Comp. Gen. 715 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216 (2001) . . . . . . . . . . 14, 15

Thompson v. Cherokee Nation of Oklahoma,
334 F.3d 1075 (Fed. Cir. 2003) . . . . . . . . . . 13

VSE Corp.,
B-290452.2, 2005 CPD ¶ 111,
2005 WL 1396999 (Comp. Gen. Apr. 11, 2005) . . . . . . . . . . 17, 30, 31

Williams v. United States,
71 Fed. Cl. 194 (2006) . . . . . . . . . . 10

Zenith Radio Corp. v. United States,
710 F.2d 806 (Fed. Cir. 1983) . . . . . . . . . . 43

STATUTES AND REGULATIONS

5 U.S.C. § 702 . . . . . . . . . . 11

5 U.S.C. § 706 . . . . . . . . . . 10, 11

10 U.S.C. § 2461 . . . . . . . . . . 7, 33, 34

28 U.S.C. § 1491(b)(1) . . . . . . . . . . passim

31 U.S.C. § 1341(a)(1)(A) . . . . . . . . . . 35

31 U.S.C. § 1350 . . . . . . . . . . 36

48 C.F.R. § 1.602-2(b) . . . . . . . . . . 16

48 C.F.R. § 3.101-1 . . . . . . . . . . 16

48 C.F.R. § 14.402-1 . . . . . . . . . . 44

48 C.F.R. § 15.206(e) . . . . . . . . . . passim

48 C.F.R. § 15.306(e) . . . . . . . . . . 16

48 C.F.R. §15.503(b)(1)(iv) . . . . . . . . . . 16

48 C.F.R. § 52.207-2(c) (Feb 1993) . . . . . . . . . . 16, 44

48 C.F.R. § 52.215-1(f)(2) . . . . . . . . . . 12

48 C.F.R. § 52.249-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

National Defense Authorization Act For Fiscal Year 2006, Pub. L. No. 109-163,
119 Stat. 3136 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Department of Defense Appropriations Act, Pub. L. No. 110-116, 121 Stat. 1295 (2007) . . . . 35

National Defense Authorization Act For Fiscal Year 2008, Pub. L. No. 110-181,
122 Stat. 3, (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-62C |
| | ) | (Judge Williams) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS, AND IN THE ALTERNATIVE, CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S PARTIAL MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court to dismiss the portion of the complaint of plaintiff, RKR Joint Venture, LLC ("RKR"), that challenges the decision of the United States Air Force ("Air Force") to cancel the solicitation at issue, for lack of subject matter jurisdiction upon the ground that RKR has not brought an action objecting to a solicitation, proposed award, award or violation of statute or regulation related to a procurement pursuant to 28 U.S.C. § 1491(b)(1). Additionally, we respectfully request that the Court dismiss the rest of RKR's complaint, which challenges the Air Force's evaluation of proposals and tentative decision to implement the Most Efficient Organization ("MEO") structure in this A-76 procurement, because it is moot in light of the Air Force's cancellation of the solicitation.

Even if RKR could satisfy the jurisdictional requirements of 28 U.S.C. § 1491(b)(1), the administrative record supports the Air Force's decision to cancel the solicitation. Thus, we alternatively request that the Court grant our motion for judgment upon the administrative record

pursuant to RCFC Rule 52.1(b) and deny RKR's partial motion for judgment upon the administrative record.

## STATEMENT OF THE ISSUES

1. Whether this Court possesses jurisdiction to entertain RKR's challenge to the cancellation when it is not objecting to a solicitation, proposed award, award or violation of statute or regulation related to the procurement.
2. Whether the Air Force's decision to cancel the solicitation was rational.
3. Whether RKR's challenge to the Air Force's evaluation of proposals and tentative decision to implement the MEO structure in this A-76 procurement is moot because the Air Force has cancelled the solicitation.
4. Whether RKR is entitled to any relief, at this time, in the event that the Court determines that the cancellation was irrational.

## STATEMENT OF FACTS[1]

### I. The Solicitation And A-76 Study

On February 19, 2003, the Air Force initiated an A-76 cost study in order to obtain base operating support services at Keesler Air Force Base in Mississippi ("Little BOS study" or "study"). AR 1728. On March 14, 2003, the Air Force issued Solicitation No. F41689-02-R-0049 for these services ("Little BOS solicitation" or "solicitation"). Id. at 1. The solicitation included communications and information ("IT") services, multimedia services and publishing

---

[1] The Government would ordinarily include a combined statement of facts and counter-statement of facts in its cross-motion for judgment upon the administrative record. See RCFC 52.1(b). In this case, however, since RKR has submitted a separate and extensive statement of facts that contains numerous inaccuracies and statements requiring clarification, the Government is filing a separate counter-statement of facts in response to RKR's statement of facts.

management services. Id. at 78-79. The communications and IT function and publishing management function are currently being performed by the Air Force's military and civilian employees in the 81st Communications Squadron, while the multimedia services function is being performed by a contractor. See id. at 1678-79, 1795.

For the communications and IT function, offerors were expected to meet the requirements in Section 7.1 of the performance requirements document ("PRD"), which contained the description of services a contractor would be expected to perform. Id. at 144-53, 1154. Initially, Section 7.1 of the PRD referenced a NOSC-centric initiative, which the Air Force was intending to implement at Keesler AFB. Id. at 1154. The NOSC-centric initiative, known as the Air Education and Training Command ("AETC") Network Control Center Reengineering ("NCC Reengineering"), would have removed a portion of the communications and IT support workload from the Network Control Center, to a more centralized Major Command ("MAJCOM") Network Operations and Security Center ("NOSC") within AETC, the major command of the Air Force that governs Keesler Air Force Base.[2] See id. at 1347, 1350. A limited number of personnel would remain at Keesler AFB to perform "touch maintenance," which are actions performed at the base by a Network Control Center technician, for devices managed by a centralized NOSC. Id. at 1347.

[2] NCC Reengineering has been replaced by a more centralized, Air Force-wide, "AFNETOPs" initiative. Id. at 1410. AFNETOPs differs from NCC reengineering in that the Keesler network would be managed through one of two centralized "I-NOSCs," rather than the AETC (MAJCOM) NOSC. Id. at 1359. NCC Reengineering became the foundation for the AFNETOPs transformation, although the AETC technical analyst noted that changes to base-level services, based upon NCC Reengineering in its April 2002 form, were not as substantial as changes to base level services based upon AFNETOPs. Id. at 1350.

Prior to offers being submitted, the solicitation was amended to remove the NOSC-centric initiative from Section 7.1 of the PRD "due to funding and manning issues that have halted its implementation." Id. at 1154. The Air Force did retain a reference to NCC Reengineering in Section 7.4 of the PRD, i.e., the "General Information" section. Id. at 168-69, 1154. Offerors, however, were instructed that the NOSC-centric initiative was not a part of the solicitations requirements because "Section 7.1 contains the requirements that the service provider must meet and section 7.4 simply offers insight into the Air Force's future plans that may be of interest to the Service Provider." Id. at 1154.

The Little BOS study was conducted pursuant to the old, pre-2003, A-76 Circular. E.g., id. at 772. Under this version of the Circular, the Air Force Audit Agency, acting as the Independent Review Office, evaluated the MEO and certified that the MEO proposal met the requirements of the amended solicitation, and the Source Selection Authority determined the MEO met the same level of performance as the "competitive private sector offer" (RKR's proposal) he had selected for the cost comparison. See id. at 829, 2111-41. In approximately August 2005, the Air Force notified offerors that RKR was the contractor selected to compete against the Air Force's MEO, but that the results of the cost study favored the MEO. Id. at 829, 1968-2068. The post-study activities, such as public review, were postponed due to Hurricane Katrina in September 2005 and did not resume until approximately January 2007. Id. at 2142. After its final debriefing, RKR filed an administrative appeal, which was denied on May 23, 2007 by the administrative appeal authority, Major General John W. Maluda. Id. at 1115-18. On June 7, 2007, RKR filed a protest with the Government Accountability Office ("GAO"). Id. at 456-759, 1027-1341.

II. Course of Proceedings At GAO

After the Air Force examined RKR's GAO protest, it determined that the best course of action was to take corrective action. Id. at 770, 772-88, 942-48. On June 25, 2007, Brigadier General Martin T. Smoot, Jr., the Director of Manpower, Organization and Resources (AF/A1M) wrote to the Director of Manpower and Personnel at AETC. Id. at 1025. General Smoot advised AETC that he planned to recommend the cancellation of the solicitation and that the MEO not be implemented. Id. General Smoot also advised that they would consider the functions under study for a future A-76 competition once the AFNETOPs transformation is implemented and at final operational capacity at Keesler AFB. See id. On June 27, 2007, AETC wrote back agreeing with the proposed course of action. Id. at 1342. On July 5, 2007, Brigadier General K.C. McClain, Acting Deputy Chief of Staff for Manpower and Personnel (the AF/A1), decided to cancel the Little BOS decision (tentative decision to implement the MEO), recommended the AETC contracting officer cancel the solicitation and noted that the Air Force did not envision re-competing the functions until the AFNETOPs transformation was complete at Keesler AFB. See id. at 1024.

In July 2007, in two letters to the GAO, the Air Force stated that it intended to take corrective action by not implementing the MEO and cancelling the solicitation. Id. at 770, 772-88. In its July 9, 2007 letter to the GAO, the reasons listed by the Air Force were: 1) an ambiguity in the solicitation regarding the Air Force's plans to shift to a more centralized approach to information technology services ("AFNETOPs"); 2) the need to make revisions to the period of performance, wage rate determinations, information technology and tax rates due to the delay caused by Hurricane Katrina; 3) concern over whether reopening and amending the

solicitation would violate the Defense Appropriations Act and Anti-Deficiency Act; 4) problems with reviving use of the pre-2003 A-76 procedures in 2007 or later without obtaining OMB extension of the approval that expired in September 2005; and 5) the need to use new mandatory source selection criteria. Id. at 772-74.

On July 30, 2007, the GAO sought additional information from the Air Force regarding its reasons for the proposed cancellation. Id. at 938-41. On August 2, 2007, the Air Force responded to the GAO's request with a memorandum from Major General William T. Lord, Director of Cyberspace Transformation and Strategy in the Office of Warfighting Integration and Chief Information Officer. Id. at 947. General Lord explained that the AFNETOPs transformation had changed 57 percent of the requirements in the solicitation and that the solicitation no longer met the Air Force's needs. Id. Based upon this statement, the GAO determined that the Air Force's proposed cancellation was reasonable and dismissed RKR's protest. Id. at 993-97

III. Course of Proceedings At This Court And The Contracting Officer's Cancellation Decision

On August 24, 2007, RKR filed an action in this Court challenging the reasonableness of the proposed cancellation and the reasonableness of the evaluation of bids, which resulted in the tentative decision to implement the MEO in August 2005.[3] On September 21, 2007, the Government filed a motion to dismiss because: 1) RKR's challenge to the cancellation was not ripe since the contracting officer had not yet determined to cancel the solicitation; and 2) RKR's

[3] On August 22, 2007, the GAO notified the parties that it intended to dismiss RKR's protest. RKR filed its complaint in this Court on August 24, 2007. The GAO then issued its written decision dismissing RKR's complaint on August 29, 2007. Id. at 993-97.

challenge to the evaluation of bids was moot, since the Air Force had decided not to implement the MEO based upon the solicitation in its form at the time. After several discussions with the Court, the parties agreed that they would stay the case, until after the contracting officer issued a decision regarding cancellation. On January 7, 2008, the contacting officer issued a determination and findings that cancellation was appropriate. Id. at 1016-21. The decision to cancel was based upon numerous changes to the requirements of the Air Force and the solicitation, including: 1) changes stemming from the AFNETOPs transformation, as well as other changes Headquarters Air Education and Training Command ("HQ AETC") is making to equipment and manpower requirements; 2) the performance period was originally scheduled for October 2006, but, now, could not start any earlier than October 2008; 3) wage rates and inflation factors must be updated for the new anticipated performance period; 4) Section M of the solicitation did not contain the "mission impact" source selection criterion required by 10 U.S.C. § 2461, as amended in 2006; 5) the property list in the solicitation had changed due to changes in information technology. Id. at 1017-18.

The changes to the PRD were so significant that the contracting officer believed that the he could not simply adjust the prices of the MEO to reflect these changes, but would be required to amend the solicitation and re-open discussions with all offerors. Id. at 1019. Also, the contracting officer determined that the changes were so significant that they exceeded what prospective offerors reasonably could have anticipated and, therefore, cancellation was required pursuant to 48 C.F.R. § 15.206(e). Furthermore, even if cancellation was not required pursuant to 48 C.F.R. § 15.206(e), the substantial changes made it prudent to cancel the solicitation because: 1) it would allow the most number of bidders to participate in the competition; 2) there

was "substantial concern that reopening discussions and the degree of amendments needed to this solicitation would violate the time barriers in Section 8021 of the Defense Appropriations Act for Fiscal Year 2008 (Public Law 110-116)," as well as the Anti-Deficiency Act; and 3) re-opening competition would require the solicitation to be converted to the procedures under the new May 2003 OMB Circular A-76. Id. at 1020-21. On January 25, 2008, the Air Force issued an amendment cancelling the solicitation. Id. at 1611.

On January 23, 2008, in light of defendant's still pending motion to dismiss and argument that jurisdiction attaches at the time of the complaint, see GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479, 483 (Fed. Cir. 1996), the parties agreed that RKR would voluntarily dismiss its suit, without prejudice. On January 29, 2008, RKR filed this action, challenging the cancellation of the solicitation and, notwithstanding that cancellation, also challenging the evaluation of bids that resulted in the tentative decision to implement the MEO in August 2005.

## SUMMARY OF THE ARGUMENT

This Court does not possess jurisdiction to entertain RKR's complaint that the Air Force's cancellation decision was irrational because RKR has not alleged a violation of statute or regulation. Even if this Court possessed jurisdiction to entertain RKR's challenge to the cancellation, the administrative record supports the Air Force's decision to cancel the solicitation, based primarily upon a significant change in requirements, due largely to AFNETOPs, a NOSC-centric initiative. RKR's argument is essentially that the requirements of the solicitation included a similar NOSC-centric initiative, but offerors were not supposed to base their bids upon a NOSC-centric environment. RKR's argument is neither logical nor supported by the administrative record. Based upon the NOSC-centric initiative's uncertain

future, the Air Force removed all references to the initiative from Section 7.1 of the PRD. The Air Force also explicitly stated that Section 7.1 of the PRD contained the communications and IT requirements of the solicitation. Therefore, the solicitation's requirements did not contain a NOSC-centric initiative and it was rational to cancel the solicitation based upon a change in requirements.

Even if cancellation was not rational, in and of itself, the contracting officer rationally determined that he was required to amend the solicitation and that amending the solicitation, seeking new proposals from offers, and preparing a new MEO to meet the solicitation's new requirements, would likely violate Section 8021 of the Defense Appropriations Act and the Anti-Deficiency Act.

If the Court determines that it does not possess jurisdiction to entertain RKR's challenge to the cancellation, or that the cancellation has a rational basis, then the Court must also dismiss RKR's challenges to the cost comparison and tentative decision to implement the MEO. Even if the Court determines that the cancellation does not have a rational basis, it still may not award RKR any relief, at this time, because RKR has not proven prejudice, nor an entitlement to injunctive relief.

## ARGUMENT

### I. Standard Of Review

There are three legal standards applicable to the Court's consideration of this matter. The first is the standard by which the Court must consider the Government's motion to dismiss for lack of jurisdiction. The second is the standard of review, codified at 28 U.S.C. § 1491(b)(4), by which the Court is to judge the substance of the challenged agency action in bid protests. This

statutory provision, which incorporates the "Scope of Review" provision of the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), essentially codifies the standards that this Court traditionally has applied in its long-standing line of precedent in bid protest matters. Mike Hooks, Inc. v. United States, 39 Fed. Cl. 147, 154 (1997). The third is the standard by which the Court must consider the motion for judgment upon the administrative record filed by the United States. Application of these standards establishes that the United States should prevail as to all aspects of this matter.

A. Standard For Motion To Dismiss

In considering a motion to dismiss for lack of jurisdiction, the Court must accept as true the complaint's undisputed allegations of fact and construe the facts in the light most favorable to the plaintiff. Williams v. United States, 71 Fed. Cl. 194, 197 (2006) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by, Harlow v. Fitzgerald, 47 U.S. 800 (1982)). As the plaintiff, however, RKR generally bears the burden of establishing jurisdiction for the Court to entertain its complaint. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (quoting Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990)).[4] Unless the undisputed facts reveal a basis upon which the non-moving party may prevail, the Court must grant a motion to dismiss. Williams, 71 Fed. Cl. at 197 (citing Scheuer, 416 U.S. at 236). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." CC Distrib., Inc. v. United States, 38 Fed. Cl. 771, 775 (1997) (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)).

[4] However, it appears that the burden of demonstrating mootness rests upon the defendant. CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 689 (1999) (citing County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

B. Standard For Procurement Challenges

Judicial review of the agency's actions in bid protest cases is not a de novo proceeding; rather, the scope of the review is limited to the administrative record. The proper standard of review is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law based solely upon the administrative record. 28 U.S.C. § 1491(b)(1), (4); 5 U.S.C. § 702, 706(2)(A); Impressa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). The Court must consider whether the decision was based upon consideration of the relevant factors and whether there has been a clear error in judgment. Beta Analytics Int'l, Inc. v. United States, 67 Fed. Cl. 384, 394 (2005).

In determining whether the agency's action was arbitrary or capricious, the scope of the Court's review is very limited. Cincom Sys., Inc. v. United States, 37 Fed. Cl. 663, 671 (1997). In reviewing the agency's procurement decisions, the Court should recognize that the decision is entitled to a "presumption of regularity," see Impressa, 238 F.3d at 1338 (citations omitted), and that the Court should not substitute its judgment for that of the agency. Redland Genstar, Inc. v. United States, 39 Fed. Cl. 220 (1997); Cincom, 37 Fed. Cl. at 672; See also M.W. Kellogg Co. v. United States, 10 Cl. Ct. 17, 23 (1986) (holding that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations"). Thus, the disappointed bidder "bears a heavy burden" and the procurement officer is "entitled to exercise discretion upon a broad range of issues confronting [him]." Impressa, 238 F.3d at 1332 (citations omitted). This burden "is not met by reliance on [the] pleadings alone, or by conclusory allegations and generalities." Bromley Contracting Co. v.

United States, 15 Cl. Ct. 100, 105 (1988); see also Campbell v. United States, 2 Cl. Ct. 247, 249 (1983).

Review of a decision to cancel a solicitation is extremely deferential. See Cygnus Corp. v. United States, 72 Fed. Cl. 380, 384 (2006). "The procuring agency need only provide 'a coherent and reasonable explanation of its exercise of discretion and the disappointed bidder bears a 'heavy burden' of showing that the award had 'no rational basis.''" Id. (quoting Impresa, 238 F.3d at 1333). The agency's decision should not be disturbed unless it is "wholly without reason." Id. (quoting TRW, Inc. v. Unisys Corp., 98 F.3d 1325, 1327 (Fed. Cir. 1996)). The protestor "must do more than identify circumstances where the procuring agency made a mistake; it must establish that such a mistake was so excessive as to fall outside the decision-maker's ambit of discretion." Id.

This Court and its predecessors, as well as the GAO, have consistently acknowledged that agencies enjoy wide latitude in decisions to cancel solicitations. In Keco Industries v. United States, the Court of Claims stated "there is no assurance that any bidder would have obtained the award since the Government retains, in its discretion, the right to reject all bids without liability."[5] 203 Ct. Cl. 566, 492 F.2d 1200, 1206 (1974); accord Aviation Enterprises, Inc. v. United States, 8 Cl. Ct. 1, 19 (1985) (degree of proof required relates to the "latitude given to procurement officials to cancel solicitations"); see also ABF Freight System, Inc. v. United States, 55 Fed. Cl. 392, 409 (2003) ("well settled that the determination of an agency's procurement needs and the best method for accommodating them are matters primarily with the

---

[5] The Air Force also incorporated 48 C.F.R. § 52.215-1(f)(2) into the solicitation, AR 55, which states that the "Government may reject any or all proposals if such action is in the Government's interest."

agency's discretion"); Satellite Servs., Inc., B-288848.3, 2003 CPD ¶ 88, 2003 WL 21048768, at *6 (Comp. Gen. Apr. 28, 2003) ("In a negotiated procurement, an agency has broad authority to decide whether to cancel a solicitation; there need only be a reasonable basis for the cancellation. This broad grant of authority extends to the cancellation of solicitations used to conduct A-76 cost comparisons.") (citations omitted) (emphasis added).[6] An agency "may cancel a solicitation regardless of when the information precipitating the cancellation first surfaces or should have been known, even if the solicitation is not canceled until after proposals have been submitted and evaluated, . . . after contract award, . . . or, as here, after the announcement of a different course of action in response to a GAO protest." Lackland 21st Century Servs. Consol., B- 285938.7, B-285938.8, 2001 CPD ¶ 197, 2001 WL 1543693, *4 (Comp. Gen. Dec. 4, 2001) (internal citations omitted).

RKR's suggestions that cancellation decisions are "disfavored" in negotiated procurements after a bidder's price has been released, and that such cancellations should be viewed with "skepticism," are unsupported by case law and completely without merit. Pl. Mot. 5, 7. The GAO has held that in "a negotiated procurement, where one or more of the offerors' prices have been revealed, an agency may properly cancel a solicitation where the record contains plausible evidence or reflects a reasonable possibility that a decision not to cancel would be prejudicial to the government or the integrity of the procurement system." SEI Group, Inc., B-299108, 2007 CPD ¶ 35, 2007 WL 416047, at *2 (Comp. Gen. Feb 6, 2007) (citation

---

[6] Although decisions of the GAO are not binding on this Court, the Court has stated that such decisions can be of great value when considering issues of Federal procurement law. See Park Tower Mgmt., Ltd. v. United States, 67 Fed. Cl. 548, 563 n.29 (2005) (citing Thompson v. Cherokee Nation of Oklahoma, 334 F.3d 1075, 1084 (Fed. Cir. 2003)).

omitted); see also Satellite Servs., 2003 WL 21048768, at *6 (holding that an agency has "broad authority" to cancel a solicitation in a negotiated procurement, even though the cancellation at issue had occurred in the same procedural context as this case, i.e., during a GAO protest after the A-76 cost comparison had been completed). Therefore, the same standard of review applies to protests of the cancellation of negotiated procurements both before and after a bidder's price has been released.

C. Standard For Judgment Upon The Administrative Record

Pursuant to RCFC 52.1, this Court reviews the agency's procurement decisions to determine whether they are supported by the already-existing administrative record. The standards applicable to a motion for judgment upon the administrative record differ from those applied in the context of a Rule 56 motion for summary judgment. Bannum, Inc. v. U.S., 404 F.3d 1346, 1355-56 (Fed. Cir. 2005); Lions Raisins, Inc. v. United States, 51 Fed. Cl. 238, 246-47 (2001); Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (explaining basis for summary judgment on the administrative record). Unlike a Rule 56 motion, "proceeding under RCFC [52.1] merely restricts the evidence to the agency record . . . ." Bannum, 404 F.3d at 1356. "Thus, the central inquiry on a motion for summary judgment -- whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment -- has no bearing on a review of the administrative record . . . ." Tech Systems, 50 Fed. Cl. at 222; accord Bannum, 404 F.3d at 1356 (holding that RCFC [52.1] requires a different standard of review without the burden-shifting and presumptions required pursuant to RCFC 56).

Unlike a motion for summary judgment, the question of whether an issue of material fact is disputed has no bearing on a review of the administrative record in a record review case, such as a bid protest. The inquiry, instead, is whether, given all the disputed and undisputed facts, the plaintiff has met its burden of proof that the contracting officer's decision was arbitrary, capricious, or contrary to law. Tech Systems, 50 Fed. Cl. at 222 (citing CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 119 (2000)). In reviewing the agency's action under this narrow, deferential standard, "the focal point for judicial review should be the administrative record already in existence, not some record made initially by the reviewing court." Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)); see also Bannum, 404 F. 3d at 1356 (holding that RCFC [52.1] is designed to provide for expedited trial upon a paper record and that the trial court is required to make factual findings based upon the record evidence).

## II. This Court Does Not Possess Jurisdiction To Entertain RKR's Challenge To The Cancellation Of The Solicitation Because RKR Has Not And Cannot Prove That It Is Challenging A Solicitation, Proposed Award Or Award, Or That The Air Force Has Violated Any Statutes Or Regulations Related To The Procurement

Pursuant to 28 U.S.C. § 1491(b)(1), this court has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal Agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." Therefore, this Court only has jurisdiction to adjudicate claims under its bid protest jurisdiction if the plaintiff is an interested party objecting to at least one of four items: 1) the solicitation; 2) a proposed award; 3) an award; or 4) an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

Because the solicitation has been cancelled, RKR cannot be objecting to a solicitation, proposed award or award.[7] Therefore, RKR's allegation of jurisdiction pursuant to 28 U.S.C. § 1491(b)(1) must be based upon a "violation of statute or regulation in connection with a procurement. . ." In Data Monitor Sys., Inc. v. United States, the Court held that for jurisdiction to be based upon a violation of statute or regulation in connection with a procurement, plaintiff's claimed violation must be "rooted in a specific statute or regulation," not merely an allegation that the agency has acted arbitrarily or irrationally. 74 Fed. Cl. 66, 73 (2006). Neither RKR's complaint, nor its motion for partial judgment, alleges a violation of any specific statute or regulation. Rather, RKR argues that the Air Force's cancellation decision lacks a rational basis.[8]

---

[7] In its complaint, RKR argues that "an objection to an unlawful non-award is necessarily subsumed within the clause" conferring jurisdiction upon this Court to hear objections to the "award of a contract." Compl. 1. RKR is incorrect. The plain language of 28 U.S.C. § 1491(b)(1), and common sense, demonstrate that in order for an interested party to object to the "award of a contract," the contract must have actually been awarded.

[8] In its first motion for leave to supplement the administrative record and reply brief for that motion, RKR did allege that the Government violated 48 C.F.R. §§ 1.602-2(b), 3.101-1 or 15.306(e), by favoring the other offerors over RKR or revealing RKR's price without authorization. Pl. 1st Mot. Supp. 2 n.5; Pl. 1st Mot. Supp. Rep. 3. However, besides the fact that RKR has not alleged violations of these regulations in its later filed amended complaint or partial motion for judgment, all of these allegations are frivolous. The Air Force could not have favored another offeror over RKR by cancelling the solicitation, because by cancelling a solicitation, the Government is removing the possibility of receiving the contract for all offerors. Furthermore, the Air Force did not reveal RKR's price without authorization. Rather, the Air Force revealed RKR's price as required by the Federal Acquisition Regulations and A-76 rules. See 48 C.F.R. § 15.503(b)(1)(iv); 48 C.F.R. § 52.207-2(c) (Feb 1993) (incorporated into solicitation at AR 38); Revised Supplemental Handbook, OMB Circular A-76 (Oct. 1984), Part I, Chapter 1, para. G.2 and Part I, Chapter 3, para. K.1.b (dated March 1996, updated through June 1999) (attached to this brief as Attachment 1).

See, e.g., Pl. Br. 15.[9] Therefore, the Court does not possess jurisdiction, pursuant to 28 U.S.C. § 1491(b)(1), to entertain plaintiff's complaint.

## III. The Decision Of The Air Force To Cancel The Solicitation Was Rational

### A. Because The Solicitation No Longer Accurately Reflects The Requirements Of The Air Force, The Decision To Cancel The Solicitation Was Rational

This Court's predecessors have considered a decision to cancel a solicitation because the solicitation no longer reflects the Air Force's needs to be per se rational. See, e.g., Am. Gen. Leasing, Inc. v. United States, 218 Ct. Cl. 367, 587 F.2d 54, 59 (1978) ("the Government alleges a reasonable basis for cancelling the solicitation, i.e. a revision in specifications . . ."); Aviation Enterprises, Inc. v. United States, 8 Cl. Ct. 1, 19 (1985) (holding a "cancellation based on overstated specifications to be reasonable.") (citation omitted). The GAO has also repeatedly considered a change in requirements to be a reasonable basis for cancellation. See, e.g., VSE Corp., B-290452.2, 2005 CPD ¶ 111, 2005 WL 1396999, at *5 (Comp. Gen. Apr. 11, 2005) ("A reasonable basis for cancellation exists and cancellation is appropriate when the solicitation does not accurately reflect the agency's requirements"); Logistics Solutions Group, Inc., B-294604.7, 2005 CPD ¶ 141, 2005 WL 1845177, at *2 (Comp. Gen. July 28, 2005) ("A reasonable basis to cancel exists when, for example, an agency determines that a solicitation does not accurately reflect its needs").

Here, the contracting officer determined that the solicitation at issue no longer reflected the Air Force's needs. AR 1017. The most significant change to Air Force's needs is that

[9] "Pl. Br. __" refers to the page number of RKR's partial motion for judgment, filed on July 3, 2008.

AFNETOPs is going to cause a significant portion of the PRD to have to be re-written.[10] RKR alleges that, even though bidders were specifically instructed not to base their bids upon a

---

[10] Based upon the technical analysis he commissioned, the contracting officer determined that there would be a change to approximately 63 percent of the PRD. AR 1017. RKR alleges that workload will only be reduced by approximately 16 percent. Pl. Br. 23 (basing its numbers upon 14 of the 86 positions RKR proposed being eliminated). The percentage reduction is really irrelevant to the outcome of this case. A 16 percent reduction is certainly not a de minimis change in requirements. See MVM, Inc. v. United States, 46 Fed. Cl. 126, 131-32 (2000) (holding, in post-award bid protest, that agency violated 48 C.F.R. § 15.206(a) by not amending the solicitation to reduce the number of district courts for which contractor would provide security from nine to eight, i.e., 11 percent). The cases cited by RKR for the proposition that a 12.3 percent change in requirements or a change in performance period from 690 to 630 days and reduction from eight to two phases, do not require cancellation, are inapposite. Pl. Br. 24 (citing Defense Group, Inc., B-253795, 94-1 CPD ¶ 196, 1993 WL 603568 (Comp. Gen. Oct. 25, 1993); Claude E. Atkins Enterprises, Inc., B-241047, 91-1 CPD ¶ 42, 1991 WL 79363 (Comp. Gen. Jan. 15, 1991)). The question presented to this Court is not whether cancellation is mandatory, but whether cancellation is rational. Like a decision to cancel, a decision not to cancel is entitled to significant deference. See Atkins Enterprises, 1991 WL 603568, *3. As RKR concedes, the real issue in this case, as discussed below, is whether the requirements of the solicitation included a NOSC-centric initiative. Pl. Br. 12.

Nevertheless, to the extent clarification of the percentages is necessary, we note that the contracting officer appears to have misunderstood the technical analysis upon which he based his statement that AFNETOPs and other changes require a "change to about 63 percent of the PRD." AR 1017. The technical analysis stated that the 63 percent number was the amount of workload that will be shifted to centralized locations based upon AFNETOPs, for the areas of the PRD affected by AFNETOPs, not the percentage of the PRD that will be affected by AFNETOPs and AETC Help Desk and Telephone Operations consolidation. AR 1346. Of the 166 positions under study (138 in the AETC Communications Squadron, plus 28 positions under contract for multimedia services, AR 1644-45, 1678-79), approximately 76 positions are going to be affected by AFNETOPs and the AETC Help Desk and Telephone Operations Consolidation (70 positions from Data Network Operations and Maintenance (BNCC and INFO PROTECTION), 4 positions from Infrastructure Management and Base Locator Functions (INFO SYS FLIGHT) and 2 positions from Software Support and Services (ADMIN COMM), see AR 1346-49, 1679). Therefore, AFNETOPs and the AETC Help Desk and Telephone Operations Consolidation will require a reduction of closer to 30 percent of the PRD, not 63 percent. If anything, this error is harmless, however, since the cancellation was based, in part, upon significant changes in workload requirements due to AFNETOPs and other consolidation efforts, not a specific percentage of the PRD that will be affected. Whether the percentage is 63, 30 or 16 percent, it is still significant.

change to a NOSC-centric initiative, AR 1154, the NOSC-centric initiative was included as part of the solicitation requirements. RKR's arguments are without merit.

1. The Requirements Of The Solicitation Do Not Include A NOSC-Centric Initiative

In its brief, RKR argued that several provisions of the solicitation demonstrate that the requirements of the solicitation include a NOSC-centric initiative. None of RKR's arguments have merit. First, RKR alleges that several provisions in Section 7.1 of the PRD (7.1.1.1, 7.1.1.1.1, 7.1.1.1.4, and 7.1.4.3 (AR 144-45, 147)), which require the service provider to participate in planning changes to the communications and IT infrastructure at Keesler AFB or implement "configuration changes,"[11] account for the NOSC-centric initiative. Pl. Br. 14. RKR is incorrect. In response to a question regarding the solicitation, the Air Force was clear that all references to a NOSC-centric had been removed from Section 7.1 of the PRD, upon which offerors were to base their bids, because "funding and manning issues have halted its implementation." AR 1154. RKR cannot reasonably argue that Section 7.1 of the PRD included requirements based upon a NOSC-centric initiative, when the Air Force explicitly told offerors that Section 7.1 does not contain requirements based upon a NOSC-centric initiative. If Section 7.1 called for reductions in staffing based upon a NOSC-centric initiative, then RKR should have based its bid upon what it anticipated those changes to be, because Section 7.1 set forth the "requirements" of the communications and IT portion of the solicitation. Id. ("Section 7.1 contains the requirements that the service provider must meet"). However, in answering a

[11] We note that "configuration changes" refers to changes to the network configuration, and does not directly reference changes to positions supporting the network. See, e.g., AR 148 (requiring the service provider to perform "initial hardware installation and configuration of network servers, routers, hubs, bridges, repeaters, servers, workstations, and peripherals").

question regarding the solicitation, the Air Force was clear that references to the NOSC-centric initiative had been removed from Section 7.1 because the future of the initiative was too uncertain to be included and, therefore, offerors should not base their bid upon a NOSC-centric initiative.[12]

Second, RKR alleges that because a provision in Section 7.4 of the PRD allows the Air Force to direct "configuration changes" (7.4.5 (AR 165)), the Air Force's requirements have not changed based upon AFNETOPs. Pl. Br. 9. RKR misunderstands the nature of Section 7.4 of the PRD. Section 7.4 of the solicitation does not contain the requirements of the solicitation. As the Air Force explained in answering a question regarding the solicitation, "Section 7.1 contains the requirements that the service provider must meet and section 7.4 simply offers an insight into the Air Force's future plans that may be of interest to the Service Provider." AR 1154 (emphasis added). Therefore, by informing offerors that the Air Force could direct "configuration changes" to the network, the Air Force was not including a NOSC-centric initiative within the requirements of the solicitation, especially in light of the fact that the Air Force had specifically removed the NOSC-centric initiative from the "requirements" of the solicitation. Id.

---

[12] RKR argues that offerors were supposed to bid based upon a "date in time" requirements, but that Section 7.1 of the PRD still included a requirement to adjust to a NOSC-centric initiative. E.g., Pl. Br. 15. RKR's argument is contradicted by the record. It is true that offerors were supposed to bid upon "date in time" requirements, AR 1350, but only to the extent that the requirements in Section 7.1 of the PRD reflected the requirements at the "date in time" of the solicitation. Id. at 1154. Offerors were not specifically instructed to bid upon "date in time" requirements anywhere in the solicitation. Offerors were to base the communications and IT portion of their bid upon Section 7.1 of the PRD, not ignore Section 7.1 of the PRD in favor of some other "date in time" communications and IT requirements of which they were aware. Id. To the extent that the Air Force's requirements changed after award, it could modify the contract so long as the modifications were within the "general scope" of the contract. Id. at 43; see also e.g., AT&T Commc'n, Inc. v. Wiltel, Inc., 1 F.3d 1201, 1205 (Fed. Cir. 1993).

Third, RKR alleges that the fact that the contract was to be a cost-plus contract for two years and then convert to a fixed-price contract after the second option year means that a NOSC-centric initiative was a part of the solicitation requirements. Pl. Br. 12, 19. RKR is, once again, incorrect. As an initial matter, RKR's allegation that the contracting officer "admitted that the solicitation was written as a cost-plus contract with an initial two-year period to determine what the NOSC-centric workload and its costs were going to be" is simply false. Id. at 12. The contracting officer was absolutely clear in his deposition that the provision of the solicitation mandating the conversion to a fixed-price contract had nothing to do specifically with AFNETOPs or any other NOSC-centric initiative. Mortag Depo 116:11-14; 122:19-20. Rather, the clause was based upon the fact that workload data can often be collected more accurately by contractors through the process of contract performance, rather than the agency at the outset of performance. Id. at 119:19-120:4.[13]

Furthermore, the idea that the conversion clause was inserted into the solicitation to account for a potential change to a NOSC-centric initiative is contradicted by the record. At the time the references to the NOSC-centric initiative were removed from the requirements of the solicitation, the implementation of the NOSC-centric initiative had been halted. AR 1154. Therefore, if this clause was based upon a NOSC-centric initiative, it would have made sense for the Air Force to amend the clause to have the conversion to a fixed price contract occur later than two years into the contract. This, however, was not done. Furthermore, based upon the Air

[13] This same explanation would apply to the Award Fee Plan, which similarly states that after "several years of contract performance, the costs should stabilize, allowing for a conversion to fixed price award fee for the remainder of the contract . . ." AR 232. There is no evidence in the administrative record, even as expanded with depositions conducted by RKR, that this provision was put in place because of AFNETOPs or any other NOSC-centric initiative.

Force's answer to a question regarding the solicitation, in which it stated that implementation of the NOSC-centric initiative had been halted, it was unclear when a NOSC-centric initiative would be implemented or if it would even be implemented during the life of the contract. AR 1154. Therefore, the clause in the solicitation that would have converted the contract from a cost-plus contract to a fixed-price contract after two years did not make a NOSC-centric initiative a part of the requirements of the solicitation.

Finally, RKR appears to allege that general language in the PRD in Sections 1 and 2 of the PRD, which require the service provider to adapt to the changing needs of the Keesler AFB and introduce innovations that add customer value, means that the NOSC-centric initiative was included as part of the requirements of the solicitation. See Pl. Br. 19; Pl. SOF 52-55 (citing AR 83-85, 90). To the extent RKR is making such an argument, it is completely without merit. If RKR's argument were true, then 48 C.F.R. § 15.206(a), which requires agencies to amend a solicitation when there has been a change in requirements, would be completely meaningless because agencies could simply include a clause in the solicitation stating that "the service provider shall adapt to changing requirements of [insert agency]" and never have to amend a solicitation. This cannot be the law.

Therefore, the language of the solicitation, as expounded upon by an answer to an offeror's question, demonstrates that the NOSC-centric initiative was not part of the "requirements" of the solicitation.

2. The Fact That General Maluda Did Not Identify Any "Quantum Leap" In AFNETOPs Between May 2007 And July 2007 Does Not Render The Cancellation Decision Irrational

RKR argues that General Maluda could not identify any "quantum leap" or significant change in AFNETOPs between May 2007, when he rejected RKR's administrative appeal, and July 2007, when the Air Force announced its intention to cancel the solicitation to GAO. Pl. Br. 14-15. As an initial matter, General Maluda had nothing to do with the cancellation decision. Maluda Depo 111:7-11, 111:16-22. His role as the administrative appeal authority was limited to deciding whether RKR's administrative appeal had merit. Id. at 103:10; AR 1691 (relevant Air Force Instruction stating that "[t]he [administrative appeal process] Authority shall not review any item not formally challenged by an eligible appellant"); Revised Supplemental Handbook, OMB Circular A-76 (Oct. 1984), Part I, Chapter 3, para. K.5. Because of the limited areas for review during an A-76 administrative appeal, General Maluda could not take into consideration any of his knowledge about the developments of AFNETOPS. Therefore, contrary to what RKR has intimated throughout this litigation, General Maluda's administrative appeal decision did not in any way affirm that a NOSC-centric initiative was included in the solicitation requirements, but rather, simply determined that RKR's administrative appeal had no merit.

The issue in this protest is not whether some "quantum leap" occurred between May 2007 and July 2007. Rather, the issue is whether the contracting officer's January 2008 determination to cancel the solicitation is rational. As noted above, the GAO has held that an agency "may cancel a solicitation regardless of when the information precipitating the cancellation first surfaces or should have been known, even if the solicitation is not canceled until after proposals have been submitted and evaluated, . . . after contract award, . . . or, as here,

after the announcement of a different course of action in response to a GAO protest." Lackland, 2001 WL 1543693, *4 (internal citations omitted). The fact that information precipitating the cancellation first surfaced during a GAO protest of the tentative decision to award to the MEO is irrelevant. Furthermore, even if the Air Force should have known that the solicitation should be cancelled in May 2007, May 2006, May 2005 or any other time before the announced its intention to cancel in July 2007, is also irrelevant. The relevant facts are that there has been a significant change in the solicitation requirements, based upon AFNETOPs, which makes it per se rational to cancel the solicitation.

3. The Fact That AFNETOPs Has Not Been Completed Does Not Render The Cancellation Irrational

RKR argues that the Air Force's cancellation decision was irrational because AFNETOPs has not reached final operational capacity yet and the Air Force does not intend to resolicit until it does. RKR's argument is without merit. See Pl. Br. 19-21. First, both General Lord and AETC's technical analyst believe that AFNETOPs has been definitized sufficiently to allow them to conclude that changes to the requirements of the solicitation will be significant. AR 948, 1345-46. RKR can point to no evidence in the administrative record to question these conclusions. In fact, RKR agrees that the Base Network Control Center's workload will be reduced significantly because of AFNETOPs, from what bidders were instructed to bid upon, i.e., the solicitation requirements. Pl. Br. 23. Even if the cancellation is based upon mere uncertainty regarding its future requirements, the GAO has held that cancellation is reasonable. See, e.g., Satellite Servs., 2003 WL 21048768, at *10-11 (holding that the agency acted reasonably in cancelling a solicitation, after a tentative decision to implement the MEO, based,

in part, upon pending requests to exempt a significant portion of the positions from the A-76 process).

Second, although the Air Force Competitive Sourcing Official, General McClain, does not "envision rescheduling the competition until the on-going AFNetOps Transformation is complete,"[14] AR 1024, no firm decision regarding when the requirements will be re-solicited has been reached. Furthermore, it is inherently rational to wait until the requirements are definitized further before re-soliciting the requirements. This would aid the Air Force in allowing a future solicitation to proceed more smoothly with fewer amendments.

RKR's allegations that the cancellation is a pretext to continue in-house performance of the requirements is completely without merit. Pl. Br. 19 n.20. The GAO has held that, where an offeror is alleging that a cancellation was pretextual, it is alleging that the agency acted in bad faith, and the bidder "must provide convincing proof, since [the GAO] will not attribute unfair or prejudicial motives to procurement officials on the basis of inference or supposition." Logistics Solutions Group, Inc., 2005 WL 1845177, at *3 (citations omitted). Similarly, the Federal Circuit has held that there is "a strong presumption in the law that administrative actions are correct and taken in good faith. It takes 'well-nigh irrefragable proof' to overcome the presumption." Sanders v. United States Postal Serv., 801 F.2d 1328, 1331 (Fed. Cir. 1986) (citations omitted). The Court of Claims has equated the "necessary 'irrefragable proof'. . . with

---

[14] We note that AFNETOPs will be "complete" for all practical purposes at Keesler AFB when it reaches final operational capability by the end of 2010. See AR 1359, 1407. While the Draft Program Action Directive states that the final step of AFNETOPs, the "integration of most airborne and space networks—will occur in the 2012-2020 timeframe," id. at 1359, these dates are irrelevant because there are no "airborne or space networks" at Keesler AFB. Maluda Depo. 155:13-21.

evidence of some specific intent to injure the plaintiff." Kalvar Corp. Inc. v. United States, 211 Ct. Cl. 192, 543 F.2d 1298, 1302 (1976). RKR's has shown no specific intent by the Air Force to injure RKR, but rather has made the bare allegation that the tentative decision to wait until the AFNETOPs transformation is complete to re-solicit is a pretext. This is nowhere near "well-nigh irrefragable proof." Accordingly, the cancellation decision was not irrational based upon the fact that AFNETOPs has not reached final operational capacity yet or that the Air Force does not intend to resolicit until the transformation is complete.

4. The Air Force's Mistaken Interpretation Of The Solicitation Before The GAO Does Not Render The Cancellation Irrational

RKR claims that the Air Force's decision to cancel the solicitation is irrational based upon "[i]nconsistent [c]larifications of the [s]olicitation." Pl. Br. 16-18. RKR's argument is not only completely without merit, it is based upon an entirely irrelevant premise. Although the Air Force did misinterpret the solicitation during the GAO protest by arguing that there was an ambiguity as to whether offerors should bid upon the NOSC-centric initiative, the Air Force has not advanced the misinterpretation since it realized that it was incorrect, and the misinterpretation played no role in the contracting officer's decision.

Before the GAO, the Air Force argued:

> There is an ambiguity in the solicitation's language concerning the requirements of staffing the Network Operations (SC1B) work center, which comprises a significant portion of the work. There was, and is currently, underway an initiative that would centralize certain operations and will significantly change personnel requirements. The solicitation, however, was ambiguous as to whether the initiative should be considered in staffing projections . . ."

AR 772 (emphasis added). In response to the above statement, the GAO quoted the question and answer referenced above, which clarified that bidders were to bid upon the requirements in Section 7.1 of the PRD, not the NOSC-centric initiative, and propounded the following pointed question: "Please identify the 'ambiguity' in the solicitation regarding this matter. More specifically, is it the Air Force's position that an offeror could reasonably believe that staffing for a NOSC-centric environment complied with the solicitation requirements?" Id. at 939 (emphasis added).

Clearly, the GAO did not see an ambiguity in the solicitation regarding whether offerors could base their offers upon a NOSC-centric environment, and there is, in fact, no ambiguity. In light of the GAO's question, the Air Force has not argued that there was an ambiguity since that time, but rather, that the implementation of AFNETOPs has caused a change in requirements. See, e.g., id. at 942-47. The Government is not arguing that the solicitation was ambiguous on this point, RKR is not arguing that the solicitation was ambiguous on this point and, most importantly, the contracting officer did not rely upon an ambiguity in the solicitation to justify cancellation. Rather, the contracting officer relied, primarily, upon a significant change in requirements as a result of AFNETOPs. Id. at 1017-20.

Because the contracting officer did not rely upon any ambiguity in the solicitation to justify cancellation, the fact that the Air Force temporarily misinterpreted the solicitation during the GAO protest is irrelevant. RKR's emphasis upon this misstatement, especially in light of the GAO's clear understanding and our further clarification, demonstrate how seriously misplaced RKR's position in this protest has become.

5. Even if AFNETOPs Alone Is Not A Sufficient Justification For Cancellation, The Uncertainty Created By Other Potential Changes Provides Sufficient Justification For Cancellation

As noted above, a change in requirements does not need to be definitized in order for cancellation to be rational, even if cancellation occurs after a tentative decision to implement the MEO in an A-76 study. See Satellite Servs., 2003 WL 21048768, at *10-11. In Satellite Servs., although the changes in requirements due to reorganization were not definitized yet and the agency's requests to exempt a significant number of positions from the study had not yet been approved, the GAO held that it was rational to cancel the solicitation in light of the uncertainty. Here, AFNETOPs is not the only Air Force-wide IT transformation that may affect the Little BOS solicitation. The Air Force CYBER Command may affect several aspects of the solicitation requirements including Communications and IT Service, Telecommunications Systems Operations and Maintenance and Base Locator Functions. AR 1346-49. When combined with the areas of the solicitation affected by AFNETOPs and AETC's Help Desk and Telephone Operations consolidation, approximately 82 percent of the 138 non-multimedia services positions under study (or 68 percent of the total positions under study) may be affected by IT transformation initiatives in various stages of development.[15] Id. at 1346. Therefore, even if the Court were to determine that AFNETOPs alone was not a sufficient justification to cancel

[15] The 113 positions potentially affected are 11 positions in Communications and IT Service (PLAN/IMPLEMENT FLI), 4 positions in Infrastructure Management and Base Locator Functions (INFO SYS FLIGHT), 21 positions in Telecommunications Systems Operations and Maintenance (TELE INSIDE MAINT and TELE OUTSIDE MAINT), 70 positions in Data Network and Operations (BNCC and INFO PROTECTION), 2 positions from Software Support and Services (ADMIN COMM) and an additional 5 positions from COMMUNICATIONS SQU. Id. at 1346-49, 1679.

the solicitation, AFNETOPs, in conjunction with other Air Force and AETC IT transformation initiatives, is sufficient to provide a rational basis for cancellation.[16]

6. The Contracting Officer's Determination That Cancellation And Re-Solicitation Would Likely Increase The Number Of Bidders Was Rational

The contracting officer determined that the amendment to change the performance period, as well as the changes to the requirements based upon AFNETOPs would increase the number of bidders that were likely to bid upon a re-solicitation. AR 1019-20. The contracting officer made this determination, in part, by looking at a recent site visit list for an A-76 study for base operating services for Sheppard Air Force Base. Id. at 1019. The contracting officer determined that there were 10 self-identified small businesses interested in the communications and IT solicitation or "all" solicitations, which included the communications and IT solicitation. Id. at 1019-20. Only two offerors bid upon the Keesler Little BOS solicitation. Id. at 1020. Therefore, based upon the revision in performance period, the contracting officer determined that there would likely be more bidders on a new solicitation. Id. Also, since the Sheppard communications and IT solicitation has been delayed so that the PRD can be re-written to remove workload requirements affected by AFNETOPs and AETC transformations, the

[16] Although they were not the sole bases of the contracting officer's decision to cancel, we also note that the GAO has considered inaccurate equipment lists and changes in the performance period to be independent bases upon which to cancel a procurement. See, e.g., D-K Assocs., Inc., 62 Comp. Gen. 129 (1983) ("the disparity discovered with respect to the [Government Furnished Equipment list] also provides a basis for the cancellation"); Southwest Marine, Inc., B-229596, B-229598, 88-1 CPD ¶ 22, 1988 WL 226887, at *2 (Comp. Gen Jan. 12, 1988) (finding cancellation of invitation for bids rational where the performance period shifted because the performance period is a "material factor in a solicitation that likely will affect price").

contracting officer, exercising his judgment, determined that it was likely that "with a smaller, less complex workload, even more small businesses are likely to be interested in competing." Id.

RKR argues that this determination was irrational because RKR alleges that several of the small businesses at the Sheppard site planned to team together to bid upon the solicitation, some of the businesses were not actually qualified as small businesses, and some of the small businesses did not have communications and IT capability to bid upon the Sheppard solicitation. Pl. Br. 29-32. RKR's argument is incorrect. As noted above, the standard of review for a cancellation determination is whether there was a rational basis and the contracting officer's decision should not be disturbed unless it is "wholly without reason." Cygnus, 72 Fed. Cl. at 384. Accordingly, the pertinent inquiry is not whether the contracting officer could have gathered more information, which may have altered his decision, but rather, the issue is whether the contracting officer had a rational basis for making his actual determination. For purposes of the cancellation analysis, it was rational for the contracting officer to assume that businesses that identified themselves as small were actually small businesses and that those interested in bidding upon the communications and IT solicitation at Sheppard had the qualifications to do so. His market research need not include an in-depth inquiry into each potential bidder's size, qualifications and intentions to bid separately or with others.

This is especially true in light of the GAO's decision in VSE, 2005 WL 1396999. In VSE, the GAO held that:

> because of the time which has elapsed from the initial issuance of the solicitation in March 2000 until the cancellation in December 2004, and the numerous changes made to the RFP during that period, we find that the [agency's] assumption that additional firms may well be interested in participating in a competition based on a

> solicitation reflecting the [agency's] current requirement, with the result that competition may be increased, is reasonable.

2005 WL 1396999, at * 5. The situation in VSE is similar to the situation the contracting officer faced in this case. Nearly five years had elapsed between the time the Little BOS solicitation was issued and the contracting officer's cancellation decision. Also, the Air Force's requirements for moving forward had been reduced significantly during that time. In a similar situation in VSE, the GAO held that the agency's assumption that additional firms may be interested in participating in a new procurement was reasonable. Id. Therefore, this Court should follow the GAO's decision in VSE and hold that it was rational for the contracting officer to determine that additional bidders may be interested in bidding upon a new solicitation.

B. The Contracting Officer Had A Rational Basis For His Determination To Cancel The Solicitation Based Upon A Change In Requirements And/Or Evaluation Criteria That Required Him To Amend The Solicitation And Seek New Proposals, And Substantial Concern That Amending The Solicitation And Obtaining New Proposals Would Be Illegal

1. The Contracting Officer Had A Rational Basis For His Determination That There Was A Significant Change In Requirements That Required Him To Amend The Solicitation And Seek New Proposals

When an agency's requirements change significantly before an award is made, the contracting must amend (or cancel) the solicitation. 48 C.F.R. § 15.206(a) ("When, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer shall amend the solicitation."); Northrop Gruman Info. Tech., Inc., B-295526, et. al., 2005 CPD ¶ 45, 2005 WL 735939, at *7 (Comp. Gen. Mar. 16, 2005) ("An agency must amend the solicitation to reflect a significant change in the government's requirements, even after the submission of final proposal revisions, up until the time of award."). Here, the contracting officer determined that, since the changes to the PRD are so significant, he

could not simply adjust the MEO's prices without amending the solicitation and seeking proposal revisions. AR 1019. RKR argues that the Air Force need not amend the solicitation because the change in workload was accounted for as a possibility, even though bidders were instructed to bid upon a different set of "date in time" requirements. Pl. Br. 43-44. RKR's view is not in accord with this Court's precedent.

In MVM, Inc. v. United States, the agency issued a solicitation for Court Security Officers for the nine district courts in the Eleventh Circuit. 46 Fed. Cl. 126, 127 (2000). The solicitation explicitly noted that the agency may remove one of the districts, the Northern District of Florida, from the solicitation. Id. After best and final offers were submitted, but before award was made, the agency decided to remove the Northern District of Florida from the solicitation. Id. at 130. Despite the fact that the solicitation explicitly informed bidders that the Northern District of Florida may be eliminated, the Court held the elimination of that district to be a change in requirements. Id. at 131. Accordingly, the Court held that by not amending the solicitation, the agency violated 48 C.F.R. § 15.206(a). Id. at 131-32.

In MVM, the solicitation was even more explicit than in this case that the level of effort could change. Here the solicitation informed bidders that a NOSC-centric initiative known as NCC Reengineering was in progress, which would "standardize and streamline network operations throughout the command." AR 168. However, the Air Force made clear that the initiative was no longer a part of the requirements of the solicitation, because "funding and manning issues had halted its implementation." Id. at 1154. Based upon the solicitation, it was unclear whether the contract might later be modified to require the service provider to support

Keesler AFB under a NOSC-centric concept at some point over the life of the contract, but it was clear that the NOSC-centric initiative was not a part of the solicitation's requirements. Id.

It should also be noted that the change in MVM was the reduction of court security services for one of nine judicial districts, which equates to a change in requirements of approximately 11 percent. MVM, 46 Fed. Cl. at 127. Therefore, based upon this Court's precedent, even if RKR's allegation is correct that the changes based upon AFNETOPs account for only a 16 percent reduction in requirements, the change is still significant enough to require amendment.[17] Therefore, the contracting officer was required to amend the solicitation and seek new final proposals based upon the significant change in requirements caused by AFNETOPs.

2. The Contracting Officer Had A Rational Basis For His Determination That The Solicitation Would Need To Be Amended To Add New Source Selection Criteria Required By Law

An agency is required to amend a solicitation when it changes its evaluation criteria. 48 C.F.R. § 15.206(a); Candle Corp. v. United States, 40 Fed. Cl. 658, 665 (1998). In 2006, 10 U.S.C. § 2461 was amended to require that a "function of the Department of Defense performed by 10 or more Department of Defense civilian employees may not be converted, in whole or in part, to performance by a contractor unless the conversion is based on the results of a public-private competition that . . . examines the effect of performance of the function by a

[17] In his determination and findings, the contracting officer stated that based upon the technical analysis that was performed, he found no basis for RKR's "contention that the PRD scope changes were minimal at best." AR 1019. RKR's claims of a 16 percent change may accurately be described as "minimal" when compared to the potential changes to the scope of the PRD that the technical analysis found (which includes changes resulting from AFNETOPs, AF CYBER and AETC Enterprise Transformation plans). However, based upon this Court's precedent in MVM, a 16 percent change in overall requirements is not so "minimal" that it the agency would not be required to amend the solicitation pursuant to 48 C.F.R. § 15.206(a), based upon such a change.

contractor on the military mission associated with the performance of the function." 10 U.S.C. § 2461(a)(1)(H); National Defense Authorization Act For Fiscal Year 2006, Pub. L. No. 109-163, 119 Stat. 3136, 3195-96 (2006). Therefore, a decision to convert to a contractor may not be made after the enactment of this amendment in 2006, unless the agency analyzes the mission impact of performance of the function by a contractor. The contracting officer determined that, based upon this provision, the solicitation would have to be amended to add this new "mission impact" criteria.[18] AR 1018. The contracting officer's decision that he was required to amend the solicitation to include the new mission impact criterion was rational and in accordance with the law.[19]

---

[18] The contracting officer stated that "if I have to amend the solicitation and obtain new prices, I would have to amend the source selection criteria in Section M and also amend the instructions for preparation of proposals stated in Section L of the solicitation." AR 1018. In reality, it does not matter whether the contracting officer must amend the solicitation for another reason. The requirement to evaluate the mission impact of a conversion to a contractor is a requirement before the functions are "converted . . . to performance by a contractor." 10 U.S.C. § 2461(a)(1)(H). No decision was ever made to convert the Little BOS functions to a contractor. Rather, there was a tentative decision to implement the MEO. Because the solicitation does not contain provisions for the evaluation of the mission impact of conversion, the contracting officer must amend the solicitation and re-evaluate offers.

[19] Additionally, on January 28, 2008, after the contracting officer's decision, 10 U.S.C. § 2461 was amended again to require that, before a decision to convert to a contractor, the agency analyze a contractor's health insurance and requirement plans to make sure that certain costs are not less than what it would cost the agency to provide health insurance and retirement benefits civilian employees pursuant to chapters 84 and 89 of title 5 of the United States Code. 10 U.S.C. § 2461(a)(1)(G); National Defense Authorization Act For Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3, 59 (2008). The solicitation would also need to be amended to conform to these changes, since no decision to convert the work to a contractor has been made yet.

3. The Contracting Officer Had A Rational Basis For His Determination That There Was Substantial Concern That Amending The Solicitation And Obtaining New Proposals Would Be Illegal

If the contracting officer is required to amend the solicitation, but there is substantial concern that proceeding with the solicitation after amendment would be illegal, it is inherently rational for the contracting officer to cancel the solicitation. Section 8021 of the fiscal year 2008 Department of Defense Appropriations Act reads, "None of the funds appropriated by this Act shall be available to perform any cost study pursuant to the provisions of OMB Circular A-76 if the study being performed exceeds a period of . . . 30 months after initiation of such study for a multi-function activity." Department of Defense Appropriations Act, Pub. L. No. 110-116, 121 Stat. 1295, 1318 (2007). This basically means that the Air Force cannot spend money to perform a multi-function cost study that was initiated over 30 months ago. The 30-month window for the Little BOS study ended in August 2005. See AR 1728 (indicating the start date of Little BOS solicitation was February 19, 2003). If the Air Force amended the solicitation, accepted new proposals from offerors, and prepared a new MEO to meet the solicitation's new requirements, the Air Force would be spending money to perform a cost study outside of the 30-month window.

Because expending funds to redo the cost study after amendment and re-solicitation would likely violate Section 8021 of the Defense Appropriations Act, it would also likely violate the Anti-Deficiency Act, which states, in relevant part, "[a]n officer or employee of the United States Government . . . may not – (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation . . ." 31 U.S.C. § 1341(a)(1)(A). A Government employee found guilty of willfully violating the Anti-

Deficiency Act may be punished by a fine of up to $5,000, a prison sentence of up to two years, or both. 31 U.S.C. § 1350.

RKR argues that the Air Force may amend the solicitation and re-open discussions without violating these acts because the changes required to the solicitation "would be a consequence of correcting the error of not adjusting the MEO's offer to conform to the solicitation requirements . . ." Pl. Br. 33. RKR's argument is factually incorrect, however, because the contracting officer did not make the determination that he needed to amend the solicitation based upon any errors in the procurement identified by RKR, but rather, the amendments are necessary because of change in the Air Force's requirements and evaluation criteria. Also, RKR alleges that the Air Force's concern is "unsupported by legal precedent," but fails to cite any legal precedent contrary to the Air Force's position. Id. at 32-33. The Air Force, for its part, is relying upon the plain language of Section 8021 above, which states that funds may not be expended to perform any cost study that exceeds 30 months for a multi-function activity. As such, the contracting officer's caution with regard to a potential violation of law is inherently rational.

## IV. RKR's Challenge To The Air Force's Cost Comparison Or Tentative Decision To Implement The MEO Is Moot

If the Court finds that it lacks jurisdiction to entertain plaintiff's challenge to the cancellation, or determines that the cancellation has a rational basis, then RKR's claims regarding the cost comparison or the Air Force's tentative decision to implement the MEO must also be dismissed as moot. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." CCL, 43 Fed. Cl. at 688 (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). A case may be

dismissed for mootness if there is "no reasonable expectation" that the alleged violation will recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id. at 689 (quoting Davis, 440 U.S. at 631). Here, the result of the Air Force's allegedly improper evaluation of the MEO's proposal was a tentative decision to implement the MEO structure.

Rather than defend the decision when RKR raised these issues before the GAO, the Air Force took corrective action by cancelling the tentative decision to implement the MEO structure. AR 1024. The Air Force later cancelled the solicitation. Id. at 1611. Because of the cancellation, any alleged errors made in the evaluation are now moot because the result of the evaluation, an award to RKR or the MEO, cannot happen. There are no further "effects" of the alleged improper evaluation (or any other alleged errors prior to the cancellation) because no one will be receiving an award from the solicitation since it has been cancelled. Furthermore, RKR will not be able to prove that the Air Force made prejudicial errors in its evaluation of bids because no one will obtain an award as a result of the evaluation.[20] As such, the cancellation of the solicitation divests this Court of jurisdiction to entertain RKR's claims relating to the evaluation of proposals.

Since the issue of whether the Air Force's evaluation of the proposals and tentative decision to implement the MEO structure is moot, RKR's claim for bid preparation and proposal costs is also moot. This Court has held that "a decision on the merits of the award must be made prior to the award of bid preparation and proposal costs. Without analysis of the merits of the

[20] RKR alleges that it was harmed by the release of its total evaluated cost (per performance period). Pl. Br. 5. However, as explained in Section V, below, this claim is without merit or, at least, not ripe.

award, the court lacks a basis to grant further relief." CCL, 43 Fed. Cl. at 690. In CCL, plaintiffs protested the award of contracts for computer maintenance services to another company. Id. at 681. After protracted settlement negotiations broke down, the agency terminated the contracts at issue and cancelled the solicitation. Id. at 684-85. The Court found that plaintiffs' complaints basically presented two questions: 1) whether there was an error in the procurement process; and 2) whether plaintiffs are entitled to bid preparation and proposal costs. Id. at 690. The Court then held that "[h]aving negated any impropriety by cancelling the award and solicitation, [the agency] has precluded the court from making a finding regarding the first question. Significantly, without reaching the merits of the first question, analysis of the second cannot proceed." Id. This Court has reached the same result in several other similar cases, where the underlying issue has been found to be moot and the Court has not allowed the plaintiff to seek bid preparation and protest costs. See Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32 (2005); S.K.J. & Associates, Inc. v. United States, 67 Fed. Cl. 218 (2005); CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554 (2000). Therefore, the issue of whether the Air Force committed prejudicial errors in evaluating the proposals or issuing the tentative decision is moot.

## V. RKR Is Not Entitled To Any Relief At This Stage, Even If The Court Determines That The Cancellation Was Irrational, Because RKR Has Not Proven Prejudice

In order for this Court to grant RKR injunctive relief or bid preparation and proposal costs, RKR must first succeed upon the merits. PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (2004) (plaintiff must succeed upon the merits in order to obtain injunctive relief) (citations omitted); CCL, 43 Fed. Cl. at 690 ("a decision on the merits . . . must be made prior to the award of bid preparation and proposal costs."). At this stage, even if RKR can prove that the

cancellation was irrational, RKR cannot prove that it has succeeded upon the merits, because it cannot prove prejudice.

If a protestor can show any errors in the procurement process, the protestor must also show that it was "significantly prejudiced" by those errors. Bannum, 404 F.3d at 1354 (citations omitted). To establish significant prejudice, the protestor must show that "there was a 'substantial chance' it would have received the contract award but for the errors . . ." Id. (citations omitted).

Here, RKR has not shown that it would have received the award if the solicitation had not been cancelled. In August 2005, the Air Force made the tentative decision to implement the MEO, rather than award the contract to RKR. AR 829. RKR appealed that decision to the administrative appeal authority, General Maluda, based upon substantially the same grounds it protested the decision in the GAO and this Court. Id. at 2143-76. General Maluda determined that RKR's appeal was without merit. AR 1116. While the Air Force did state, in announcing its intention to cancel to the GAO, that "the MEO appears to have been understated," id. at 772, this does not mean that the MEO was understated to such a degree that RKR would have had a "substantial chance" of winning an accurate cost comparison. We also note that the Air Force's statement to the GAO that the MEO appears to have been understated contradicts the administrative appeal decision of General Maluda, id. at 1116, as well as the Audit Reports of the Air Force Audit Agency, id. at 2113, and the Army Audit Agency. Id. at 2269-70.

The parties have agreed that RKR's partial motion for judgment upon the administrative record would focus upon whether the contracting officer had a rational basis for cancelling the

solicitation. See JSR 2.[21] In fact, in its motion for judgment for partial judgment, RKR conceded that applying the Federal Circuit's prejudice test is "premature." Pl. Br. 5 n.8. Therefore, it is unclear how RKR can claim that it is entitled to relief at this stage of the proceedings. To the extent that RKR is arguing the case Heritage of Am., LLC v. United States, 77 Fed. Cl. 66 (2007), stands for the proposition that the Court may award relief without determining that there was a substantial chance RKR would have received the contract but for the alleged errors in the procurement process, RKR is incorrect. See Pl Br. 5 n.8. In Heritage, the Court found prejudice, by applying the "substantial chance" test, before awarding injunctive relief. 77 Fed. Cl. at 76-77.

To the extent that RKR is alleging that it is entitled to relief because it was prejudiced by the Air Force releasing its total evaluated cost, RKR is also incorrect. See Pl. Br. 5. If RKR would not have been awarded the contract, then RKR is actually in a better position because of the cancellation, than if the cancellation had not taken place and the MEO had been implemented. If the Court were to overturn the cancellation, without RKR having a substantial chance of being awarded the contract, then the MEO, in some form, would likely be implemented. If the Court does not overturn the cancellation, then RKR will have the opportunity to compete for the work again. If RKR would not have had a substantial chance of receiving the award, absent the cancellation, then the cancellation benefits RKR, even if it were to be at a competitive disadvantage in a future procurement.

[21] "JSR __" refers to the page number of the parties joint status report, filed on April 4, 2008.

In any event, RKR has not been prejudiced by the release of its total evaluated cost. Since it is undisputed that offerors would be bidding upon a different level of effort in a re-solicitation, the release of RKR's total evaluated cost will not provide any assistance to other offerors. Even if RKR would be harmed by the release of its total evaluated cost, the Air Force could choose to alleviate this harm in a future procurement by releasing the price of other bidders or performing some other action to "level the playing field." See, e.g., DGS Contract Serv., Inc. v. United States, 43 Fed. Cl. 227 (1999); Sperry Corp., 65 Comp. Gen. 715, 716-17 (1986). Therefore, any claim that RKR would be harmed in future solicitations by the lawful release of its total evaluated cost is premature. Bannum, Inc. v. United States, 56 Fed. Cl. 453, 462 (2003) ("A claim is not ripe 'if it is premised upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting Texas v. United States, 523 U.S. 296, 300 (1998)); see also Data Monitor, 74 Fed. Cl. at 73 n.9 ("any auction allegation is premature: the Air Force has made no decision on, nor even had the opportunity to address, plaintiff's June 14, 2006, letter, urging the Air Force to disclose the price and technical information of the other offerors.").

Therefore, because RKR has not proven prejudice, RKR is not entitled to relief at this stage in the proceedings.

## VI. RKR Is Not Entitled To Injunctive Relief, Because RKR Has Not Proven That It Will Suffer Irreparable Harm Without Injunctive Relief, Or That Injunctive Relief Is In The Public Interest

The Federal Circuit has held that "injunctive relief [is] awardable . . . only in extremely limited circumstances." CACI, Inc.-Federal v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983) (citation omitted) (ellipses and bracketed text in original). Even if RKR were to succeed

in establishing that the contracting officer's decision lacked a rational basis, and that RKR was prejudiced by the decision, the Court must also consider three additional criteria before ordering a permanent injunction: (1) "whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief"; (2) "whether the balance of hardships to the respective parties favors the grant of injunctive relief"; and (3) "whether it is in the public interest to grant injunctive relief." PGBA, 389 F.3d at 1228-29 (citations omitted). RKR must establish its entitlement to injunctive relief by clear and convincing evidence. Baird Corp. v. United States, 1 Cl. Ct. 662, 664 (1983) ("Where injunctive relief is sought, which relief is deemed drastic in nature, the court must exercise great caution and even then, the aggrieved bidder should be made to establish its right to such drastic relief by means of clear and convincing evidence.") (citation omitted). RKR has not demonstrated that it would be irreparably harmed absent injunctive relief, that its harm outweighs the harm to the Government if injunctive relief were granted or that overturning the cancellation is in the public interest.

### A. RKR Cannot Demonstrated That It Will Suffer Irreparable Harm If The Cancellation Is Not Overturned

As an initial matter, RKR has not demonstrated that it will suffer irreparable harm in the absence of an injunction because it has not demonstrated that it has a substantial chance of receiving the award if the cancellation were overturned. See Section V, above. As noted above, if RKR cannot demonstrate a substantial chance of receiving the award, then overturning the cancellation would actually harm RKR. However, even if RKR could demonstrate, in future proceedings, that it would have had a substantial chance of receiving the award absent cancellation, RKR's other assertions of irreparable harm are without merit.

RKR alleges three types of harms it might face if the Court does not overturn the cancellation: 1) "deprivation of potential profits"; 2) that it will be a "sitting duck" during re-solicitation and, therefore, its bid will not be "fairly and lawfully considered"; and 3) "being denied the ability to establish a past performance record." Pl. Br. 37-38. With regard to RKR's first assertion of harm, economic harm is not sufficient to establish irreparable injury. See Minor Metals, Inc. v. United States, 38 Fed. Cl. 379, 381-82 (1997) (citing Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983)) ("economic harm, without more, does not seem to rise to the level of irreparable injury."). This Court has regularly applied this principle in the bid protest context. See, e.g., Sierra Military Health Serv. v. United States, 58 Fed. Cl. 573, 582 (2003) (quoting OAO Corp. v. United States, 49 Fed. Cl. 478, 480 (2001)) ("these potential losses are primarily monetary. While these losses may be substantial, they are not irreparable."); Minor Metals, 38 Fed. Cl. at 381-82 (1997). However, as RKR notes in its motion, this Court has departed from this principle in some bid protest cases. Pl. Br. 37-38 (citations omitted). The reasoning, in these cases, is that disappointed bidders are limited, by statute, to recovering bid preparation and proposal costs, therefore, they are unable to seek adequate remedies at law. See, e.g., Hospital Klean of Tex, Inc. v. United States, 65 Fed. Cl. 618, 624 (2005).

At first glance, this reasoning appears attractive. A closer look at Government contracting, however, demonstrates that lost profits and other economic harm are too speculative to rise to the level of irreparable harm, even where protestors are limited to bid preparation and proposal costs. As an initial matter, even if a protester succeeds upon the merits, there is no guarantee they will obtain a Government contract. See, e.g., Keco, 492 F.2d at 1206 ("there is

no assurance that any bidder would have obtained the award since the Government retains, in its discretion, the right to reject all bids without liability."). Furthermore, even if a protestor did have the right to receive a Government contract, there is no guarantee that the contract would last any appreciable amount of time. Unlike contracts between private parties, in nearly every Government contract, including any contract that would flow from the solicitation at issue, the Government retains the right to terminate the contract for convenience, if it is in the Government's interest. E.g., 48 C.F.R. § 52.249-6; AR 43. The termination for convenience clause is particularly salient in this case where the contracting officer has already stated that the solicitation upon which RKR bid no longer reflects the Air Force's needs. AR 1016. Therefore, even if RKR was entitled to a contract award, any "lost profits" as a result of that contract would be completely speculative.

RKR's second claim of irreparable harm, i.e., that it will be a "sitting duck" during re-solicitation, is incorrect. As an initial matter, RKR's allegation that its "proposal" was publicly disclosed by the Air Force is incorrect. Pl. Br. 38. Rather, only RKR's total evaluated cost (per performance period) was disclosed, AR 829, 1969, as required by the A-76 process. See 48 C.F.R. § 52.207-2(c) (Feb 1993) (incorporated into solicitation at AR 38); Revised Supplemental Handbook, OMB Circular A-76 (Oct. 1984), Part I, Chapter 1, para. G.2 and Part I, Chapter 3, para. K.1.b. As explained in detail in Section IV, above, RKR will not be prejudiced by the release of its total evaluated cost because it is undisputed that offerors would bid upon different requirements in a new solicitation and, even if RKR may suffer a competitive disadvantage, the Air Force may choose to alleviate that competitive disadvantage by releasing pricing information

of its competitor. Also, the cases cited by RKR for its "sitting duck" argument[22] are inapposite because they involved the sealed bidding context, where a bidders entire bid is disclosed, rather than just its total evaluated cost. See 48 C.F.R. § 14.402-1 ("Examination of bids by interested persons shall be permitted if it does not interfere unduly with the conduct of Government business.").

Finally, RKR's claim that it will be irreparably harmed by the inability to establish a past performance record based upon this contract is even more speculative than its assertion of lost profits. Aside from the fact that the Government could terminate any contract with RKR if it was in the Government's interest, there is no guarantee that any past performance information generated by this contract would be positive. RKR is essentially asking the Court to find, as a matter of law, that RKR will do a good job on any contract it receives from the solicitation. Such speculation cannot rise to the level of irreparable harm.

Therefore, RKR cannot established irreparable harm and its request for permanent injunctive relief should be denied.

B. RKR Cannot Demonstrated That Its Harm Outweighs The Harm To The Government Or That It Is In The Public Interest To Overturn The Cancellation

As RKR observed in its motion, the public interest is served when the integrity of the procurement system is maintained. Pl. Br. 39. "It is equally clear, however, that a procuring agency should be able to conduct procurements without excessive judicial infringement upon the agency's discretion." Aero Corp. v. United States, 38 Fed. Cl. 237, 242 (1997); (citing Cincom Sys., Inc. v. United States, 37 Fed. Cl. 263, 269 (1997)). This is especially true of cancellation

[22] Pl. Br. 37-38 (citing California Marine Cleaning, Inc. v. United States, 42 Fed. Cl. 281, 292 (1998); Great Lakes Dock & Dredge Co. v. United States, 60 Fed. Cl. 350, 370 (2004))

decisions. Satellite Servs, 2003 WL 21048768, at *6 ("In a negotiated procurement, an agency has broad authority to decide whether to cancel a solicitation; there need only be a reasonable basis for the cancellation. This broad grant of authority extends to the cancellation of solicitations used to conduct A-76 cost comparisons.") (citations omitted) (emphasis added). Agencies must be able to determine their own needs and should not be forced to procure what they do not believe they need. See ABF Freight, 55 Fed. Cl. at 409 ("well settled that the determination of an agency's procurement needs and the best method for accommodating them are matters primarily with the agency's discretion").

If the Court were to overturn this cancellation, it would cause significant harm to the Government because the Court would essentially be telling the Air Force that it must procure what it has already stated it does not need. This would be an "excessive judicial infringement upon the agency's discretion." Aero Corp., 38 Fed. Cl. at 242. Therefore, RKR cannot establish that its harm outweighs the harm to the Government or that overturning the cancellation would be in the public interest. Accordingly, the Court should deny RKR's request for injunctive relief.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court dismiss RKR's complaint for lack of jurisdiction. Alternatively, we request that the Court enter judgment upon the administrative record in favor of the United States, deny RKR's motion for judgment upon the administrative record, and dismiss RKR's complaint with prejudice.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

OF COUNSEL:
Gary R. Allen
Air Force Legal Operations Agency,
Commercial Litigation Division
1501 Wilson Blvd., Suite 600
Rosslyn, VA 22209

/s/ William P. Rayel
WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-0302
Fax. (202) 307-0972

July 31, 2008

Attorneys for Defendant