IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-62C |
| | ) | (Judge Williams) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Defendant, the United States, respectfully submits this opposition to the second motion of plaintiff, RKR Joint Venture, LLC. ("RKR"), for leave to supplement the administrative record. Plaintiff has moved to supplement the record with two declarations of Dale Patenaude, the Vice President of RKR. The First Declaration of Dale Patenaude ("First Patenaude Declaration") and attachments essentially seek to prove that RKR reasonably anticipated the changes in workload that would occur due to AFNETOPs. The Second Declaration of Dale Patenaude ("Second Patenaude Declaration") and attachments essentially seek to prove that the contracting officer's determination that a new solicitation would likely result in more bidders was wrong.

In its motion, RKR has failed to prove that supplementation is appropriate, much less necessary. The two declarations plaintiff seeks to admit, which were created nearly six months after the contracting officer's cancellation decision, and their attachments, are irrelevant to the inquiry before the Court, specifically, whether the Air Force had a rational basis for cancelling the solicitation at issue. Additionally, further supplementation of the administrative record cannot possibly be necessary because RKR stated, before filing the declarations, that it did not

require any further supplementation of the record. Tr. 9:18-21.[1] Therefore, we respectfully request that the Court strike the two declarations of Dale Patenaude, and their attachments, from the administrative record.

## ARGUMENT

### I. It Is Inappropriate To Allow RKR To Supplement The Record With The Declarations And Their Attachments Because The Declarations Were Created After The Contracting Officer's Cancellation Decision And Contain Information Not Before The Contracting Officer When He Made His Decision

This Court's review of bid protests is limited to the administrative record already in existence, "not some new record made initially by the reviewing court." Aero Corp. v. United States, 38 Fed. Cl. 408, 410 (1997) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)). Accordingly, this Court confines its review to the administrative record, i.e., the record that was before the decision maker at the time of the decision. Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000) (citations omitted); Aero Corp., 38 Fed. Cl. at 410. The administrative record should not include materials created or obtained subsequent to the time the agency decided to take the challenged action, since such materials could not have been considered by the agency in making its decision. Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350, 359 (2004) (citation omitted).

Only when the Court cannot conduct meaningful judicial review from the administrative record is supplementation of the record appropriate. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001) (citation omitted); Murakami v. United States, 46 Fed. Cl. 731, 735 (2000) ("[E]xceptions to the general rule against extra-record

---

[1] "Tr. __:__" refers to the transcript of the May 13, 2008 status conference in this case. The relevant pages are attached as Attachment 1

evidence are based upon necessity, rather than convenience, and should be triggered only where the omission of extra-record evidence precludes effective judicial review.") (emphasis added). The administrative record here has already been expanded beyond material and matters that were before the contracting officer. RKR should not be allowed to further create a record that does not reflect the administrative process as it occurred.

The declarations were obviously not before the contracting officer at the time he made his cancellation decision since they were signed in July 2008, nearly six months after the contracting officer's decision. Furthermore the contracting officer did not consider any of the attachments to the declarations, or they would already be in the administrative record. In fact, two of the attachments to the First Patenaude Declaration (Attachments 2 and 5) appear to have been created specifically for this litigation. Other documents, such as the CCR results and SBA profiles attached to the Patenaude declaration, appear to have been printed off the Internet on June 12, 2008. Therefore, it is unclear whether the documents would have been the same in January 2008, even if the contracting officer had consulted them, which he did not. Thus, because none of the declarations, nor their attachments, were relied upon by the contracting officer when he made his cancellation decision in January 2008, the Court should not allow RKR to supplement the record with the documents.

## II. The Court Should Not Allow RKR To Supplement The Record With The First Patenaude Declaration And Its Attachments Because They Primarily Seek To Prove That Reasonable Bidders Would Have Anticipated That The Government's Requirements Would Change, Which Is Not The Standard Of Review In This Case

RKR offers no valid reason to supplement the administrative record with the declarations and attachments it has submitted. The First Patenaude declaration primarily seeks to prove that RKR reasonably anticipated that the requirements for the solicitation would be reduced

dramatically based upon a NOSC-centric initiative. E.g., First Patenaude Decl., ¶¶ 6-8. This, however, is not the standard of review for this case. While 48 C.F.R. § 15.206(e) requires a contracting officer to cancel a solicitation, rather than amend, if changes to the requirements are "so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the substance of the amendment been known to them," this requirement in no way curtails that contracting officer's broad discretion to cancel a solicitation. See Cygnus Corp. v. United States, 72 Fed. Cl. 380, 384 (2006) (quoting TRW, Inc. v. Unisys Corp., 98 F.3d 1325, 1327 (Fed. Cir. 1996)) (a cancellation decision should not be disturbed unless it is "wholly without reason"); accord Aviation Enterprises, Inc. v. United States, 8 Cl. Ct. 1, 19 (1985) (degree of proof required relates to the "latitude given to procurement officials to cancel solicitations"); ; see also ABF Freight System, Inc. v. United States, 55 Fed. Cl. 392, 409 (2003) ("well settled that the determination of an agency's procurement needs and the best method for accommodating them are matters primarily with the agency's discretion"); Satellite Servs., Inc., B-288848.3, 2003 CPD ¶ 88, 2003 WL 21048768, at *6 (Comp. Gen. Apr. 28, 2003) ("In a negotiated procurement, an agency has broad authority to decide whether to cancel a solicitation; there need only be a reasonable basis for the cancellation. This broad grant of authority extends to the cancellation of solicitations used to conduct A-76 cost comparisons.") (citations omitted) (emphasis added).[2] Therefore, even if RKR can prove

[2] Although decisions of the GAO are not binding on this Court, the Court has stated that such decisions can be of great value when considering issues of Federal procurement law. See Park Tower Mgmt., Ltd. v. United States, 67 Fed. Cl. 548, 563 n.29 (2005) (citing Thompson v. Cherokee Nation of Oklahoma, 334 F.3d 1075, 1084 (Fed. Cir. 2003)).

that the contracting officer was incorrect in finding that he was required to cancel the solicitation, that does not mean that his decision to cancel was irrational.

Additionally, the issue in this case is not whether a contract resulting from this solicitation could be modified to accommodate the changes to the Air Force's requirements, but rather the issue is whether it was rational for the agency to cancel the solicitation when its requirements differ from those in the solicitation. See Am. Gen. Leasing, Inc. v. United States, 218 Ct. Cl. 367, 587 F.2d 54, 59 (1978) ("the Government alleges a reasonable basis for cancelling the solicitation, i.e. a revision in specifications . . ."); Aviation Enterprises, 8 Cl. Ct. at 19 (holding a "cancellation based on overstated specifications to be reasonable.") (citation omitted); VSE Corp., B-290452.2, 2005 CPD ¶ 111, 2005 WL 1396999, at *5 (Comp. Gen. Apr. 11, 2005) ("A reasonable basis for cancellation exists and cancellation is appropriate when the solicitation does not accurately reflect the agency's requirements"); Logistics Solutions Group, Inc., B-294604.7, 2005 CPD ¶ 141, 2005 WL 1845177, at *2 (Comp. Gen. July 28, 2005) ("A reasonable basis to cancel exists when, for example, an agency determines that a solicitation does not accurately reflect its needs").

There is no dispute that offerors were not supposed to base their bids upon a NOSC-centric environment. AR 1154. There is also no dispute that the final solicitation referenced a move towards a NOSC-centric environment, id. at 168, but only as an uncertain "long-range goal" whose implementation had been halted. Id. at 1154. Even if bidders reasonably anticipated the changes to the Air Force's requirements, that does not change the fact that the requirements changed and that a change in requirements is a rational basis for cancellation.

RKR relies heavily upon the Court's decision in Hunt Building Co., Ltd. v. United States, 61 Fed. Cl. 243 (2004), in support of its motion to supplement the record with the First Patenaude Declaration. Pl. Mot. 3-4.[3] Hunt Building, however, is inapposite. In Hunt Building, the Court allowed supplementation of the record with declarations and expert testimony based upon the necessity of the declarations and expert testimony to enable the plaintiff to show prejudice, i.e., that plaintiff would have and had a substantial chance of award, if the agency had not relaxed material solicitation terms for another offer. 61 Fed. Cl. at 246-47, 271-72. At this stage in the proceedings, RKR is not attempting to show prejudice. See Pl. Br. 5 ("In the award context, application of the 'prejudice' standard is premature for this motion.").[4] Rather, in the First Patenaude Declaration, RKR is primarily attempting to show that offerors reasonably anticipated that the requirements for the solicitation would be reduced dramatically based upon a NOSC-centric initiative. As noted above, however, this is not the standard of review in this case.

Furthermore, much of the First Patenaude Declaration is simply RKR's position regarding how the Court should interpret the solicitation and other record evidence. E.g., First Patenaude Decl., ¶ 11-12. Such argument belongs in RKR's briefs, if anywhere, not in the

[3] "Pl. Mot. __" refers to the page number of RKR's second motion for leave to supplement the administrative record, filed on July 3, 2008.

[4] "Pl. Br. __" refers to the page number of RKR's partial motion for judgment, filed on July 3, 2008.

administrative record itself.[5] Therefore, the Court should not allow RKR to supplement the administrative record with the First Patenaude Declaration.

III. The Court Should Not Allow RKR To Supplement The Record With The Second Patenaude Declaration And Its Attachments Because They Primarily Seek To Prove That The Contracting Officer's Determination That A New Solicitation Would Likely Result In More Bidders Was Wrong, Which Is Not The Standard Of Review In This Case

In support of its motion to supplement the record with the Second Patenaude Declaration, RKR proves exactly why supplementation is not appropriate. RKR states, "if [the contracting officer's] statement that there were lots of eligible small business communication and IT offerors at the Sheppard meeting is wrong, he has no basis for his analogy that cancellation will result in more offerors on a new solicitation at Keesler." Pl. Mot. 5 (citing AR 1019 ¶ 10) (emphasis added). The standard in a bid protest, however, is not whether the contracting officer's decision was right or wrong, but whether it was "rational." See, e.g., Cygnus, 72 Fed. Cl. at 384 ("The procuring agency need only provide 'a coherent and reasonable explanation of its exercise of discretion and the disappointed bidder bears a 'heavy burden' of showing that the award had 'no rational basis.''") (quoting TRW, Inc. v. Unisys Corp., 98 F.3d 1325, 1327 (Fed. Cir. 1996)).

[5] RKR's conclusory statement that the First Patenaude Declaration "illuminated complex issues and assists the Court in understanding the parties' positions," is unsupported and incorrect. Pl. Mot. 5 (quoting Gentex Corp. v. United States, 58 Fed. 634, 649 (2003)). RKR's basic position in this suit is that offerors were supposed to bid upon one set of "date in time" requirements in the solicitation, but that the solicitation contained requirements that differed from those upon which offerors were supposed to base their bids, i.e., the NOSC-centric initiative. Id. at 15-16. RKR has failed to demonstrate that the Court cannot, based upon the solicitation and any clarifying questions and answers in the record, conduct meaningful judicial review of whether RKR's interpretation of the solicitation (which is, frankly, illogical on its face) is correct. See AR 1154 ("All references to the NOSC-centric initiative were removed from section 7.1, due to funding and manning issues that have halted its implementation . . . Section 7.1 contains the requirements that the service provider must meet").

The question in this case is not whether the contracting officer was correct in determining that more bidders are likely to be interested in competing for the revised requirements, but whether his conclusion was rational. RKR may argue that it was irrational for the contracting officer to assume that businesses that identified themselves as small on the Sheppard site visit list were actually small, or that potential bidders who identified themselves as interested in the Sheppard communications and IT solicitation have the capabilities to bid for the solicitation as a prime contractor. The Government would not agree with such arguments, and would argue that the contracting officer's assumptions were rational, but such arguments by RKR would fit within the standard of review. RKR, however, may not argue that the contracting officer's decision was incorrect, based upon information that the contracting officer did not consider.[6]

Therefore, the Court should not allow RKR to supplement the record with the Second Patenaude Declaration or its attachments.[7]

---

[6] RKR's citation to Savantage Fin. Servs. v. United States, 81 Fed. Cl. 300 (2008) is inapposite. In Savantage, the Court determined that it was reviewing the failure of the agency to take action, in which case the record is less likely to be complete. 81 Fed. Cl. at 310. Here, the Court is unquestionably reviewing agency actions, i.e., generally, the decision to cancel the solicitation and, specifically, the determination that a re-solicitation would likely result in additional bidders. Accordingly, Savantage is not applicable to this case. In this case, if it possesses jurisdiction to do so, the Court may review the contracting officer's actual determination, based upon the information he relied upon, to determine if his decision that re-solicitation would likely result in additional bidders was rational.

[7] The Government also objects to the Second Patenaude Declaration upon the basis that it contains inadmissible hearsay. Second Patenaude Decl. ¶ 9 (description of Sheppard solicitation); id. at ¶ 22 ("I further verified this by calling their CCR point of contact, Webster Sewell, who confirmed my prior knowledge that its experience is in web training development, not in Comm."); id. at ¶ 23 ("I talked to the CCR point of contact, Jill Workman, who verified it does not have COMM/IT experience.").

IV. The Court Should Not Allow RKR To Supplement The Record With The Declarations And Their Attachments Because RKR Has Conceded That These Documents Are Not Necessary To Decide This Case

As noted above, "exceptions to the general rule against extra-record evidence are based upon necessity, rather than convenience, and should be triggered only where the omission of extra-record evidence precludes effective judicial review." Murakami, 46 Fed. Cl. at 735 (emphasis added). Here, RKR conceded at the May 13, 2008 telephonic status conference that it did not need to supplement the record further in order to prevail in this case and that it believed that the record (as supplemented by the two depositions earlier ordered by this Court) provides sufficient evidence to prove that the contracting officer's cancellation decision was irrational. Tr. 9:18-21 ("THE COURT: All right. But from your perspective, we have an adequate record on which to go forward with the litigation? MR. BARTON: Yes, ma'am."). While the Government obviously disagrees with RKR's view that the record in this case supports a legally cognizable claim by RKR, that does not change the fact that RKR has conceded that further supplementation of the administrative record is not necessary. Therefore, the Court should strike the declarations and attachments submitted by RKR.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

OF COUNSEL:
Gary R. Allen
Air Force Legal Operations Agency,
Commercial Litigation Division
1501 Wilson Blvd., Suite 600
Rosslyn, VA 22209

/s/ William P. Rayel
WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-0302
Fax. (202) 307-0972

July 31, 2008

Attorneys for Defendant