**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC<br>A Mississippi Limited Liability<br>Corporation<br>Plaintiff, | §<br>§<br>§<br>§<br>§ | |
| VS. | §<br>§ | NO. 08-CV-00062-MCW<br>Judge Williams |
| THE UNITED STATES<br>Defendant. | §<br>§ | |

**<u>RKR'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD</u>**

TO THE HONORABLE JUDGE OF THE U.S. COURT OF FEDERAL CLAIMS:

Plaintiff RKR JOINT VENTURE, LLC ("RKR") files this its Reply to Defendant's Opposition (Dkt #47) to RKR's Second Motion for Leave to Supplement the Administrative Record, Dkt #40, and states as follows:

I. INTRODUCTION

Much of the government's Opposition is rooted in its mischaracterization of RKR's position and interpretation of the solicitation, *see e.g.*, Dkt #47 at 3-5 & 7 n.5, a matter that will be treated extensively in RKR's forthcoming Response and Reply to Defendant's Cross-Motion and Response (Dkt #45). Ignoring the bifurcated nature of this case, the government has also argued in its Cross-Motion and Response that unlawful corrective action (here: cancellation) can be used as a trap door to bar any judicial review of an underlying protest of a proposed award, and that same unlawful corrective action can also prevent the protestor from showing prejudice as a result of the underlying proposed award. Dkt #45 at 15-17 & 38-41 (Defs. arguments on the jurisdictional and prejudice issues). It concludes this illogical argument noting that a protestor cannot show prejudice for an unlawful corrective action either, which would illogically deny relief for

unlawful corrective action. *Id*. In short, the government argues (1) that cancellations of RFPs are not reviewable, *id*. at 15; and (2) that a protestor can only show prejudice caused by a cancellation when the agency has agreed that the protestor is prejudiced by the underlying protest of a proposed award. *Id*. at 39 (citing own administrative appeal findings to argue lack of prejudice).

Obviously, the government' position is grossly unrealistic and unlawful. These errors infect its entire Opposition to RKR's supplementation, and because of them, the government erroneously now argues that RKR cannot supplement the record to show prejudice or for any other purpose.

The government asserts the two declarations of Dale Patenaude are inappropriate and unnecessary. Neither assertion is correct. The statements are directly relevant to the issue of cancellation because they address the inadequacy of the Contracting Officer's ("CO") Determination and Findings ("D&F"), A1016-1021. Additionally, the government misconstrued, took out of context, and misled the Court about RKR's statement about the need for further supplementation.[1] Defendant's Opposition to Plaintiff's Second Motion for Leave to Supplement the Administrative Record ("Def. Opp."), 1-2, 9.

[1] As such it is wasteful of type and pulp, but, most importantly, the Court's time. Most of its argument is a repetition of its Motion to Strike Plaintiff's Declarations, June 24, 2008, ("Mot.Strk.") (Dkt #37) which preceeded the controlling hearing on supplementation of July 1, 2008. Mot. Strk., 5-6.

## I. The Two Declarations Of Dale Patenaude With Attachments Are Appropriate Supplementation Of The Administrative Record

*A. The Record is Not Restricted to the CO's Self-Serving Definition of Reliance*

The declarations are offered as necessary because the CO's assertions in the D&F cause confusion with, and RKR would argue, are intended to conflict with the balance of the administrative record, particularly the solicitation, and must conflict and override the remainder of the record if the government is to prevail.

An agency decision lacks a rational basis where "the agency entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Both declarations are made specifically to show the important aspects of problems that were known to the CO that have been excluded from the administrative record; to present evidence that was before the agency that the CO has excluded from his D&F; and/or to demonstrate the implausibility of the CO's reasoning given the facts available to him. The government would restrict the rational basis analysis to "reliance," i.e., those materials the CO claimed to rely on. *Cf*. Dkt #47 at 3. That is wrong, because it permits the CO and the government to designate a self-serving record that does not reflect all of the facts that they were or were required to have been aware of.

This Court does not apply an iron-clad rule automatically limiting its review to the administrative record. Instead, the court permits:

> "supplementation of the administrative record:
> (1) when the agency action is not adequately explained in the record before the court;

> (2) when the agency failed to consider factors which are relevant to its final decision;
> (3) when an agency considered evidence which it failed to include in the record;
> (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly;
> (5) in cases where evidence arising after the agency actions show whether the decision was correct or not; ...
> (8) in cases where relief is at issue, especially at the preliminary injunction stage."

*Protection Strategies, Inc. v. U.S.*, 76 Fed. Cl. 225, 233-234 (2007).

"While a disappointed bidder does not have the right to have a federal court substitute its judgment for that of the administrative agency, the bidder does have the right to introduce appropriate evidence to allow the court to determine whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706." *Graphicdata, LLC v. United States*, 37 Fed. Cl. 771, 779-780 (1997).

> "[T]he judge should determine whether the agency action before the court is susceptible to a record review. If the answer is yes, the judge must limit review to the record. If the answer is no, however, the judge should recognize the long lineage of cases recognizing the need to supplement the administrative record in certain circumstances. As Judge Bruggink explained in *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 349 (1997) (citation omitted) (emphasis added):
>
>> [T]he primary focus of the court's review should be the materials that were before the agency when it made its final decision. This is a presumption necessitated by the limited nature of the court's inquiry. As a practical matter, however, in most bid protests, the "administrative record" is something of a fiction, and certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review. This is true in the contract award context if for no other reason than that, due to the absence of a formal record, the agency has to exercise some judgment in furnishing the court with the relevant documents. *In order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence, and*

> *possibly limited discovery aimed at determining, for example, whether other materials were considered, or whether the record provides an adequate explanation to the protester or the court as to the basis of the agency action, It follows that discovery as well as the breadth of the court's review has to be tailored in each case. Whether testimony is needed to frame the issues is likewise dependent on the particular circumstances.* Consequently, this court has adopted a flexible approach both in putting together the evidence that will be considered and in discovery, balancing the limited nature of the court's review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry.
>
> The facts of the case at bar illustrate why the Court of Federal Claims and the district courts have allowed for supplementation of the administrative record.

*Graphicdata*, 37 Fed. Cl. at 780. *Also see Cygnus Corp. v. United States*, 72 Fed. Cl. 380, 384 (2006).

Each of the declarations have a direct relationship to the solicitation and its cancellation. As Defendant's precedent shows, if the actions of the CO are "wholly without reason," lack a "reasonable basis," or are "irrational" Def. Opp., 4-5, the cancellation decision should be overturned. The CO's cancellation decision was irrational and the declarations aid the Court's deliberations in reaching that result.

The declarations clarify the record because the CO excluded relevant facts from the record and failed to investigate the facts related to numerous matters in the D&F, as argued herein and in more detail in RKR's Motion for Partial Judgment briefs. By example, the D&F contains only conclusory statements that there would be more bidders with no support for that assertion other than an apples to oranges comparison of the number of attendees at the Sheppard AFB *pre-bid conference* (ten) with the number of *actual bidders* five years prior at Keesler AFB (two). D&F, A1019-1020. The actual

number of number of attendees at the Keesler AFB *pre-bid conference* was twenty. Second Decl. of Dale Patenaude at ¶ 7 & Exh. 4-1 (list of pre-bid conference attendees showing twenty distinct small businesses).

Although this finding relating to number of bidders by the CO comes late in the D&F there is an emphasis to it that makes it clear the CO considered this had greater importance to his decision than most of the other reasons he asserted. This theme was continued in Defendants cross motion, Dkt #45 at 7 & 29-31. It is a fact that there is no support beyond a conclusory statement that there “are likely” (speculative in itself) to be more bidders. A1020. Whatever the importance, the CO ignored facts he had personal knowledge of that would disprove his assertion, and instead produced an analysis of the attendees at the pre-bid conference in order to allegedly justify his decision. D&F Attach. 9. As argued by RKR in its motion for partial judgment, Dkt #41 at 29-32 and Dkt #41 Appx. Exh. 4 (Second Decl. of Dale Patenaude), the CO knew, as a result of a direct meeting with RKR Joint Venture members, that RKR comprised four of the small businesses on the list and one of the large bidders, which then made up only one bidder. The D&F and its attachments contain no analysis of the attendees, only a recitation of their names and self-identified status. *See generally*, Second Patenaude Declaration for analysis.

That, along with other things, such as claims of a need for new property lists with no detail of what was needed, A1017, makes the cancellation decision irrational, unreasonable and arbitrary and capricious, as is argued more fully in RKR’s Motion for Partial Judgment. Both declarations provide greater insight into facts behind unsupported allegations in the D&F. Though it is true that unsupported conclusory statements are

insufficient to sustain the CO's decision to cancel as a matter of law, and though the declarations are offered, to some extent, to fill that void and present the contrary facts that existed at the time of the CO's D&F, RKR cannot assume that will be the Court's decision. Thus, RKR legitimately offers the declarations in rebuttal to the D&F, and more specifically to rebut the government's argument that the record to be analyzed under the rational basis standard should be limited to what the CO claimed to rely on. That will aid the Court's ability to have an administrative record that fully reflects the facts applicable to the case.

Further, Defendant's arguments to exclude the declarations lack merit. The Defendant admits that supplementation of the administrative record is admissible for numerous reasons. Def. Opp., 2-3. RKR argued just those reasons, and others, in its motion to supplement, Dkt #40. If the Court does not summarily reject the cancellation as arbitrary and capricious because the D&F is deficient in supporting conclusory statements contained therein, then the Court, by necessity should favor consideration of additional evidence to enhance judicial review, as argued in RKR's motion to supplement. Dkt #40 at 5-6.

This case presents a conundrum, which was intensified following the deposition of the CO, who was unable to recall many details of his D&F. The specific reference here is to the CO's inability to recall details about the source evidence of his bidders list finding in his D&F. *See e.g.*, Depo. of Ron Mortag at 15:7-10 (unable to recall number of attendees at Shepard pre-bid conference); 16:11-20 & 18:16-20 & 19:5-10 (did not evaluate potential of attendees to bid or whether they were related); 17:11-18 (can't recall number of Keesler attendees for Little BOS relative to Big BOS). By contrast, Major

General Maluda, who, in the face of the knowledge that someone wanted to cancel the solicitation, stuck firm to his position as the expert of AFNETOPS in the Air Force that the solicitation met the needs of Air Force and that there was no significant change to cause cancellation. Depo. of Maj. Gen. John W. Maluda at 138-143. Maluda's statement would seem to represent a finding by the agency itself that RKR was prejudiced *by the cancellation*, satisfying even the government's absurd position on the prejudice issue taken in its cross-motion and response, *cf*. Dkt #45 at 38-41.

The foregoing illustrates why the administrative record is not an "immutable boundary that defines scope of case." *Graphicdata, LLC v. United States*, 37 Fed. Cl. 771, 780 (1997). *Also see*, 5 U.S.C. § 706; 28 U.S.C. § 1491(b). If General Maluda's statement is admissible to show prejudice and the irrationality of the cancellation generally, due to the government's switch in interpretations of the solicitation, then these two declarations are as well. That is particularly true when, as here, the CO's omission of facts in his deposition testimony (itself ordered by the Court after hearing on March 19, 2008 to supplement the record) just reinforces a record that does not contain all of the facts that were before the agency.

*A. Additional Specific Reasons Why The First Patenaude Declaration Should Be Added to the Record*

The first declaration is enlightening for the very reason the government notes, in that it shows that the there were no changes that were "so substantial as to exceed what prospective offerors reasonably could have anticipated. . ." Def. Opp., 4. If prospective offerors were not aware of the surrounding circumstances of this solicitation, they would not be qualified to bid on the solicitation in the first place. Mr. Patenaude established that his statement was that of one who would be considered as an expert in his field and it

clearly points out that a qualified bidder fully understood the intricacies of the solicitation and there were no "changes to the requirements [that] are so substantial as to exceed what prospective offerors reasonably could have anticipated," *Id*., and that no modifications are reasonably necessary to accommodate the requirements of either the solicitation or the agency's needs. The foregoing shows the CO's decision to be irrational. Again, General Maluda made it clear the agency's requirements do not differ from the solicitation and that RKR could be performing just what the agency needed last year and today. Depo. of Maj. Gen. John W. Maluda at 138-143.

The government's argument rings hollow regarding the "NOSC-centric environment" [as a] "long-range goal." Def. Opp., 5, because it mischaracterizes RKR's position. *See* Dkt #41 at 8 (Figure 1). The only logical reason for the almost eleven year solicitation performance period is to have a single contractor to assure continuity for the anticipated changes inherent in implementing configuration changes to the network over the "long-range." This logic is illustrated in the first Patenaude declaration analysis of the long range planning that went into RKR's bid preparation, because the solicitation retained, in Paragraph 7.1.4.3, A0147,[2] a recognition and necessity of the bidder to be able to implement future configuration changes to the network, even though the future changes themselves were not requirements.[3] The government attempts to confuse the Court as to the difference between a change to a future need and a change to a requirement of the solicitation. The government apparently seeks to cast all future

---

2 Although the CO does not identify continuity specifically, he alludes to expected changes over the length of the contract and how that fits into the contracting mechanism of moving to a firm fixed price contract after two years of contract performance.

3 Defendant's assertion that RKR argues that "the solicitation contained requirements that differed from those upon which offerors were supposed to base their bids, i.e., the NOSC-centric initiative," is incorrect. *See* Dkt #41 at 8 (Figure 1).

changes as requirements of the solicitation, and that reasoning error infects its entire analysis. *Cf*. Def. Opp. at 5 ("that does not change the fact that the requirements changed").

Contrary to the government's assertion, Def. Opp., 6, *Hunt Building Co., Ltd v. United States*, 61 Fed. Cl. 243 (2004), stands for the proposition that supplementation of an administrative record is a proper action if the Court deems it necessary under the case law standards set forth above in this reply. The government's argument does not alter support for supplementation under the circumstances of this case. In any case, the government's argument regarding prejudice is deeply flawed for the reasons given in the Introduction to this reply, *supra*, at 1-2. *See also*, RKR's forthcoming Response and Reply.

B. *Additional Specific Reasons Why The Second Patenaude Declaration Should Be Added to the Record*

Defendant mischaracterizes RKR's arguments on the "more bidders" issue as something other than a claim that the CO's cancellation decision was not rational. RKR stands by its argument. "No basis" for something, in this case no basis that a new solicitation will result in more bidders, as argued by RKR, makes the resulting D&F decision irrational. However, RKR will not be confined to a self-serving record produced by the government that excludes facts regarding pre-bid meetings that the CO had personal knowledge of in order to prove its point.

The second Patenaude declaration and its attachments show the true facts regarding potential bidders as opposed to the CO's D&F unsupported speculation that the number of pre-bid conference attendees at Sheppard AFB somehow showed more bidders would show up for a second solicitation of the requirements of the contested solicitation.

The D&F assertions regarding pre-bid conference attendees can either be rejected as speculative and unsupported by facts or because the second Patenaude declaration clearly shows the facts to be other than the speculation of the CO in his D&F, or both.

If the CO bases his D&F on incomplete data because he chose not to confirm the status of the attendees with facts that existed at the time of his deliberations on the D&F, that is an unreasonable, irrational and arbitrary and capricious decision. The cancellation of this solicitation, especially with it being valued at approximately fifty five million dollars over approximately eleven years calls for more than mere speculation of more or less bidders—when the CO was personally aware that at least five of the attendees were to be a joint venture. *See* Second Patenaude Declaration at ¶ 21 (CO was made personally aware of RKR's joint venture composition in conference with RKR members).

The government's footnote that the second Patenaude declaration contains some inadmissible hearsay is incorrect. Those portions of the declaration to which the government objects are not hearsay. They are not offered to prove the truth of matter asserted. They are only offered for the purpose of showing that the statements were made to Mr. Patenaude. *See* Fed. R. Evid. 803(1) (present sense impression – affidavit was made soon after calls were conducted to further verify the analysis the government's self-authenticating Contractor Central Registry database had already shown to be correct); Fed. R. Evid. 807 (residual exception). Whatever weight they might have can be determined by the Court in its deliberations. The primary evidence is presented in the form of self-authenticating documentary attachments to the declaration that offer information regarding the status of the businesses in question. The portions of the declaration to which the government objects merely further confirm those findings.

It is obvious from the second Patenaude declaration that the limited, conclusory statement of the CO that more bidders are anticipated based on the pre-bid conference attendee list at Sheppard AFB was not supported with anything other than speculation, was not reasonably made by the CO and is irrational.

The declarations of Dale Patenaude should be admitted as supplementation to the administrative record for the reasons argued herein and in RKR's second motion to supplement.

II. The Government Mischaracterizes Counsel's Statement in the May 13, 2008 Status Conference That No Further Record Supplementation Was Conceded.

The government misconstrued, took out of context, and misled the Court about RKR's statement about the need for further supplementation. Def. Opp., 9.

The Court clearly stated in the May 13, 2008 hearing that "the Court is ordering both of you to file anything you want to supplement the administrative record completely by June 13, 2008." May 13, 2008, Tr. 27:9-12. This was contained in the materials presented to the Court in Defendant's own Motion to Strike Declarations, June 24, 2008. In the July 1, 2008 hearing on supplementation of the administrative record, RKR made clear that it had further supplementation for the administrative record as evidenced by its June 13, 2008 filings. All issues regarding the current state of supplementation were heard by the Court on July 1, 2008. The Court rejected, without prejudice, two declarations addressing the issues addressed in the two Patenaude declarations now contested by Defendant. July 1, 2008 Hearing Transcript, ___:____.[4] It was clear in that hearing that RKR had further supplementation and that any prior comments by RKR

---

[4] As of the deadline to file this Reply, the transcript of the July 1, 2008 hearing had not been prepared. RKR will advise the Court of the page references when the transcript becomes available.

counsel regarding supplementation were irrelevant and regarded as such by the Court. July 1, 2008 Hearing Transcript, ___:____. No mention was made of any limitation related to refiling declarations.

III. Conclusion and Request for Relief

RKR requests that the Court grant its motion for leave to supplement, Dkt #40, at its earliest convenience. RKR is available for a hearing prior to the August 21 deadline to file its Response and Reply on the Motion for Partial Judgment. If the Court deems hearing unnecessary, or if a hearing cannot be scheduled before that time, or, RKR requests that the Court promptly decide the matter on the briefs.

DATED August 11, 2008.

Respectfully submitted,

/s/

David F. Barton, Attorney-in-Charge
State Bar No. 01853300
**THE GARDNER LAW FIRM**
745 E. Mulberry Avenue, Suite 100
San Antonio, Texas 78212-3149
Telephone: (210) 733-8191
Telecopier: (210) 733-5538
E-Mail: dfb@tglf.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded in compliance with the Federal Rules of Civil Procedure to all counsel of record as set out below, on this the 11th day of August, 2008, as follows:

Will Rayel
Trial Attorney
National Courts Section
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., NW, Room 12100
Washington, DC 20530 (20005 for FedEx)
phone: (202) 616-0302
facsimile: (202) 307-0972

***VIA E-FILING***

________/s/__________________________
David F. Barton