No. 08-62C
(Judge Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

RKR JOINT VENTURE, LLC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS, AND IN THE ALTERNATIVE, CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-0302
Fax. (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

Gary R. Allen
Air Force Legal Operations Agency,
Commercial Litigation Division
1501 Wilson Blvd., Suite 600
Rosslyn, VA 22209

September 4, 2008

# TABLE OF CONTENTS

**PAGE(S)**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. This Court Does Not Possess Jurisdiction To Entertain RKR's Challenge To The Cancellation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. The Decision Of The Air Force To Cancel The Solicitation Was Rational . . . . . 5

A. Because The Solicitation No Longer Accurately Reflects The Requirements Of The Air Force, The Decision To Cancel The Solicitation Was Rational . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1. RKR's Interpretation Of The Solicitation Is Unsupported By The Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2. RKR's Misapplies 10 U.S.C. § 2461(a)(2) In Arguing That AFNETOPs Did Not Result In A Change In Requirements . . . . 11

3. The Changes Due To AFNETOPs Are Sufficiently Definitized To Allow The Air Force To Conclude That There Has Been A Significant Change In Requirements . . . . . . 13

4. The Contracting Officer's Determination That Cancellation And Re-Solicitation Would Likely Increase The Number Of Bidders Was Rational . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B. The Contracting Officer Had A Rational Basis For His Determination To Cancel The Solicitation Based Upon A Change In Requirements And/Or Evaluation Criteria That Required Him To Amend The Solicitation And Seek New Proposals, And Substantial Concern That Amending The Solicitation And Obtaining New Proposals Would Be Illegal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1. The Contracting Officer Had A Rational Basis For His Determination That There Was A Significant Change In Requirements That Required Him To Amend The Solicitation And Seek New Proposals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2. The Contracting Officer Had A Rational Basis For His Determination That The Solicitation Would Need To Be Amended To Add New Source Selection Criteria Required By Law . . . . . . . . . . 17

3. The Contracting Officer Had A Rational Basis For His Determination That There Was Substantial Concern That Amending The Solicitation And Obtaining New Proposals Would Be Illegal . . . . . . . . . . 18

III. RKR's Challenge To The Air Force's Cost Comparison Or Tentative Decision To Implement The MEO Is Moot . . . . . . . . . . 19

IV. RKR Is Not Entitled To Any Relief At This Stage, Even If The Court Determines That The Cancellation Was Irrational, Because RKR Has Not Proven Prejudice . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . 20

Attachment 1: Department of Defense Competitive Sourcing Program Policy During Times of Military Mobilization or Declared War

Attachment 2: GAO Report: Department of Defense Pilot Authority for Acquiring Information Technology Services under OMB Circular A-76

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Am. Gen. Leasing, Inc. v. United States,
218 Ct. C 587 F.2d 54 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

Aviation Enterprises, Inc. v. United States,
8 Cl. Ct. 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CCL Serv. Corp. v. United States,
43 Fed. Cl. 680 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Beta Analytics Int'l, Inc. v. United States,
67 Fed. Cl. 384 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cygnus Corp. v. United States,
72 Fed. Cl. 380 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Data Monitor Sys., Inc. v. United States,
74 Fed. Cl. 66 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Great Lakes Dock & Dredge Co. v. United States,
60 Fed. Cl. 350 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Griffy's Landscape Maint. LLC v. United States,
51 Fed. Cl. 667 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

MVM, Inc. v. United States,
46 Fed. Cl. 126 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

SEI Group, Inc.,
B-299108, 2007 CPD ¶ 2007 WL 416047 (Comp. Gen. Feb 6, 2007) . . . . . . . . . . . . . . 5

Satellite Servs., Inc.,
B-288848.3, 2003 CPD ¶ 2003 WL 21048768 (Comp. Gen. Apr. 28, 2003) . . . . . . . . 15

VSE Corp.,
B-290452.2, 2005 CPD ¶ 2005 WL 1396999 (Comp. Gen. Apr. 11, 2005) . . . . . . 11, 16

West Coast Gen. Corp. v. Dalton,
39 F.3d 312 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATUTES AND FEDERAL REGULATIONS**

10 U.S.C. § 2461(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

10 U.S.C. § 2461(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

10 U.S.C. § 2463(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. §1491(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

31 U.S.C. § 1341(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

48 C.F.R. §15.206(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 16

48 C.F.R. §15.206(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

48 C.F.R. §15.306(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

48 C.F.R. § 52.215-1(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Administrative Disputes Resolution Act of 1996, Pub. L. No. 104-320, § 12(a),
10 Stat. 3870 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

National Defense Authorization Act For FY2004, Pub. L. No. 108-136,
117 Stat. 1392, 1444 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

FY 2008 DOD Appropriations Act, Pub. L. No. 110-116, 121 Stat. 1295, 1318 (2007) . . . . . 18

National Defense Authorization Act For Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat.
3, 60-61 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| RKR JOINT VENTURE, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-62C |
| | ) | (Judge Williams) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS, AND IN THE ALTERNATIVE, CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Defendant, the United States, replies to plaintiff's response to our motion to dismiss, and in the alternative, motion for judgment upon the administrative record. Plaintiff, RKR Joint Venture, LLC ("RKR"), has failed, in its moving papers and in its response to our motion to dismiss and motion for judgment upon the administrative record, to establish that this Court possesses jurisdiction to entertain RKR's complaint or that the cancellation was irrational. Therefore, this Court should grant our motion and deny RKR's motion.

ARGUMENT

I. This Court Does Not Possess Jurisdiction To Entertain RKR's Challenge To The Cancellation

RKR argues that the Court simply must have jurisdiction, pursuant to 28 U.S.C. § 1491(b)(1), to entertain a challenge to a cancellation that a protestor deems to be "arbitrary and capricious," but fails to set forth a coherent case as to how the language of the statute supports RKR's argument.

First, RKR argues that the Court possesses jurisdiction to entertain RKR's challenge to the cancellation decision because RKR is challenging a "proposed award." RKR Rep. 11-12.[1] The obvious flaw in this argument is that there is no longer an alleged "proposed award" for RKR to challenge.[2] The alleged "proposed award," i.e., the tentative decision to implement the Most Efficient Organization ("MEO"), was cancelled in July 2007. AR 1024. Furthermore, the solicitation itself was cancelled in January 2008.[3] Id. at 1611.

RKR's suggestion that this leads to a "race between the Court and the [contracting officer]" is unfounded. RKR Rep. 12. In this case, the tentative decision to implement the MEO was cancelled well before RKR filed suit in this Court. AR 1022. In any event, a protestor, unless the selected awardee, would have no basis to object to an agency taking the corrective action of cancelling a proposed award because the protestor's chances of receiving the award could only be increased by such action. Indeed, an unsuccessful bidder is necessarily not prejudiced by a decision not to award a contract. If the agency reevaluates the offerors and determines that the plaintiff is the proper awardee, then the corrective action would obviously

---

[1] "RKR Rep. __" refers to the page number of RKR's response to our motion to dismiss and cross-motion for judgment upon the administrative record and RKR's reply in support of its motion for partial judgment, filed on August 21, 2008.

[2] RKR's argument that it is challenging an "award" is similarly flawed. Id. at 10 n.7. RKR has still cited no authority for the proposition that "an unlawful non-award is necessarily subsumed within the ['award of a contract'] clause" of 28 U.S.C. § 1491(b)(1). Furthermore, RKR has yet to coherently explain its nonsensical proposition that a protestor can object to the "award of a contract" when there is, in fact, no award of a contract.

[3] Before the Court could exercise jurisdiction over RKR's challenge to the tentative decision to implement the MEO, the Court would have to overturn the cancellation. See Section III, below; Gov't Mot. 36-38 ("Gov't Mot. __" refers to a page number of the Government's motion to dismiss and cross-motion for judgment upon the administrative record, filed on July 31, 2008).

benefit plaintiff. If the agency reevaluates the offerors and determines that the original proposed award was correct, the plaintiff can still challenge the new proposed award. If, as in this case, the agency cancels the solicitation altogether, with the intent of re-soliciting, then plaintiff will again have the opportunity to compete for the contract.

Second, RKR argues that it has objected to violations of statutes or regulations. RKR Rep. 18-20. In support of its arguments, RKR alleges that "conduct that is arbitrary, capricious and not in accordance with law violates FAR provisions too numerous to list." Id. at 18 (citation omitted). Oddly, RKR has declined to list even one specific example. This is fatal to RKR's claim because this Court has held, in accordance with the plain language of the statute, that an alleged violation must be "rooted in a specific statute or regulation," not merely an allegation that the agency has acted "arbitrarily." Data Monitor Sys., Inc. v. United States, 74 Fed. Cl. 66, 73 (2006).

In its response/reply brief, RKR has alleged the violation of one regulation, 48 C.F.R. § 15.306(e), but that allegation is frivolous. RKR Rep. 13. Section 15.306(e) of the FAR describes limits upon discussions with offerors. It is not applicable to any other aspect of the procurement. See Griffy's Landscape Maint. LLC v. United States, 51 Fed. Cl. 667, 675 (2001). Therefore, the Air Force could not have violated 48 C.F.R. § 15.306(e) by cancelling the solicitation.[4]

[4] RKR's allegation that language in the solicitation requiring "equity and fairness" confers jurisdiction upon the Court is even more attenuated. RKR Rep. 15. The Court's jurisdictional statute provides the Court with jurisdiction to entertain objections to a "violation of statute or regulation in connection with a procurement," not objections to a "violation of statute, regulation or solicitation term." 28 U.S.C. § 1491(b)(1).

RKR also argues that because the Court has, in the past, analyzed cancellations pursuant to 28 U.S.C. § 1491(b)(1), without regard to a violation of statute or regulation, it must be able to do so in this case. RKR Rep. 9-10. RKR is incorrect. As an initial matter, three of the four cases RKR cites do not support RKR's argument. In ManTech Telecomm. and Info. Sys. Corp. v. United States, the Court did not review a challenge to a cancellation, but rather, it reviewed a challenge to an amendment to the terms of a solicitation after a proposed award had been rescinded. 49 Fed. Cl. 57, 65 (2001). Similarly, in Griffy's Landscape, the Court reviewed a decision to cancel and re-solicit pursuant to a simplified Request for Quotations procedure, rather than a Request for Proposal procedure. 51 Fed. Cl. at 670 (2001). Therefore, in both cases, the plaintiff was objecting to a "solicitation," not simply claiming that a cancellation was arbitrary and capricious.[5] A third case cited by RKR, R.R. Donnelley & Sons, Co. v. United States, is inapposite because it was brought pursuant to the "breach of implied contract" theory, not pursuant to 28 U.S.C. § 1491(b)(1). 38 Fed. Cl. 518, 521 (1997).

In Cygnus Corp. v. United States, 72 Fed. Cl. 380 (2006), however, the Court did review a cancellation decision based upon the arbitrary and capricious standard, even though plaintiff had not proven any violations of statutes or regulations. In Cygnus, however, the Government did not argue that the Court lacked jurisdiction to entertain its claim that the cancellation was arbitrary and capricious, independent of any statutory or regulatory violations, therefore, the Court did not analyze the issue. 72 Fed. Cl. at 383 (the Court's entire jurisdictional analysis

---

[5] The Court in Griffy's Landscape appears to have created some confusion by holding that by alleging an "auction," the plaintiff was alleging a "violation of statute or regulation," but later holding that the FAR no longer explicitly prevents "auctions." Id. at 674-75. Nevertheless, because the plaintiff in Griffy's Landscape was objecting to the terms of a solicitation, the Court did not need to base jurisdiction upon a violation of statute or regulation.

consisting of the statement that "[t]his Court's jurisdiction over bid protest cases is prescribed by the Tucker Act, 28 U.S.C. § 1491(b)(1) (2000), as amended by the Administrative Disputes Resolution Act of 1996, Pub.L. No. 104-320, § 12(a), 10 Stat. 3870, 3874-75."). While the Court is not bound by other decisions of this Court, West Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994), particularly decisions that do not contain analysis of the jurisdictional issue in this case, the Court is bound by the plain language of its jurisdictional statute. See, e.g., Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983) ("In construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress."). Here, RKR cannot possibly be objecting to a solicitation, proposed award or award because the solicitation at issue has been cancelled. Therefore, because RKR has not made a non-frivolous allegation of a violation of a specific statute or regulation, its challenge to the cancellation must be dismissed.

II. The Decision Of The Air Force To Cancel The Solicitation Was Rational

Before turning to the merits of this case, it is important for the Government to correct RKR's distortions of the standard of review in this case. RKR Rep. 7-8. First, cancellations of negotiated procurements are not "disfavored," as RKR claims, id. at 8, whether cancelled before or after an offeror's price is revealed. SEI Group, Inc., B-299108, 2007 CPD ¶ 35, 2007 WL 416047, at *2 (Comp. Gen. Feb 6, 2007) (citation omitted) ("In a negotiated procurement, where one or more of the offerors' prices have been revealed, an agency may properly cancel a solicitation where the record contains plausible evidence or reflects a reasonable possibility that a decision not to cancel would be prejudicial to the government or the integrity of the procurement system."). Rather, the agency is "given a great degree of discretion" in cancelling a

negotiated procurement, "especially where, as in this case, the solicitation explicitly permits the agency to make no award at all." Cygnus, 72 Fed. Cl. at 384 (citation omitted); see also AR 55 (incorporating 48 C.F.R. § 52.215-1(f)(2) into the Little BOS solicitation, which states that the "Government may reject any or all proposals if such action is in the Government's interest.").

One of the cases cited by RKR for its argument that cancellations in negotiated procurements are "disfavored" is inapposite because it occurred in the sealed bidding context. See Great Lakes Dock & Dredge Co. v. United States, 60 Fed. Cl. 350 (2004).[6] The other case cited by RKR, Argencord Mach. & Equip., Inc. v. United States, is even more irrelevant because it does not involve the cancellation of a solicitation, but rather, the untimely challenge to a term of solicitation. 68 Fed. Cl. 167, 176 n.14 (2005)

Furthermore, RKR's argument that the Government has not alleged any prejudice if it would not have cancelled the solicitation is also incorrect. Rather, the Government would have been prejudiced in at least three independent ways if the solicitation was not cancelled. First, as explained in our opening brief, if the Air Force were to amend the solicitation and re-solicit, it has substantial concerns that it would violate both Section 8021 of the fiscal year 2008 Department of Defense Appropriations Act and the Anti-Deficiency Act. Gov't Mot. 35-36; see also AR 1020. Second, the contracting officer determined that more bidders were likely to bid upon a new solicitation, based upon the passage of time and reduction in requirements. AR 1019-20; Gov't Mot. 29-31.

[6] We also note that the Court in Great Lakes Dock never actually stated that cancellation of a sealed bidding procurement was "disfavored."

Third, the Air Force would be inherently prejudiced by procuring goods and services that it does not need. AR 1017 ("A number of aspects of the solicitation as it exists today does not reflect the current needs of the Air Force"). Both parties agree that offerors were supposed to base their bids upon a non-NOSC-centric environment, and that the Air Force is now moving towards an AFNETOPs environment, with a significantly reduced workload. This alone is a per se rational basis for cancellation because the cancellation allows the agency to obtain only what it needs and allows the offerors bid upon the Air Force's anticipated requirements over the life of the contract, rather than outdated requirements.[7] See, e.g., Am. Gen. Leasing, Inc. v. United States, 218 Ct. Cl. 367, 587 F.2d 54, 59 (1978) ("the Government alleges a reasonable basis for cancelling the solicitation, i.e. a revision in specifications . . ."); Aviation Enterprises, Inc. v. United States, 8 Cl. Ct. 1, 19 (1985) (holding a "cancellation based on overstated specifications to be reasonable.") (citation omitted); VSE Corp., B-290452.2, 2005 CPD ¶ 111, 2005 WL 1396999, at *5 (Comp. Gen. Apr. 11, 2005) ("A reasonable basis for cancellation exists and cancellation is appropriate when the solicitation does not accurately reflect the agency's requirements").

Finally, we note that RKR's assertion that "the discretion of the CO is not implicated" in this protest is incorrect. RKR Rep. 7. Regardless of whether the interpretation of a solicitation

---

[7] In this particular case, the prejudice to the Air Force is even greater, because the contract was supposed to be converted to a fixed-price contract after the second option year and the price for each of the final seven option years could not exceed the estimated cost, at the time of conversion, of each of those years. AR 36-37. If there were no work scope modifications during the first two years, then the estimated cost for the option years, at the time of conversion, would have been estimated cost of the successful bid. AR 10-22, 232. Therefore, if bidders are not bidding upon an AFNETOPs environment, with its significantly reduced workload, then the potential price of the option years is increased.

implicates the contracting officer's discretion, other aspects of the contracting officer's decision most certainly do implicate his discretion, including, but not limited to: 1) the contracting officer's determination that more than two bidders would be likely to bid upon a new solicitation; 2) the agency's technical analysis of the change in requirements, see Section II.A.3, below; and 3) the cancellation determination itself. E.g., Cygnus, 72 Fed. Cl. at 384.

A. Because The Solicitation No Longer Accurately Reflects The Requirements Of The Air Force, The Decision To Cancel The Solicitation Was Rational

1. RKR's Interpretation Of The Solicitation Is Unsupported By The Record

RKR's main argument, with respect to the merits, is that the Government misinterpreted the solicitation in determining that AFNETOPs has resulted in a change in requirements. RKR's argument, however, fluctuates between merely unsupported by the record and downright nonsensical. At one point, RKR appears to concede that a NOSC-centric initiative was not a part of the requirements of the solicitation. RKR Rep. 5 ("it is clear in the context of this case that AFNETOPs or NCC Reengineering are not requirements of the PRD."). RKR also concedes that AFNETOPs will cause a significant change to the workload of the Keesler Network Control Center, which is a significant part of the solicitation. E.g., RKR Mot. 23[8]; AR 1596-98. Therefore, since the Air Force is now moving towards an AFNETOPs environment, and AFNETOPs is expected to reach final operational capacity for the entire Air Force by December 31, 2010 (well within Little BOS's anticipated performance period), AR 22, 1407, the only logical conclusion, based upon RKR's own admissions, is that the requirements of the solicitation have changed.

---

[8] "RKR Mot. __" refers to the page number of RKR's motion for partial judgment filed on July 3, 2008.

Unconstrained by logic, however, RKR argues to the contrary. In a tongue-twister of an argument, RKR alleges that a "change in a future change is not the same as a change in a solicitation requirement." RKR Rep. 5. RKR has conceded that performing in a NOSC-centric environment is not a requirement of the solicitation and that an AFNETOPs environment will result in a reduced workload, yet it somehow makes the nonsensical claim that because AFNETOPs is a "change to a future change," it is not a change in requirements. RKR expands upon its position by stating:

> Instead of making the relevant comparison between future changes not included in the solicitation as requirements from the time the solicitation was issued until the time it was cancelled, i.e., between NCC Reengineering and AFNETOPS, the government makes an irrelevant comparison between AFNETOPS and the solicitation requirements.

RKR Rep. 19 (emphasis added). With this statement, RKR actually criticizes the Air Force for comparing its current needs for a long-term communications and IT contract at Keesler, with the actual solicitation requirements. To determine whether the solicitation requirements have changed, this is the only logical comparison the Air Force could have made.[9] As such, RKR's arguments on this score are nonsensical and should be rejected.

At another point in its response/reply brief, however, RKR appears to argue that offeror's were required to perform in a NOSC-centric environment, even though it was not a part of the solicitation's "requirements," upon which offerors were supposed to base their bids. See id. at 20 ("Indeed, the whole point of separating future changes from solicitation requirements, while

[9] RKR's statement also highlights the irrelevance of its argument that there was no difference between AFNETOPs and NCC Reengineering at the base level. The solicitation's requirements did not include NCC Reengineering, so any comparison between AFNETOPs and NCC Reengineering is irrelevant.

retaining a necessity to implement future changes") (emphasis added). Accordingly, despite its protestations to the contrary, id. at 5, RKR appears to be arguing that the solicitation contains two sets of requirements: 1) the requirements upon which offerors were expected to bid (non-NOSC-centric); and 2) the requirements the offeror would be expected to meet (NOSC-centric). RKR describes this dual sets of requirements as a "date-in-time" or "snapshot-in-time" approach. Id. The administrative record, however, proves that this interpretation is impossible.

Offerors for the Little BOS solicitation were not instructed to base the communications and IT section of their bids upon "date-in-time" or "snapshot-in-time" requirements. Rather, in response to a bidder question, offerors were explicitly informed that "Section 7.1 [of the PRD] contains the requirements that the service provider must meet." AR 1154 (emphasis added). Bidders were only supposed to bid upon "date-in-time" requirements to the extent that Section 7.1 of the PRD reflected the requirements at the "date in time" of the solicitation. No provision was made in the solicitation for two different sets of communication and IT requirements.

If Section 7.1 required that the service provider staff a NOSC-centric environment at some point, then both RKR and the MEO should have based their staffing plans upon a NOSC-centric environment, whenever it was anticipated that the NOSC-centric initiative would be implemented. The Air Force, however, was explicit that all references to a NOSC-centric initiative were removed from Section 7.1 of the PRD because "funding and manning issues have halted its implementation." Id. In otherwords, the NOSC-centric initiative, while remaining a "long-range goal," was too uncertain to be included as a requirement of the solicitation. See id. Therefore, RKR's argument that performing in a NOSC-centric environment was a solicitation

requirement, in the form of a "configuration change,"[10] but not a requirement upon which offerors were supposed to base their bid, is unsupported by the record.

2. RKR's Misapplies 10 U.S.C. § 2461(a)(2) In Arguing That AFNETOPs Did Not Result In A Change In Requirements

In support of its argument that AFNETOPs did not change the solicitation's requirements, RKR cites to 10 U.S.C. § 2461(a)(2), which reads, "A function that is performed by the Department of Defense and is reengineered, reorganized, modernized, upgraded, expanded, or changed to become more efficient, but still essentially provides the same service, shall not be considered a new requirement." RKR Rep. 2, 5. RKR has offered no basis for this Court to consider that argument. First, RKR has presented no authority for the proposition that the Government may only cancel a solicitation when there has been a "new requirement," pursuant to 10 U.S.C. § 2461(a)(2). Rather, examples of when it is rational to cancel a solicitation include situations such as: 1) a "revision in specifications," Am. Gen. Leasing, 587 F.2d at 59; 2) "overstated specifications," Aviation Enterprises, 8 Cl. Ct. at 19; and 3) "the solicitation does not accurately reflect the agency's requirements." VSE, 2005 WL 1396999, at *5. Furthermore, 48 C.F.R. § 15.206(a) requires that the Government amend a solicitation when it "changes its requirements," not when it creates a "new requirement."

Simply because communications and IT services in an AFNETOPs environment is not a "new requirement" for Keesler AFB, as defined in 10 U.S.C. § 2461(a)(2), does not mean that

[10] As we noted in our opening brief, "configuration changes" are changes to the network, not changes to staffing. Gov't Mot. 19 n.11 (citing AR 148). Therefore, the requirement to "implement configuration . . . changes" refers to the requirement to perform "configuration of network servers, routers, [etc.]." AR 147-48. In otherwords, the requirement to "implement configuration changes" is a requirement to make changes to the physical network as directed by the Air Force, not reduce staffing based upon a NOSC-centric initiative.

the requirements in the solicitation have not been "changed" or "revised." The absurdity of RKR's position is demonstrated by a closer examination of the language of 10 U.S.C. § 2461(a)(2), which states that when a function is "expanded . . . but still essentially provides the same service," it is not a "new requirement." According to RKR's position, if the Air Force was conducting an A-76 study for lawn-keeping services at a base and, during the study, the base was expanded to include new lawn areas, such that the workload of the service provider would double during the life of the contract, the Air Force would be precluded from amending or cancelling the solicitation, because there was no "new requirement." Under the law, however, in our lawn-keeping hypothetical, the Air Force would actually be required to amend (and possibly cancel) the solicitation, based upon the expansion of the services, because the requirements had "change[d]" and the additional lawn area would not be maintained without an amendment 48 C.F.R. § 15.206(a), (e).

Second, RKR's reliance upon 10 U.S.C. § 2461(a)(2) is misplaced because that statutory provision is not intended to be for the benefit of bidders on contracts, but rather, the instruction in the statute is for internal Government use. RKR has presented no authority for the proposition that 10 U.S.C. § 2461(a)(2) was intended to redefine the term "requirement" as used in 48 C.F.R. § 15.206 and the precedent of this Court and the GAO. Rather, an examination of 10 U.S.C. § 2461(a)(1) demonstrates that 10 U.S.C. § 2461(a)(2) was enacted to prevent Department of Defense ("DOD") components from modifying an existing function being performed by DOD civilian employees, calling it a "new requirement," and then contracting out the work without performing an A-76 cost study. Section 2461(a)(1) sets forth the conditions a component within DOD must meet before it can "convert" a function from agency personnel to a contractor, i.e.,

the A-76 process. A DOD component, however, cannot, by definition, "convert" an entirely "new requirement" to contractor work. Accordingly, the restrictions in 10 U.S.C. § 2461(a)(1), by their terms, do not apply to a new requirement and, at the time of the contracting officer's cancellation decision, a DOD component could contract the new requirement without performing an A-76 study.[11]

Therefore, 10 U.S.C. § 2461(a)(2) has no bearing upon whether AFNETOPs has changed the requirements of the Little BOS solicitation.

3. The Changes Due To AFNETOPs Are Sufficiently Definitized To Allow The Air Force To Conclude That There Has Been A Significant Change In Requirements

In our opening brief, we stated that "both General Lord and AETC's technical analyst believe that AFNETOPs has been definitized sufficiently to allow them to conclude that changes to the requirements of the solicitation will be significant." Gov't Mot. 24 (citing AR 948, 1345-46). In response, RKR alleges that "General Maluda has not concluded that. [citation omitted] General Maluda's answer as to what might change is decidedly vague and insufficient to support cancellation." RKR Rep. 22 (citations and emphasis omitted). RKR, however, distorts both General Maluda's testimony and the relevance of General Maluda's testimony in this case. As an initial matter, General Maluda did conclude that AFNETOPs has changed the solicitation requirements going forward:

> Q. Moving into an AFNetOps more centralized environment, would either MEO or RKR be overstaffed?

[11] We note that on January 28, 2008, title 10 was amended to require that new functions be performed by civilian employees, rather than contractors, before any public-private competition may be conducted. 10 U.S.C. § 2463(c)(1); National Defense Authorization Act For Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3, 60-61 (2008).

> A. I think they would both be overstaffed. But again, I don't have knowledge of what those new requirements would specifically be at Keesler Air Force Base. But I'm confident based on what we are doing in AFNetOps today versus what we were doing a year or two years ago the requirements are going to be less.

Maluda Depo 155:1-11 (emphasis added). The conclusion of General Maluda is in accord with the conclusions of General Lord, the AETC technical analyst, and RKR itself, e.g., AR 1596-98, that AFNETOPs will significantly affect workload in the Network Control Center at Keesler.

Furthermore, even though they support the Government's case, General Maluda's opinions regarding changes based upon AFNETOPs are wholly irrelevant. General Maluda had nothing to do with the cancellation decision. Maluda Depo 111:7-11, 111:16-22. His role as the administrative appeal authority was limited to deciding whether RKR's administrative appeal had merit. E.g., id. at 103:10; AR 1691. The analyses regarding the anticipated changes due to the AFNETOPs were performed by the AETC Technical analyst and General Lord. AR 948, 1345-51. The AETC technical analyst laid out exactly what areas of the solicitation "would be impacted" by AFNETOPs. Id. at 1346-49 (emphasis added). RKR's apparent suggestion that AFNETOPs is not sufficiently definitized to support cancellation amounts to no more than second guessing the technical judgment of the Air Force, to which this Court affords the highest deference possible. Cf. Beta Analytics Int'l, Inc. v. United States, 67 Fed. Cl. 384, 395 (2005) ("The evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of the procurement officials, and thus reviewing courts give the greatest deference possible to these determinations."). In any event, RKR's whole argument is flawed, because changes in requirements need not be definitized in order to form a sufficient

basis for cancellation. See Gov't Mot. 28-29 (citing Satellite Servs., Inc., B-288848.3, 2003 CPD ¶ 88, 2003 WL 21048768, at *6 (Comp. Gen. Apr. 28, 2003)).

4. The Contracting Officer's Determination That Cancellation And Re-Solicitation Would Likely Increase The Number Of Bidders Was Rational

RKR argues that the contracting officer's determination that a new solicitation would likely result in more bidders was irrational because the contracting officer compared the number of attendees at a recent site visit for a similar communications and IT solicitation (10 attendees) with the number of bidders for the Little BOS solicitation (two). RKR Rep. 25. RKR is incorrect. At no point did the contracting officer state that he believed that all ten attendees at the Sheppard site visit would actually bid upon a solicitation. Rather, the contracting officer rationally determined that with ten companies at a pre-bid site visit for a similar communications and IT study, and the fact that both studies' requirements were going to be significantly reduced, it is likely that there would be more than two bidders on a new Little BOS solicitation. See AR 1021 ("Even if cancellation is not mandatory under FAR 15.206, in the interest of fairness, I would still recommend cancellation to allow the most number of bidders possible to participate in the competition."). The fact that there were more companies at the Keesler site visit, than the Sheppard site visit, does not make irrational the contracting officer's determination that out of ten potential bidders at the Shepard site visit, more than two may choose to bid. RKR has presented no evidence that there is always, or even generally, a specific percentage of companies at a pre-bid site visit that will likely bid upon the solicitation.[12] Therefore, it was rational for the

[12] We also note that RKR's assertion that there were 20 small businesses at the Keesler site visit is incorrect. RKR Rep. 25. We counted 14 small businesses showing interest in the Little BOS functions: AGJ, K-MAR, Rohmann, GB Tech, Star, EnterComp, Ingenium, Frontier, Spectrum, Kefalas, Dynamic, Lanier, Rothe and Knowledge. Second Patenuade Decl., Exh. 4-1.

contracting officer to determine that it is likely that there would be more than two bidders on a new Little BOS solicitation, especially in light of the GAO's decision in VSE, 2005 WL 1396999, which we expounded upon in our opening brief. See Gov't Mot. 30-31.

B. The Contracting Officer Had A Rational Basis For His Determination To Cancel The Solicitation Based Upon A Change In Requirements And/Or Evaluation Criteria That Required Him To Amend The Solicitation And Seek New Proposals, And Substantial Concern That Amending The Solicitation And Obtaining New Proposals Would Be Illegal

1. The Contracting Officer Had A Rational Basis For His Determination That There Was A Significant Change In Requirements That Required Him To Amend The Solicitation And Seek New Proposals

In our opening brief, we demonstrated that, pursuant to this Court's precedent, even if the Court accepts RKR's view that AFNETOPs has only changed the solicitation's workload by 16 percent, a 16 percent change in workload is a significant enough change to require amendment, pursuant to 48 C.F.R. § 15.206(a). Gov't Mot. 32-33 (citing MVM, Inc. v. United States, 46 Fed. Cl. 126 (2000)). RKR's only argument in response is to allege that our view that the solicitation's requirements have changed is based upon a faulty interpretation of the solicitation. RKR Rep. 27. As we demonstrated in Section II.A.1, above, it is RKR's interpretation of the solicitation that is incorrect. Therefore, the contracting officer had a rational basis for his determination that he was required to amend the solicitation.[13]

[13] RKR also claims that the contracting officer's determination that he was required to amend the solicitation is not entitled to rational basis review because "[e]ither the regulation's test was satisfied, or it wasn't . . ." RKR Rep. 26 n.15. RKR is incorrect. Whether or not the agency would have actually violated 48 C.F.R. § 15.206(a) by not amending the solicitation, the contracting officer rationally determined that not amending the solicitation would run afoul of the law. Attempting to comply with law, in a rational manner, is an inherently rational basis to amend or cancel a solicitation. In any event, as we demonstrated in our opening brief, pursuant to this Court's precedent, amendment was required based upon AFNETOPs. Gov't Mot. 32-33.

2. The Contracting Officer Had A Rational Basis For His Determination That The Solicitation Would Need To Be Amended To Add New Source Selection Criteria Required By Law

In our opening brief, we demonstrated that the Air Force was required to amend the solicitation to add new "mission impact" evaluation criteria and additional health insurance and retirement plan evaluation criteria, pursuant to 10 U.S.C. § 2461(a)(1)(H) and (a)(1)(G), respectively. Gov't Mot. 33-34. RKR alleges that 10 U.S.C. § 2461 does not apply because we are in a time of "war" and/or "national emergency." RKR Mot. 27-28 (citing 10 U.S.C. § 2461[e]). RKR is correct that, by its terms, 10 U.S.C. § 2461 is not currently in force. See Attachment 1, p. 2.[14] The Air Force, however, must still comply with the provisions of 10 U.S.C. § 2461 because DOD has required its components to continue to comply with 10 U.S.C. § 2461 while the declared war continues. Attachment 1, p. 2.

RKR also argues that the new evaluation criteria does not apply to solicitations conducted pursuant to the pre-2003 A-76 circular. RKR Rep. 28. RKR's argument, however, ignores the plain language of the statute, which states, "A function of the Department of Defense performed by 10 or more Department of Defense civilian employees may not be converted . . . to performance by a contractor unless the conversion is based on the results of a public-private competition that" complies with certain requirements, including the new "mission impact," health insurance and retirement plan evaluations. 10 U.S.C. § 2461(a)(1). There can be no dispute that the communications and IT function in the Little BOS solicitation is being performed by more than 10 DOD employees and has not been converted to a contractor yet.

---

[14] "Attachment 1, p. __" refers to the page number of DOD's Competitive Sourcing Program Policy During Times Of Military Mobilization Or Declared War, attached to this brief as Attachment 1.

Therefore, the new evaluation criteria apply, regardless of which A-76 Circular is used.[15] Accordingly, the Air Force is required to amend the Little BOS solicitation to include new mandatory source selection criteria.

3. <u>The Contracting Officer Had A Rational Basis For His Determination That There Was Substantial Concern That Amending The Solicitation And Obtaining New Proposals Would Be Illegal</u>

In our opening brief, we demonstrated that the contracting officer rationally determined that there was substantial concern that amending the solicitation and proceeding with the study after amendment would violate the FY 2008 DOD Appropriations Act, Pub. L. No. 110-116, 121 Stat. 1295, 1318 (2007), and the Anti-Deficiency Act, 31 U.S.C. § 1341(a)(1)(A). Gov't Mot. 35-36. In its response/reply, RKR simply rehashes its arguments that the solicitation need not be amended. RKR Rep. 28. At best, RKR's restated arguments lead to RKR's concession that if the solicitation does need to be amended, based upon a change in requirements or change in evaluation criteria, then it was rational to cancel the solicitation.

[15] In footnote 17 of its response/reply, RKR also suggests that the Air Force could "avoid 10 U.S.C. § 2461" by performing a best value determination pursuant to Section 336 of the FY 2004 National Defense Authorization Act ("Section 336 pilot program"). RKR Rep. 28 n.17. There are several problems with this suggestion. First, although Secretary of Defense was authorized to create the Section 336 pilot program, at the time of the contracting officer's decision, it had not done so. Attachment 2, p. 3 (GAO report); National Defense Authorization Act For FY2004, Pub. L. No. 108-136, 117 Stat. 1392, 1444 (2003). Second, even if there was a Section 336 pilot program in place, the Air Force could not have converted the entire Little BOS study to the pilot program because it is a multi-function study that includes non-IT functions, <u>i.e.</u>, multimedia services and publishing management. AR 184-189, 201. Additionally, the Air Force would still have had to amend the solicitation to implement the best value source selection criteria of the pilot program. <u>See</u> 117 Stat. at 1444. In any event, the Air Force has determined that a best value determination is not the most beneficial method of procuring IT services. Attachment 2, p. 3.

III. RKR's Challenge To The Air Force's Cost Comparison Or Tentative Decision To Implement The MEO Is Moot

RKR's argument that its challenge to the Air Force's cost comparison or tentative decision to implement the MEO is not moot is that "[c]ancellation does not make the unlawful action irrelevant when the unlawful action is the foundation of the cancellation itself." RKR Rep. 19. In this case, however, the foundation of the cancellation was a change in requirements and a change in evaluation criteria, not some "unlawful action." AR 1016-21. If the Court determines that either: 1) it does not possess jurisdiction to entertain RKR's challenge to the cancellation, or 2) the contracting officer's cancellation decision had a rational basis, then the Court is precluded from entertaining RKR's challenges to the cost comparison and tentative decision to implement the MEO because they are moot. See, e.g., Gov't Mot. 36-38; CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 688-90 (1999).

IV. RKR Is Not Entitled To Any Relief At This Stage, Even If The Court Determines That The Cancellation Was Irrational, Because RKR Has Not Proven Prejudice

RKR mischaracterizes the Government's arguments with regard to prejudice. First, contrary to RKR's arguments, RKR Rep. 1-2, the Government did not argue that RKR could never have the opportunity to show prejudice in this case. Rather, we demonstrated that RKR cannot show prejudice at this time, specifically because of the bifurcated nature of this case. If RKR proves that this Court possesses jurisdiction to entertain RKR's challenge to the solicitation and that the cancellation decision had no rational basis, then the Government anticipates that RKR may have the opportunity to attempt to demonstrate prejudice by arguing that it would have had a substantial chance of receiving the award if the Air Force had not cancelled the

solicitation.[16] However, in order to demonstrate that RKR would have had a substantial chance of receiving the award if there had been no cancellation, RKR will have to demonstrate that any errors in the MEO's staffing plan were so significant that there is a substantial chance that the= alleged errors would have accounted for the nearly $5 million cost differential between RKR and the MEO. AR 1970. While the Court is required to engage in this analysis prior to providing RKR with any relief, Gov't Mot. 38-39, the Court, at the request of the parties, has agreed to defer this analysis until after it determines: 1) whether it possesses jurisdiction to entertain this action; and 2) whether the cancellation decision had a rational basis. This procedural posture is logical because, if the Court determines that it does not possess jurisdiction or that the cancellation had a rational basis, then it need not reach the prejudice analysis.

Accordingly, RKR is not entitled to any relief because it has not demonstrated that the Court possesses jurisdiction to entertain RKR's complaint or that the cancellation was irrational, much less that RKR has suffered prejudice.

## CONCLUSION

For the foregoing reasons and the reasons stated in our original motion, this Court should grant our motion to dismiss or, in the alternative, our motion for judgment upon the administrative record.

[16] This is the only way RKR may demonstrate prejudice in this case. As we demonstrated in our opening brief, if RKR did not have a substantial chance of receiving the award absent the cancellation or any other alleged errors, then it has actually been helped, rather than prejudiced, by the cancellation. Gov't Mot. 39-42.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

OF COUNSEL:
Gary R. Allen
Air Force Legal Operations Agency,
Commercial Litigation Division
1501 Wilson Blvd., Suite 600
Rosslyn, VA 22209

/s/ William P. Rayel
WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-0302
Fax. (202) 307-0972

September 4, 2008

Attorneys for Defendant