# ATTACHMENT 1

## DEPARTMENT OF DEFENSE COMPETITIVE SOURCING PROGRAM POLICY DURING TIMES OF MILITARY MOBILIZATION OR DECLARED WAR

As provided in this policy, Department of Defense (DoD) Components shall continue to apply the procedures in OMB Circular A-76 and the Revised Supplemental Handbook (RSH) to facilitate compliance with DoD's statutory obligations, maintain consistency in DoD's Competitive Sourcing Program, and continue to achieve cost savings and improved performance from public-private competitions. This policy is effective immediately and shall remain in effect until further notice. The Under Secretary of Defense (Acquisition, Technology and Logistics) shall rescind this policy, in writing, when the period of military mobilization, or declared war, ends. DoD Components are not permitted to deviate from this policy.

When military mobilization or declared war affects a specific competitive sourcing initiative, mobilization or wartime support is the Department's priority. Components are not permitted to suspend actions related to DoD's Competitive Sourcing Program based on the assumption that paragraph 7.c.(3) of the Circular terminates the Components' competitive sourcing responsibilities during military mobilization and war. Mobilization and war should have a limited impact on functions that are being competed or planned for competition since the inventory risk assessment process exempts functions from private sector performance in the event contract performance of the function poses unacceptable risks to effective military mobilization. In spite of these precautions, a Component may be faced with unanticipated, unique, or expanded requirements that may take priority over competitive sourcing actions during mobilization or war. This policy takes into account both current uncertainties and the value of the Competitive Sourcing Program.

### 1. STATUTORY COMPLIANCE.

a. Although OMB Circular A-76 does not apply during military mobilization or declared war, DoD must comply with certain statutes that pertain to commercial activities. This paragraph identifies several particularly significant provisions, but is not exhaustive. Section 2462 of title 10, United States Code, requires the procurement of supplies or services necessary for, or beneficial to, DoD functions (other than those functions which must be performed by military or DoD civilian employees) from a source in the private sector, if that source can provide the supplies or services at a lower cost than can the Government, allowing for any cost differential required by law, Executive order, or regulation. Section 2462 also requires that all costs considered be realistic and fair when DoD compares in-house and private sector costs to determine whether to contract for performance of DoD functions. Section 2463 of title 10, United States Code, requires collection and retention of data regarding functions converted to or from performance by the private sector. Section 2465 of title 10, United States Code, prohibits the use of appropriated funds to contract for firefighting and security-guard functions at a military installation or facility, with certain exceptions stated in the law. Section 8014 of the DoD Appropriations Act, 2002, Pub. L. No. 107-117, a recurring provision in appropriations acts, prohibits the use of funds appropriated under the Act to convert to contractor performance an activity or function of the Department performed by more than ten civilian employees until a most efficient and cost-effective organization analysis is completed on such activity or function and the Department certifies the analysis to the Appropriations Committees of the House and Senate. The Federal Activities Inventory Reform (FAIR) Act, Pub. L. No. 105-270, 112 Stat. 2382 (1998), requires that the executive agencies submit to Congress annual lists of activities

that are not inherently governmental and that are performed by Government sources. None of these statutes includes an exception for war, military mobilization, or national emergency. Section 8024 of the DoD Appropriations Act, 2002, (like section 8014, a recurring provision in appropriations acts), which prohibits the use of funds appropriated under the Act to perform a single-function cost study that will exceed 24 months, or a multi-function cost study that will exceed 48 months, applies to studies performed "pursuant to the provisions of OMB Circular A-76..." Although the Circular is suspended, this policy requires compliance with the provisions of the Circular in most instances; therefore, section 8024 remains in effect. Paragraph 2 of this policy will facilitate compliance with each of these statutes.

b. Several statutes do not apply during national emergency, military mobilization or declared war. For example, section 2461 of title 10, United States Code, which requires that DoD notify Congress and complete an analysis regarding any commercial or industrial function proposed for conversion to contract performance if that function is performed by DoD civilian employees, does not apply during war or a period of national emergency declared by the President or Congress. Section 2467 of title 10, which requires notice to Congress of a decision to waive the comparison of costs under Circular A-76, and consultation with the DoD civilian employees who would be affected by a pending determination to convert to performance by a private source, does not apply because the Circular is not in effect. As provided in paragraph 2, this policy requires that Components comply with these statutes while mobilization or declared war continues.

## 2. COMPETITIVE SOURCING PROGRAM MANAGEMENT.

a. Policy and Procedures for Continuation of the DoD Competitive Sourcing Program During Military Mobilization or Declared War. It is DoD policy that Components shall continue the Competitive Sourcing Program. Components shall execute future, planned, and in-progress competitive sourcing initiatives as identified in the budget and the Commercial Activities Management Information System (CAMIS). Except as provided in this document, it is DoD policy that Components shall provide for performance of commercial activities by applying the procedures in OMB Circular A-76, its RSH, and applicable DoD and Component policies and procedures related to Circular A-76.

b. DoD Inventory Policy During Military Mobilization or Declared War. The FAIR Act and DoD Inventory policies and procedures remain in effect. The requirement to submit an annual report to Congress, pursuant to subsection 2461(g) of title 10, does not apply during mobilization or war; however, it shall be DoD policy to submit this report. To meet the reporting requirement, Components shall continue to comply with policy from DUSD(I&E) for completing the FY 2001 DoD Full Inventory.

c. Congressional Notification Policy for Cost Comparisons During Military Mobilization or Declared War. Although sections 2461 and 2467 of title 10 do not apply during mobilization or war, it is DoD policy that Components shall continue their current congressional notification practices related to competitive sourcing initiatives. Components shall submit the two notifications required by subsections 2461(a)-(c) of title 10 (notification before commencement of cost comparisons and notification of contract decisions in cost comparisons) and the notification of a cost comparison waiver decision as required by subsection 2467(c) of title 10.

d. Employee Consultation Policy for Cost Comparisons During Military Mobilization or Declared War. Although subsection 2467(b) of title 10 does not apply during mobilization or war, it is DoD policy that Components shall continue these consultations with DoD civilians.

e. Costing Policy for Cost Comparisons During Military Mobilization or Declared War. It is DoD policy that Components shall use the DoD A-76 Costing Manual and the associated costing software, win.COMPARE[2], for all cost comparisons with respect to which the receipt date for contractor offers is later than March 15, 2002. This policy facilitates compliance with section 2462 of title 10. The requirement, in subsection 2467(a) of title 10, to include retirement costs in A-76 cost comparisons, does not apply during military mobilization (see paragraph 1 of this policy); however, it is DoD policy that Components continue this practice during mobilization.

f. DoD CAMIS Policy During Military Mobilization or Declared War. DoD CAMIS policies and procedures remain in effect. It is DoD policy that Components shall continue tracking competitive sourcing initiatives via CAMIS, in recognition of the statutory requirement to collect cost data under section 2463 of title 10, which applies during mobilization or war. To provide a historical record of these impacts, Components should enter into CAMIS the effect that mobilization or war has on any competitive sourcing initiative. This information will be instrumental in providing feedback and in evaluating changes to this policy. DoD shall submit the annual report required by a new statute, section 2461a of title 10, which applies during mobilization or war.

g. Delay Policy for Planned or In-Progress Competitive Sourcing Initiatives During Military Mobilization or Declared War. Delays may occur during mobilization or war based on surge or unexpected requirements. When a requirement directly attributable to mobilization or war dictates the need to delay execution of a competitive sourcing initiative, a Component may approve the delay without regard for the applicable time limit in Part I, Chapter 3, paragraph A.4 of the RSH. If a competitive sourcing initiative is projected to exceed that time limit, the Component should perform a Mobilization Analysis (in accordance with paragraph 2.i.) to document the delay. No DUSD(I&E) notification or approval is required. Components should enter delays, and the reasons for delays, in CAMIS, to provide a historical record of the impact of mobilization or war on competitive sourcing. Components are not permitted to approve requests for delays exceeding the time limits in section 8024 of the DoD Appropriations Act, 2002, or similar provisions in other appropriations acts.

h. Cancellation Policy for Planned or In-Progress Competitive Sourcing Initiatives During Military Mobilization or Declared War. It is DoD policy that Components are not permitted to cancel planned or in-progress competitive sourcing initiatives without prior DUSD(I&E) approval. A Component shall (1) perform a Mobilization Analysis (in accordance with paragraph 2.i.) to justify cancellation of a planned or in-progress competitive sourcing initiative, and (2) submit a memo to DUSD(I&E) requesting approval to cancel the initiative. This memo shall state the justification for the cancellation, summarize the Mobilization Analysis, and include two attachments (the Mobilization Analysis (only if unclassified) and a CAMIS inquiry). The CAMIS inquiry shall include the following CAMIS data relevant to the specific competitive sourcing initiative: CAMIS record number, title, location, type, number of positions being competed, start date, the current stage of execution, and planned end date (i.e., tentative decision date). Upon approval by DUSD(I&E), the Component may immediately cancel the initiative. Components should document the cancellation and the reasons for cancellation in CAMIS to provide a historical record of the impact of military mobilization or declared war on competitive sourcing.

i. Mobilization Analysis. It is DoD policy that Components shall perform a Mobilization Analysis during times of military mobilization or declared war before requesting approval to cancel an initiative, in accordance with paragraph 2.h. of this policy. Components should prepare a Mobilization Analysis before approving the delay of an initiative, in accordance with paragraph 2.g. of this policy. The Mobilization Analysis documents the direct impact that military mobilization has on a specific competitive sourcing initiative, and justifies the delay or cancellation. The Mobilization Analysis shall, at a minimum, answer the following questions.

(1) What is the specific CAMIS record number of this initiative?

(2) What is the specific requirement related to military mobilization or war that necessitates the delay, or cancellation?

(3) What is the specific action requested (i.e., delay or cancellation) and the reason for this Mobilization Analysis?

(4) Why does the execution of the initiative, without approval of a delay or cancellation, adversely affect military mobilization?

(5) What is the projected duration (in terms of months) of the requirement related to military mobilization or war?

(6) If cancellation of an initiative is requested, why is a delay not possible and why may execution not be transferred to an alternate location or organization?

(7) What is the execution status of the initiative (e.g., performance work statement development phase, solicitation issued, in-house offer incomplete, independent review in-progress)?