# ATTACHMENT 2

G A O
Accountability * Integrity * Reliability
United States Government Accountability Office
Washington, DC 20548

May 29, 2008

Congressional Committees

Subject: *Department of Defense Pilot Authority for Acquiring Information Technology Services under OMB Circular A-76*

Section 336 of the National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, authorized the Department of Defense (DOD) to conduct a pilot program to use best value source selection criteria in public-private competitions for information technology (IT) services under Office of Management and Budget (OMB) Circular A-76. This authority is scheduled to expire on September 30, 2008. Section 336 also directed us to review the pilot program to determine whether it is effective and equitable.

Officials from DOD's Office of Housing and Competitive Sourcing, which has overall responsibility for addressing A-76 issues within DOD, told us that the section 336 pilot authority has not been used. Consequently, there is no basis for us to judge the effectiveness or equity of the program. Our objectives, therefore, were to determine (1) the reasons why the section 336 authority has not been used, and (2) given the scheduled expiration of the authority, whether DOD officials believe the authority should be extended.

## BACKGROUND

Federal agencies are required to use the procedures contained in OMB Circular A-76 in determining whether commercial services should be performed by government personnel or through contracts with private-sector entities. In general, the circular instructs agencies to base these decisions on competitions among public and private-sector entities conducted in accordance with the Federal Acquisition Regulation (FAR). Under the FAR, agencies have broad discretion in establishing the criteria they will use to select the winners of these competitions. An agency may decide, for example, that selection of the lowest priced, acceptable offer would best meet its needs. The FAR advises that this may be appropriate when requirements are clearly defined and the risk of unsuccessful performance is minimal. On the other hand, the FAR says that it may be in the best interest of an agency to provide for selecting other than the low offer when requirements are less definite, development work is required, or the risk of unsuccessful performance is high. An evaluation scheme that allows for considering the relative importance of both price and technical factors (such as an offeror's management capability, experience, or ability to apply new technology) is commonly known as the "best value" tradeoff process. The use of best value permits tradeoffs between price and non-price factors, allowing acceptance of other than the lowest-priced proposal.

Although the FAR allows agencies to use different source selection approaches, public-private competitions at DOD must comply with section 2461 of title 10 of the U.S. Code. That section requires that before a function being performed by 10 or more DOD civilian personnel may be converted to performance by a contractor, DOD must determine that performance of the function by a contractor, rather than by DOD employees, will result in savings to the government over the life of the contract. In essence, section 2461 prevents DOD from using the best value tradeoff process to award a contract that would cost the government more than continued performance by the government. The pilot authority in section 336 temporarily permits DOD to use the best value tradeoff process in competitions for IT services to award contracts at costs that may be higher than government performance, when doing so would provide DOD the greatest overall benefit.

**RESULTS**

According to defense officials, the pilot authority in section 336 has not been used for a variety of reasons, ranging from the lack of suitable candidate competitions to the absence of departmentwide guidance. The Office of the Secretary of Defense (OSD) Office of Housing and Competitive Sourcing identified 12 competitions (1 Navy, 1 Defense Logistics Agency (DLA), 5 Air Force, 5 Army) that involved IT services during the pilot program period by querying the Defense Commercial Activities Management Information System (DCAMIS).[1] Presented below are the reasons the authority of section 336 was not used in those 12 competitions.

- The Navy reported that for the DCAMIS-identified IT services competition it conducted after the enactment of section 336, it determined that achieving the best value for the Navy did not require any trade-offs between price and non-price factors, such as the application of new technology.

- DLA officials told us that its DCAMIS-identified competition involved only two IT services positions out of a total of 102 positions it was competing. Accordingly, DLA did not believe that a best value approach was justified since the two IT services positions comprised just a small fraction of the positions it was competing.

- Air Force officials told us that the service did not participate in the pilot because the DOD Competitive Sourcing Official did not authorize its use. In its written response to our question, the Air Force said that although section 336 of Public Law 108-136 allows DOD to create a pilot program, the statute gives no authority to the component services. Accordingly, the Air Force position is it has no authority under the statute to conduct a best value tradeoff source selection.

- An Army official advised us that using a best value tradeoff process on an Army Corps of Engineers IT competition that started in 2004 would have complicated an already complex competition, and the Army therefore chose not to use the pilot

[1] DCAMIS is a DOD database used to maintain and report OMB Circular A-76 data.

program authority. That competition involved about 1,300 positions at 50 different locations. The Army's competitive sourcing official told us that since that time the Army has not used the pilot authority because it received no OSD guidance regarding the use of best value tradeoffs in IT competitions. The Army stated that, absent OSD guidance on using the pilot program, the advice from OSD to the services and defense agencies has been to use low-price, technically acceptable acquisition strategies.

Officials at the OSD Office of Housing and Competitive Sourcing did not seek a legal opinion regarding the Air Force position because they were unaware of that position until our review disclosed it. OSD officials confirmed that they issued no guidance concerning the pilot authority, but said that guidance from OSD was not needed because OMB Circular A-76 already contains guidance on the use of best value for IT services competitions. The officials also said that because of the statutes that affect DOD's use of best value, OSD's expectation was that the DOD components would seek OSD approval before considering the use of the best value tradeoff approach. The officials stated that although all of the DOD components were aware of the pilot program authority, none made any request to DOD's Competitive Sourcing Official to use it. Had there been such a request, the OSD officials said they would have considered supporting a best value competition.

The military services, DLA, and OSD officials have differing views about extending the best value authority. Army, Navy, and Air Force competitive sourcing officials see no need for the authority to be extended. The Air Force, for example, stated that a procurement decision based on low price among technically acceptable offers is the fairest way to compare private sector offers against government resources. According to the Air Force, this approach allows the government to obtain the performance level and quality required without paying extra for excessive features not needed or wanted. Only DLA believes that the authority of the program should be extended. In DLA's view, the best value approach allows offerors the ability to propose enhanced performance standards that differ from those in the solicitation. Although generally supportive of the use of the best value tradeoff approach, OSD officials have made no request to the Congress that the authority contained in section 336 be extended.

## SCOPE AND METHODOLOGY

In performing our work, we reviewed relevant statutes, regulations, guidance, and available solicitation documents. We also contacted officials from the OSD Office of Housing and Competitive Sourcing and their counterparts in the Army, Navy, Air Force, and DLA to obtain their views and other information on the pilot program authority. Officials from OSD's Office of Housing and Competitive Sourcing identified 12 competitions that involved IT services during the pilot program period by querying the DCAMIS database. We did not independently test the reliability of this database, but we determined that the information in the database was sufficiently reliable for the purposes of this review. To obtain additional perspective on the use of best value in the context of A-76 competitions, we interviewed officials from the American Federation of Government Employees, a federal employee

union; the Professional Services Council, an industry association; and OMB's Office of Federal Procurement Policy, which oversees the use of A-76 across the government.[2] We conducted this performance audit from February through May, 2008, in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings based on our audit objectives.

**AGENCY COMMENTS**

We provided a draft of this letter to DOD for its review and comment. DOD officials stated that they had no comments.

-----

If you have any questions regarding this letter, please contact me at (202) 512-8214 or James Fuquay, Assistant Director, at (937) 258-7963. Contact points for our Offices of Congressional Relations and Public Affairs may be found on the last page of this letter. Other contributors to this effort include Myra Watts Butler, Daniel Hauser, Sylvia Schatz, and Robert Swierczek.

William T. Woods

William T. Woods
Director
Acquisition and Sourcing Management

[2] In 2006, OMB reported on the benefits achieved through the use of the best value tradeoff process. Executive Office of the President, Office of Management and Budget, *Competitive Sourcing: Report on the Use of Best Value Tradeoffs in Public-Private Competitions,* (Washington, D.C.: April 2006).

List of Congressional Committees

The Honorable Carl Levin
Chairman
The Honorable John McCain
Ranking Member
Committee on Armed Services
United States Senate

The Honorable Daniel K. Inouye
Chairman
The Honorable Ted Stevens
Ranking Member
Subcommittee on Defense
Committee on Appropriations
United States Senate

The Honorable Ike Skelton
Chairman
The Honorable Duncan L. Hunter
Ranking Member
Committee on Armed Services
House of Representatives

The Honorable John P. Murtha
Chairman
The Honorable C. W. Bill Young
Ranking Member
Subcommittee on Defense
Committee on Appropriations
House of Representatives

(120719)

This is a work of the U.S. government and is not subject to copyright protection in the United States. The published product may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.

## GAO's Mission

The Government Accountability Office, the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability.

## Obtaining Copies of GAO Reports and Testimony

The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's Web site (www.gao.gov). Each weekday, GAO posts newly released reports, testimony, and correspondence on its Web site. To have GAO e-mail you a list of newly posted products every afternoon, go to www.gao.gov and select "E-mail Updates."

### Order by Mail or Phone

The first copy of each printed report is free. Additional copies are $2 each. A check or money order should be made out to the Superintendent of Documents. GAO also accepts VISA and Mastercard. Orders for 100 or more copies mailed to a single address are discounted 25 percent. Orders should be sent to:

U.S. Government Accountability Office
441 G Street NW, Room LM
Washington, DC 20548

To order by Phone: Voice: (202) 512-6000
TDD: (202) 512-2537
Fax: (202) 512-6061

## To Report Fraud, Waste, and Abuse in Federal Programs

Contact:

Web site: www.gao.gov/fraudnet/fraudnet.htm
E-mail: fraudnet@gao.gov
Automated answering system: (800) 424-5454 or (202) 512-7470

## Congressional Relations

Ralph Dawn, Managing Director, dawnr@gao.gov, (202) 512-4400
U.S. Government Accountability Office, 441 G Street NW, Room 7125
Washington, DC 20548

## Public Affairs

Chuck Young, Managing Director, youngc1@gao.gov, (202) 512-4800
U.S. Government Accountability Office, 441 G Street NW, Room 7149
Washington, DC 20548

PRINTED ON RECYCLED PAPER